UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

| | |
|---|---|
| RONARD LORA, HUGO RIVERA, MARCO ANTONIO DIAZ, MELVIN LORA, EDUARDO LORA, GIOVANNI PAULINO, JOSE RODRIGUEZ, and JOSE RODOLFO RODRIGUEZ-TINEO, individually and on behalf of all others similarly situated, | Index No. 11-CV-9010 (LLS) |
| | ECF CASE |
| | CLASS ACTION |
|       Plaintiffs, | AMENDED COMPLAINT |
|     - against - | Civil Action |
| J.V. CAR WASH, LTD., BROADWAY HAND CARWASH CORP., WEBSTER HAND CAR WASH CORP., HARLEM HAND CAR WASH INC., BAYWAY HAND CAR WASH CORP., JOSE VAZQUEZ, SATURNINO VARGAS, JOSE JIMENEZ, RAMON PEREZ, DOMINGO "DOE," ADOLFO FEDERUS, originally sued as ADOLFO "DOE," and JOHN DOES 1-10, | Jury Trial Demanded |
|       Defendants. | |



------------------------------------------------------------------X

   Named Plaintiffs Ronard Lora, Hugo Rivera, Marco Antonio Diaz, Melvin Lora, Eduardo

Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, individually and on

behalf of all others similarly situated (collectively, "Named Plaintiffs"), by and through their

attorneys, Arenson, Dittmar & Karban, as and for their Amended Complaint against Defendants

J.V. Car Wash, Ltd., Broadway Hand Carwash Corp., Webster Hand Car Wash Corp., Harlem

Hand Car Wash Inc., Bayway Hand Car Wash Corp., Jose Vazquez, Saturnino Vargas, Jose

Jimenez, Ramon Perez, Domingo "Doe," Adolfo Federus, originally sued as Adolfo "Doe," and

John Does 1-10 (collectively, the "Defendants"), respectfully alleges as follows:

## NATURE OF THE ACTION

  1.  This action is brought pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201

*et seq.*, ("FLSA"), and specifically the collective action provisions of the FLSA, 29 U.S.C.

§ 216(b); the supporting regulations of the United States Department of Labor, 29 C.F.R. §§ 531 *et seq.*; the New York Labor Law, N.Y. LAB. LAW §§ 190, *et seq.*, § 650 *et seq.* (the "New York Labor Law"); the supporting New York State Department of Labor Regulations, Part 142 of Title 12 of the New York Codes, Rules and Regulations, N.Y. COMP. CODES R. & REGS. tit. 12, § 142 *et seq.*; the New Jersey Statutes Annotated, N.J. STAT. ANN. §§ 34:11-4.1, *et seq.*, §§ 34:11-56a *et seq.* (the "New Jersey Wage and Hour Law"); and the supporting New Jersey State Regulations, Part 56 of the New Jersey Administrative Code, N.J.A.C. §§ 12:56, *et seq.*, to recover unpaid minimum wages and overtime and improperly withheld wages and tips owed to Named Plaintiffs and all similarly situated persons who are presently or were formerly employed by Defendants.

2.      Defendants operate a number of car wash businesses in New York (primarily in New York and Bronx Counties) and in New Jersey.

3.      Since approximately December 2005 and, upon information and belief, continuing through the present, Defendants have engaged in a policy and practice of wrongfully failing to pay minimum wages to their employees; wrongfully failing to pay overtime compensation to their employees at a rate of time and one half their regular rate of pay for all hours worked over forty (40) in any given work week; wrongfully failing to pay "spread-of-hours" wages to employees who worked in excess of ten (10) hours per workday and/or who worked on a split shift; and wrongfully withholding gratuities from individuals who earned them, all in violation of the New York Labor Law.

4.      Since approximately December 2005 and, upon information and belief, continuing through the present, Defendants have willfully disregarded and purposefully evaded

recordkeeping requirements of the New York Labor Law, by failing to maintain proper and complete timesheets or payroll records, all in violation of the New York Labor Law.

5.     Since approximately December 2008 and, upon information and belief, continuing through the present, Defendants have engaged in a policy and practice of wrongfully failing to pay minimum wages to their employees; wrongfully failing to pay overtime compensation to their employees at a rate of time and one half their regular rate of pay for all hours worked over forty (40) in any given work week; and wrongfully withholding gratuities from individuals who earned them, all in violation of the FLSA.

6.     Since approximately December 2008 and, upon information and belief, continuing through the present, Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA by failing to maintain proper and complete timesheets or payroll records, all in violation of the FLSA.

7.     Since approximately December 2009 and, upon information and belief, continuing through the present, Defendants have engaged in a policy and practice of wrongfully failing to pay minimum wages to their employees; wrongfully failing to pay overtime compensation to their employees at a rate of time and one half their regular rate of pay for all hours worked over forty (40) hours in any given work week; and wrongfully withholding gratuities from individuals who earned them, all in violation of the New Jersey Wage and Hour Law.

8.     Since approximately December 2009 and, upon information and belief, continuing through the present, Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the New Jersey Wage and Hour Law by failing to maintain proper

and complete timesheets or payroll records, all in violation of the New Jersey Wage and Hour Law.

9.      Under the direction of Defendant Jose Vazquez, Defendants instituted these policies and practices of depriving their employees of the basic compensation for work performed as mandated by federal and state law.

10.     Named Plaintiffs have initiated this action seeking for themselves, and on behalf of all similarly situated employees, all compensation, including minimum wages and overtime compensation, as well as improper deductions from wages, including tips, which they were deprived of, plus interest, damages, attorneys' fees, and costs.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337, and supplemental jurisdiction over Named Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Named Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

12.     This Court is empowered to issue declaratory relief under 28 U.S.C. §§ 2201 and 2202.

13.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York.

## PARTIES

14.     Named Plaintiff Ronard Lora ("Named Plaintiff Ronard Lora") was an employee of the Defendants from approximately October 17, 2009, through approximately October 19, 2010.

15.     Named Plaintiff Hugo Rivera ("Named Plaintiff Rivera") was an employee of the Defendants from approximately February 2009, through approximately September 25, 2011.

16.     Named Plaintiff Marco Antonio Diaz ("Named Plaintiff Diaz") was an employee of the Defendants from approximately January 31, 2008, through approximately June 5, 2012.

17.     Named Plaintiff Melvin Lora ("Named Plaintiff Melvin Lora") was an employee of the Defendants from approximately December 2009, through approximately June 5, 2012.

18.     Named Plaintiff Eduardo Lora ("Named Plaintiff Eduardo Lora") was an employee of the Defendants from approximately December 2009, through approximately June 5, 2012.

19.     Named Plaintiff Giovanni Paulino ("Named Plaintiff Paulino") was an employee of the Defendants from approximately February 11, 2008, through approximately June 5, 2012.

20.     Named Plaintiff Jose Rodriguez ("Named Plaintiff Jose Rodriguez") was an employee of the Defendants from approximately September 20, 2004, through approximately June 5, 2012.

21.     Named Plaintiff Jose Rodolfo Rodriguez-Tineo ("Named Plaintiff Rodriguez-Tineo") was an employee of the Defendants from approximately July 10, 2011, through approximately June 7, 2012.

22.     Upon information and belief, Defendant J.V. Car Wash, Ltd. ("J.V. Car Wash") was and is now a corporation duly organized and existing under the laws of the State of New York, with its principal place of business at 4778 Broadway, New York, New York.

23.     Upon information and belief, Defendant Broadway Hand Carwash Corp. ("Broadway") is a corporation organized under the laws of the State of New York, with its principal place of business at 4778 Broadway, New York, New York.

24.     Upon information and belief, J.V. Car Wash and Broadway operate as a single entity ("J.V. Car Wash/Broadway").

25.     Upon information and belief, Defendant Webster Hand Car Wash Corp. ("Webster") was and is now a corporation duly organized and existing under the laws of the State of New York, with its principal place of business at 2669-2673 Webster Avenue, Bronx, New York.

26.     Upon information and belief, Defendant Harlem Hand Car Wash Inc. ("Harlem") was and is now a corporation duly organized and existing under the laws of the State of New York, with its principal place of business at 2600 Adam Clayton Powell, Jr., Boulevard, New York, New York.

27.     Upon information and belief, Defendant Bayway Hand Car Wash ("Bayway") is a corporation duly organized and existing under the laws of the State of New Jersey, with its principal place of business at 622 S. Broad Street, Elizabeth, New Jersey.

28.     Upon information and belief, at all times relevant to the Amended Complaint, Defendant Jose Vazquez ("Vazquez") was and is an officer, director, president, vice president and/or owner of J.V. Car Wash/Broadway, Webster, Harlem and Bayway (collectively, the "Car Wash Defendants").

29.     Upon information and belief, at all times relevant to the Amended Complaint, Vazquez actively managed, supervised, and directed, and continues actively to manage, supervise and direct the business and operations of the Car Wash Defendants, either directly or through agents.

30.     Upon information and belief, at all times relevant to the Amended Complaint, Defendant Saturnino Vargas ("Vargas") was and is the manager of J.V. Car Wash/Broadway.

31.     Upon information and belief, at all times relevant to the Amended Complaint, Vargas actively managed, supervised, and directed, and continues actively to manage, supervise and direct the business and operations of J.V. Car Wash/Broadway, either directly or through agents.

32.     Upon information and belief, at all times relevant to the Amended Complaint, Defendant Domingo "Doe" ("Domingo Doe") was and is the assistant manager of J.V. Car Wash/Broadway.

33.     Upon information and belief, at all times relevant to the Amended Complaint, Domingo Doe actively managed, supervised, and directed, and continues actively to manage, supervise and direct the business and operations of J.V. Car Wash/Broadway, either directly or through agents.

34.     Upon information and belief, at all times relevant to the Amended Complaint, Defendant Adolfo Federus, originally sued as Adolfo "Doe" ("Federus") was and is the manager of Harlem.

35.     Upon information and belief, at all times relevant to the Amended Complaint, Federus actively managed, supervised, and directed, and continues actively to manage, supervise and direct the business and operations of Harlem, either directly or through agents.

36.     Upon information and belief, at all times relevant to the Amended Complaint, Defendant Jose Jimenez ("Jimenez") was and is the manager of Webster.

37.     Upon information and belief, at all times relevant to the Amended Complaint, Jimenez actively managed, supervised, and directed, and continues actively to manage, supervise and direct the business and operations of Webster, either directly or through agents.

38.     Upon information and belief, at all times relevant to the Amended Complaint, Defendant Ramon Perez ("Perez") was and is the manager of Bayway.

39.     Upon information and belief, at all times relevant to the Amended Complaint, Perez actively managed, supervised, and directed, and continues actively to manage, supervise and direct the business and operations of Bayway, either directly or through agents.

40.     Upon information and belief, at all times relevant to the Amended Complaint, Defendants John Does 1-10 (the "Doe Defendants") are other individual officers, managers, supervisors and employees of the Car Wash Defendants who participated in, contributed to and/or ratified the conduct set forth below.

41.     Upon information and belief, at all times relevant to the Amended Complaint, the activities of the Defendants constituted an "enterprise" within the meaning of Sections 3(r) and 3(s) of the FLSA, 29 U.S.C. §§ 203(r), (s).

42.     Upon information and belief, at all times relevant to the Amended Complaint, Defendants employed employees, including the Named Plaintiffs herein, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been produced for commerce within the meaning of Sections 3(b), 3(g), 3(i) and 3(j) of the FLSA, 29 U.S.C. §§ 203(b), (g), (i), (j).

## CLASS AND COLLECTIVE ALLEGATIONS

43.     This action is properly maintainable as a collective action pursuant to the FLSA § 216(b), and as a Class Action under Article 9 of the New York Civil Practice Law and Rules and Rule 23 of the Federal Rules of Civil Procedure.

44.     Named Plaintiffs bring this action on behalf of themselves and a class consisting of **all similarly situated persons who perform or have performed work for the Defendants washing, cleaning, drying and detailing cars, trucks and other vehicles, and performing**

other non-managerial car-wash-related work, between December 9, 2008 and the filing of the original Complaint in this action (the "FLSA Class").

45.     Named Plaintiffs also bring claims under the New York Labor Law on behalf of themselves and a class of persons under Rule 23 of the Federal Rules of Civil Procedure consisting of **all similarly situated persons who work or have worked for the Defendants within the State of New York washing, cleaning, drying and detailing cars, trucks and other vehicles, and performing other non-managerial car-wash-related work, between December 9, 2005 and the filing of the original Complaint in this action** (the "New York Class").

46.     Named Plaintiffs also bring claims under the New Jersey Wage and Hour Law on behalf of themselves and a class of persons under Rule 23 of the Federal Rules of Civil Procedure consisting of **all similarly situated persons who work or have worked for the Defendants within the State of New Jersey washing, cleaning, drying and detailing cars, trucks and other vehicles, and performing other non-managerial car-wash-related work, between December 9, 2009 and the filing of the original Complaint in this action** (the "New Jersey Class" (together with the FLSA Class and the New York Class, the "Putative Class")).

47.     The Putative Class is so numerous that joinder of all members is impracticable. The size of the Putative Class is believed to be in excess of sixty (60) employees.  In addition, the names of all potential members of the Putative Class are not known.

48.     The questions of law and fact common to the Putative Class predominate over any questions solely affecting individual members of the Putative Class.

49.     The claims of the Named Plaintiffs are typical of the claims of the Putative Class.

50.     Named Plaintiffs and their counsel will fairly and adequately protect the interests of the Putative Class.

51.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## CLASSWIDE FACTUAL ALLEGATIONS

52.     Upon information and belief, since at least approximately 2005, the Defendants have employed numerous individuals at various car wash locations in New York and New Jersey as car washers, cleaners, driers, detailers, and other occupations related to the car-wash business that "customarily and regularly receive tips" as that term is defined under 29 U.S.C. §§ 203(m), (t), and the regulations and case law interpreting same.

53.     Upon information and belief, since at least approximately 2005, the Defendants employed numerous individuals at various car wash locations in New York and New Jersey as managers, supervisors, and other occupations that do not "customarily and regularly receive tips."

54.     Upon information and belief, under 29 U.S.C. § 201 *et seq.*, and the cases interpreting same, the Car Wash Defendants constitute an "enterprise engaged in commerce."

55.     Upon information and belief, Named Plaintiffs and the members of the Putative Class regularly were required to perform work for Defendants without receiving proper minimum wages and overtime compensation as required by applicable federal and state law.

56.     Upon information and belief, Named Plaintiffs and all members of the Putative Class constitute "employees" as that term is defined under 29 U.S.C. § 203(e), the New York Labor Law, N.Y. LAB. LAW § 651, and New Jersey Wage and Hour Law § 34:11-56a1, and the case law interpreting the same.

57.     Upon information and belief, the payments made to Named Plaintiffs and other members of the Putative Class by Defendants constitute "wages" as that term is defined under 29 U.S.C. § 203(m), the New York Labor Law, N.Y. LAB. LAW § 651, and New Jersey Wage and Hour Law § 34:11-56a1.

58.     Upon information and belief, Defendants engaged in a regular pattern and practice of making unlawful deductions from the earned wages of Named Plaintiffs and other members of the Putative Class in violation of 29 U.S.C. § 203, and the New York Labor Law, N.Y. LAB. LAW §§ 193, 196-d.  These deductions include but are not limited to the taking of tipped employees' earned tips by management employees.

59.     Upon information and belief, while working for Defendants, Named Plaintiffs and the members of the Putative Class did not receive earned overtime wages, at the rate of one and one half times their regular rates of pay, for the time in which they worked for Defendants after the first forty (40) hours in any given week.

60.     Upon information and belief, while working for Defendants, Named Plaintiffs and the members of the New York Class did not receive a premium for working in excess of ten (10) hours per workday and/or for work performed on a split shift, as required under the N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.4.

61.     Upon information and belief, Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and applicable New York and New Jersey state law by failing to maintain proper and complete timesheets or payroll records.

62.     Upon information and belief, Defendant Vazquez was an officer, director, shareholder/owner and/or president of the Car Wash Defendants and (i) had the power to hire and fire employees for those entities; (ii) supervised and controlled employee work schedules or

conditions of employment for those entities; (iii) determined the rate and method of payment for the Car Wash Defendants' employees; and (iv) maintained employment records for the Car Wash Defendants.

63.    Upon information and belief, Defendant Vazquez dominated the day-to-day operating decisions of the Car Wash Defendants, made major personnel decisions for the Car Wash Defendants, and had complete control of the alleged activities of the Car Wash Defendants that give rise to the claims brought herein.

64.    Upon information and belief, Defendant Vazquez acted directly or indirectly in the interests of the Car Wash Defendants.

65.    Upon information and belief, Defendant Vazquez, in his capacity as an officer, director, shareholder/owner and/or president of the Car Wash Defendants, actively participated in the unlawful method of payment for the Car Wash Defendants' employees.

66.    Upon information and belief, Defendant Vargas was a manager of certain of the Car Wash Defendants and (i) had the power to hire and fire employees for those entities; (ii) supervised and controlled employee work schedules or conditions of employment for those entities; (iii) participated in determining the rate and method of payment for certain of the Car Wash Defendants' employees; and (iv) maintained employment records for certain of the Car Wash Defendants.

67.    Upon information and belief, Defendant Vargas made day-to-day operating decisions for certain of the Car Wash Defendants and made personnel decisions for certain of the Car Wash Defendants.

68.    Upon information and belief, Defendant Vargas acted directly or indirectly in the interest of the Car Wash Defendants.

69.     Upon information and belief, Defendant Vargas, in his capacity as a manager of certain of the Car Wash Defendants, actively participated in the unlawful method of payment for certain of the Car Wash Defendants' employees.

70.     Upon information and belief, Defendant Jimenez was a manager of certain of the Car Wash Defendants and (i) had the power to hire and fire employees for those entities; (ii) supervised and controlled employee work schedules or conditions of employment for those entities; (iii) participated in determining the rate and method of payment for certain of the Car Wash Defendants' employees; and (iv) maintained employment records for certain of the Car Wash Defendants.

71.     Upon information and belief, Defendant Jimenez made day-to-day operating decisions for certain of the Car Wash Defendants and made personnel decisions for certain of the Car Wash Defendants.

72.     Upon information and belief, Defendant Jimenez acted directly or indirectly in the interest of the Car Wash Defendants.

73.     Upon information and belief, Defendant Jimenez, in his capacity as a manager of certain of the Car Wash Defendants, actively participated in the unlawful method of payment for certain of the Car Wash Defendants' employees.

74.     Upon information and belief, Defendant Perez was a manager of certain of the Car Wash Defendants and (i) had the power to hire and fire employees for those entities; (ii) supervised and controlled employee work schedules or conditions of employment for those entities; (iii) participated in determining the rate and method of payment for certain of the Car Wash Defendants' employees; and (iv) maintained employment records for certain of the Car Wash Defendants.

75.     Upon information and belief, Defendant Perez made day-to-day operating decisions for certain of the Car Wash Defendants and made personnel decisions for certain of the Car Wash Defendants.

76.     Upon information and belief, Defendant Perez acted directly or indirectly in the interest of the Car Wash Defendants.

77.     Upon information and belief, Defendant Perez, in his capacity as a manager of certain of the Car Wash Defendants, actively participated in the unlawful method of payment for certain of the Car Wash Defendants' employees.

78.     Upon information and belief, Defendant Federus was a manager of certain of the Car Wash Defendants and (i) had the power to hire and fire employees for those entities; (ii) supervised and controlled employee work schedules or conditions of employment for those entities; (iii) participated in determining the rate and method of payment for certain of the Car Wash Defendants' employees; and (iv) maintained employment records for certain of the Car Wash Defendants.

79.     Upon information and belief, Defendant Federus made day-to-day operating decisions for certain of the Car Wash Defendants and made personnel decisions for certain of the Car Wash Defendants.

80.     Upon information and belief, Defendant Federus acted directly or indirectly in the interest of the Car Wash Defendants.

81.     Upon information and belief, Defendant Federus, in his capacity as a manager of certain of the Car Wash Defendants, actively participated in the unlawful method of payment for certain of the Car Wash Defendants' employees.

82.     Upon information and belief, Defendant Domingo Doe was an assistant manager of certain of the Car Wash Defendants and (i) had the power to hire and fire employees for those entities; (ii) supervised and controlled employee work schedules or conditions of employment for those entities; (iii) participated in determining the rate and method of payment for certain of the Car Wash Defendants' employees; and (iv) maintained employment records for certain of the Car Wash Defendants.

83.     Upon information and belief, Defendant Domingo Doe participated in day-to-day operating decisions for certain of the Car Wash Defendants and participated in personnel decisions for certain of the Car Wash Defendants.

84.     Upon information and belief, Defendant Domingo Doe acted directly or indirectly in the interest of the Car Wash Defendants.

85.     Upon information and belief, Defendant Domingo Doe, in his capacity as an assistant manager of certain of the Car Wash Defendants, actively participated in the unlawful method of payment for certain of the Car Wash Defendants' employees.

86.     The Defendants' unlawful conduct has been widespread, repeated, and consistent.

### PLAINTIFFS' FACTUAL ALLEGATIONS

A.     <u>Ronard Lora.</u>

87.     Named Plaintiff Ronard Lora was an employee of the Defendants, working at J.V. Car Wash/Broadway, from approximately October 17, 2009, through approximately July 2010, and at Harlem from approximately July 2010 through approximately October 19, 2010.

88.     From approximately October 17, 2009, through approximately early August 2010, Named Plaintiff Ronard Lora worked from 7:30 a.m. to 7:30 p.m., six days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $60.00 per day.  During this

period, Named Plaintiff Ronard Lora typically received an additional amount of $20.00 per day from management as "tips."

89.     From approximately mid-July 2010, through approximately mid-August 2010, Named Plaintiff Ronard Lora worked from 7:30 a.m. to 7:30 p.m., six days a week, at Harlem, for which he was typically paid approximately $60.00 per day.  During this period, Named Plaintiff Ronard Lora typically received an additional amount of $16.00 per day from management as "tips."

90.     From approximately early August 2010, through approximately October 19, 2010, Named Plaintiff Ronard Lora worked from 7:30 a.m. to 7:30 p.m., five days a week, at Harlem for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Ronard Lora typically received an additional amount of $16.00 per day from management as "tips."

91.     Upon information and belief, in the course of Named Plaintiff Ronard Lora's employment at J.V. Car Wash/Broadway and Harlem, Named Plaintiff Ronard Lora had conversations with his co-workers, from whom he learned that the employees who worked at Webster worked the same hours as the employees at J.V. Car Wash/Broadway and at Harlem, and that the employees who worked at Webster were paid in the same manner and amounts (or less) than the employees at J.V. Car Wash/Broadway and at Harlem.

92.     Throughout the period of his employment, Defendants never advised Named Plaintiff Ronard Lora of the tip credit provisions of the FLSA, and Defendants never permitted Named Plaintiff Ronard Lora to retain all of the amounts that he received as tips.  Further, throughout the period of his employment, Defendants never advised Named Plaintiff Ronard

Lora of the tip credit provisions of the New York Labor Law, and Defendants never permitted Named Plaintiff Ronard Lora to retain all of the amounts that he received as tips.

93.    Defendants have failed to compensate Named Plaintiff Ronard Lora at an hourly rate that was at least equal to the statutory minimum hourly wage rate.

94.    At all times relevant to this Amended Complaint, Named Plaintiff Ronard Lora was required to be paid overtime pay at the statutory rate of one-and-one-half times his regular hourly rate of pay after he had worked forty (40) hours in a workweek.

95.    From approximately October 17, 2009, through approximately October 19, 2010, Defendants have failed to compensate Named Plaintiff Ronard Lora for time worked in excess of forty (40) hours per week at a rate of at least one-and-one-half times his regular hourly rate.

96.    From approximately October 17, 2009, through approximately October 19, 2010, Named Plaintiff Ronard Lora worked more than ten (10) hours and/or worked a split shift on most workdays on which he was employed by the Defendants.

97.    From approximately October 17, 2009, through approximately October 19, 2010, Defendants have failed to compensate Named Plaintiff Ronard Lora for time worked on a shift of more than ten (10) hours and/or worked on a split shift.

98.    Defendants willfully disregarded and purposefully evaded record keeping requirements of the FLSA and the New York Labor Law by failing to maintain accurate time sheets, payroll records and post compliance posters.

99.    At all times relevant to this Amended Complaint, Defendants paid Named Plaintiff Ronard Lora in cash, without providing an accurate indication as to his rate of pay, his hours worked each day, and the total hours he worked each week.

100.    Defendants denied Named Plaintiff Ronard Lora time off for meals and breaks.

101.    On numerous occasions, Named Plaintiff Ronard Lora received neither the thirty (30) minute noonday break period during shifts in excess of six (6) hours that extend over the noonday meal period, nor the additional twenty (20) minutes between 5:00 p.m. and 7:00 p.m. for those employed on a shift starting before 11:00 a.m. and continuing after 7:00 p.m.

102.    Defendants' failure to pay Named Plaintiff Ronard Lora for all his hours worked has been willful.

103.    Defendants' failure to pay Named Plaintiff Ronard Lora an overtime premium for his work in excess of forty (40) hours per week has been willful.

104.    Defendants' failure to pay Named Plaintiff Ronard Lora for working in excess of a spread of ten hours per day and/or for working a split shift has been willful.

B.    Hugo Rivera.

105.    Named Plaintiff Rivera was an employee of the Defendants, working at Bayway, from approximately February 2009, through approximately September 25, 2011.

106.    From approximately February 2009 through approximately March 2011, Named Plaintiff Rivera worked from 8:00 a.m. to 6:00 p.m., seven days a week, for which he was typically paid an average of approximately $30.00 per day.

107.    From approximately March 2011, through approximately September 25, 2011, Named Plaintiff Rivera worked from 8:00 a.m. to 6:00 p.m., six days a week, for which he was typically paid an average of approximately $30.00 per day.

108.    At times, the Car Wash Defendants failed to pay Named Plaintiff Rivera anything for hours that he worked.

109.    Throughout the period of his employment, Defendants withheld "tips" paid by customers at Bayway from Named Plaintiff Rivera.

18

110.    Throughout the period of his employment, Defendants never advised Named Plaintiff Rivera of the tip credit provisions of the FLSA, and Defendants never permitted Named Plaintiff Rivera to retain all of the amounts that he received as tips.

111.    Defendants have failed to compensate Named Plaintiff Rivera at an hourly rate that was at least equal to the statutory minimum hourly wage rate.

112.    At all times relevant to this Amended Complaint, Named Plaintiff Rivera was required to be paid overtime pay at the statutory rate of one-and-one-half times his regular hourly rate of pay after he had worked forty (40) hours in a workweek.

113.    From approximately February 2009, through approximately September 25, 2011, Defendants have failed to compensate Named Plaintiff Rivera for time worked in excess of forty (40) hours per week at a rate of at least one-and-one-half times his regular hourly rate.

114.    Defendants willfully disregarded and purposefully evaded record keeping requirements of the FLSA and the New Jersey Wage and Hour Law by failing to maintain accurate time sheets, payroll records and post compliance posters.

115.    At all times relevant to this Amended Complaint, Defendants paid Named Plaintiff Rivera, wholly or partially in cash, without providing an accurate indication as to his rate of pay, his hours worked each day, and the total hours he worked each week.

116.    Defendants denied Named Plaintiff Rivera time off for meals and breaks.

117.    Defendants' failure to pay Named Plaintiff Rivera for all his hours worked has been willful.

118.    Defendants' failure to pay Named Plaintiff Rivera an overtime premium for his work in excess of forty (40) hours per week has been willful.

C.     Marco Antonio Diaz.

119.    Named Plaintiff Diaz was an employee of the Defendants, working at J.V. Car Wash/Broadway and at Harlem, from approximately January 31, 2008, through approximately June 5, 2012.

120.    From approximately January 31, 2008, through approximately early July 2009, Named Plaintiff Diaz worked from 7:30 a.m. to 7:30 p.m., six days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $50.00 per day.  During this period, Named Plaintiff Diaz typically received an additional amount of approximately $20.00 per day from management as "tips."

121.    From approximately August 2009, through approximately July 2010, Named Plaintiff Diaz worked from 7:30 a.m. to 7:30 p.m., six days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $60.00 per day.  During this period, Named Plaintiff Diaz typically received an additional amount of approximately $20.00 per day from management as "tips."

122.    From approximately August 2010, through approximately September 2011, Named Plaintiff Diaz worked from 7:30 a.m. to 7:30 p.m., three days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Diaz typically received an additional amount of approximately $20.00 per day from management as "tips."

123.    From approximately October 2011, through approximately May 26, 2012, Named Plaintiff Diaz worked from 7:30 a.m. to 7:30 p.m., six days a week, at J.V. Car Wash/Broadway and/or at Harlem, for which he was typically paid approximately $70.00 per day.  During this

period, Named Plaintiff Diaz typically received an additional amount of approximately $17.00 per day from management as "tips."

124.    During the week of May 27, 2012, Named Plaintiff Diaz worked three days, from 7:30 a.m. to 7:30 p.m., at J.V. Car Wash/Broadway and/or at Harlem, for which he was paid approximately $70.00 per day.  Named Plaintiff Diaz received an additional amount of approximately $17.00 per day from management as "tips" for these days.

125.    During the week of June 3, 2012, Named Plaintiff Diaz worked one day (on June 3, 2012) at J.V. Car Wash/Broadway, for which he was paid approximately $70.00.  Named Plaintiff Diaz also received an additional amount of approximately $17.00 from management as "tips."

126.    Upon information and belief, in the course of Named Plaintiff Diaz's employment at J.V. Car Wash/Broadway and/or Harlem, Named Plaintiff Diaz observed and had conversations with his co-workers.  From his personal observations of and from his conversations with his co-workers, Named Plaintiff Diaz learned that the other employees who worked at J.V. Car Wash/Broadway and/or Harlem worked approximately the same hours as he did, and that the other employees who worked at J.V. Car Wash/Broadway, Webster and/or Harlem were paid in the same manner and amounts (or less) than he was paid.

127.    Throughout the period of his employment, Defendants never advised Named Plaintiff Diaz of the tip credit provisions of the FLSA, and Defendants never permitted Named Plaintiff Diaz to retain all of the amounts that he received as tips.  Further, throughout the period of his employment, Defendants never advised Named Plaintiff Diaz of the tip credit provisions of the New York Labor Law, and Defendants never permitted Named Plaintiff Diaz to retain all of the amounts that he received as tips.

128.     Defendants have failed to compensate Named Plaintiff Diaz at an hourly rate that was at least equal to the statutory minimum hourly wage rate.

129.     At all times relevant to this Amended Complaint, Named Plaintiff Diaz was required to be paid overtime pay at the statutory rate of one-and-one-half times his regular hourly rate of pay after he had worked forty (40) hours in a workweek.

130.     From approximately January 31, 2008, through approximately June 5, 2012, Defendants have failed to compensate Named Plaintiff Diaz for time worked in excess of forty (40) hours per week at a rate of at least one and one-half times his regular hourly rate.

131.     From approximately January 31, 2008, through approximately June 5, 2012, Named Plaintiff Diaz worked more than ten (10) hours and/or worked a split shift on most workdays on which he was employed by the Defendants.

132.     From approximately January 31, 2008, through approximately June 5, 2012, Defendants have failed to compensate Named Plaintiff Diaz for time worked on a shift of more than ten (10) hours and/or worked on a split shift.

133.     Defendants willfully disregarded and purposefully evaded record keeping requirements of the FLSA and the New York Labor Law by failing to maintain accurate time sheets, payroll records and post compliance posters.

134.     At all times relevant to this Amended Complaint, Defendants paid Named Plaintiff Diaz in cash, without providing an accurate indication as to his rate of pay, his hours worked each day, and the total hours he worked each week.

135.     Defendants denied Named Plaintiff Diaz time off for meals and breaks.

136.     On numerous occasions, Named Plaintiff Diaz received neither the thirty (30) minute noonday break period during shifts in excess of six (6) hours that extend over the

noonday meal period, nor the additional twenty (20) minutes between 5:00 p.m. and 7:00 p.m. for those employed on a shift starting before 11:00 a.m. and continuing after 7:00 p.m.

137.    Defendants' failure to pay Named Plaintiff Diaz for all his hours worked has been willful.

138.    Defendants' failure to pay Named Plaintiff Diaz an overtime premium for his work in excess of forty (40) hours per week has been willful.

139.    Defendants' failure to pay Named Plaintiff Diaz for working in excess of a spread of ten hours per day and/or for working a split shift has been willful.

D.    Melvin Lora.

140.    Named Plaintiff Melvin Lora was an employee of the Defendants, working at J.V. Car Wash/Broadway and/or at Harlem, from approximately December 2009, through approximately June 5, 2012.

141.    From approximately December 2009, through approximately August 19, 2010, Named Plaintiff Melvin Lora worked from 7:30 a.m. to 7:30 p.m., six days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $60.00 per day.  During this period, Named Plaintiff Melvin Lora typically received an additional amount of approximately $20.00 per day from management as "tips."

142.    From approximately August 20, 2010, through approximately November 2010, Named Plaintiff Melvin Lora worked from 7:30 a.m. to 7:30 p.m., four days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Melvin Lora typically received an additional amount of approximately $20.00 per day from management as "tips."

143.    From approximately December 2010, through approximately March 2011, Named Plaintiff Melvin Lora worked from 7:30 a.m. to 7:30 p.m., six days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Melvin Lora typically received an additional amount of approximately $20.00 per day from management as "tips."

144.    From approximately April 2011, through approximately July 2011, Named Plaintiff Melvin Lora worked from 7:30 a.m. to 7:30 p.m., five days a week, at J.V. Car Wash/Broadway and at Harlem, for which he was typically paid approximately $70.00 per day. During this period, Named Plaintiff Melvin Lora typically received an additional amount of approximately $15.00 per day from management as "tips."

145.    From approximately August 2011, through approximately January 2012, Named Plaintiff Melvin Lora worked from 7:30 a.m. to 7:30 p.m., four days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Melvin Lora typically received an additional amount of approximately $17.50 per day from management as "tips."

146.    From approximately February 1, 2012, through approximately April 9, 2012, Named Plaintiff Melvin Lora worked from 7:30 a.m. to 7:30 p.m., six days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Melvin Lora typically received an additional amount of approximately $17.50 per day from management as "tips."

147.    From approximately April 10, 2012, through approximately May 11, 2012, Named Plaintiff Melvin Lora worked from 7:30 a.m. to 7:30 p.m., four days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day.  During this

period, Named Plaintiff Melvin Lora typically received an additional amount of approximately $17.50 per day from management as "tips."

148.    From approximately May 12, 2012, through approximately June 2, 2012, Named Plaintiff Melvin Lora worked from 7:30 a.m. to 7:30 p.m., three days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Melvin Lora typically received an additional amount of approximately $17.50 per day from management as "tips."

149.    During the week of June 3, 2012, Named Plaintiff Melvin Lora worked one day (on June 3, 2012) at J.V. Car Wash/Broadway, for which he was paid approximately $70.00. Named Plaintiff Melvin Lora also received an additional amount of approximately $17.50 from management as "tips."

150.    Upon information and belief, in the course of Named Plaintiff Melvin Lora's employment at J.V. Car Wash/Broadway and/or Harlem, Named Plaintiff Melvin Lora observed and had conversations with his co-workers.  From his personal observations of and from his conversations with his co-workers, Named Plaintiff Melvin Lora learned that the other employees who worked at J.V. Car Wash/Broadway, Webster, Harlem and/or Bayway worked approximately the same hours as he did, and that the other employees who worked at J.V. Car Wash/Broadway, Webster, Harlem and/or Bayway were paid in the same manner and amounts (or less) than he was paid.

151.    Throughout the period of his employment, Defendants never advised Named Plaintiff Melvin Lora of the tip credit provisions of the FLSA, and Defendants never permitted Named Plaintiff Melvin Lora to retain all of the amounts that he received as tips.  Further, throughout the period of his employment, Defendants never advised Named Plaintiff Melvin

Lora of the tip credit provisions of the New York Labor Law, and Defendants never permitted Named Plaintiff Melvin Lora to retain all of the amounts that he received as tips.

152.    Defendants have failed to compensate Named Plaintiff Melvin Lora at an hourly rate that was at least equal to the statutory minimum hourly wage rate.

153.    At all times relevant to this Amended Complaint, Named Plaintiff Melvin Lora was required to be paid overtime pay at the statutory rate of one-and-one-half times his regular hourly rate of pay after he had worked forty (40) hours in a workweek.

154.    From approximately December 2009, through approximately June 5, 2012, Defendants have failed to compensate Named Plaintiff Melvin Lora for time worked in excess of forty (40) hours per week at a rate of at least one and one-half times his regular hourly rate.

155.    From approximately December 2009, through approximately June 5, 2012, Named Plaintiff Melvin Lora worked more than ten (10) hours and/or worked a split shift on most workdays on which he was employed by the Defendants.

156.    From approximately December 2009, through approximately June 5, 2012, Defendants have failed to compensate Named Plaintiff Melvin Lora for time worked on a shift of more than ten (10) hours and/or worked on a split shift.

157.    Defendants willfully disregarded and purposefully evaded record keeping requirements of the FLSA and the New York Labor Law by failing to maintain accurate time sheets, payroll records and post compliance posters.

158.    At all times relevant to this Amended Complaint, Defendants paid Named Plaintiff Melvin Lora in cash, without providing an accurate indication as to his rate of pay, his hours worked each day, and the total hours he worked each week.

159.    Defendants denied Named Plaintiff Melvin Lora time off for meals and breaks.

160.    On numerous occasions, Named Plaintiff Melvin Lora received neither the thirty (30) minute noonday break period during shifts in excess of six (6) hours that extend over the noonday meal period, nor the additional twenty (20) minutes between 5:00 p.m. and 7:00 p.m. for those employed on a shift starting before 11:00 a.m. and continuing after 7:00 p.m.

161.    Defendants' failure to pay Named Plaintiff Melvin Lora for all his hours worked has been willful.

162.    Defendants' failure to pay Named Plaintiff Melvin Lora an overtime premium for his work in excess of forty (40) hours per week has been willful.

163.    Defendants' failure to pay Named Plaintiff Melvin Lora for working in excess of a spread of ten hours per day and/or for working a split shift has been willful.

E.    <u>Eduardo Lora.</u>

164.    Named Plaintiff Eduardo Lora was an employee of the Defendants, working at J.V. Car Wash/Broadway, from approximately December 2009, through approximately June 5, 2012.

165.    From approximately December 2009, through approximately August 19, 2010, Named Plaintiff Eduardo Lora worked from 7:30 a.m. to 7:30 p.m., six days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $60.00 per day.  During this period, Named Plaintiff Eduardo Lora typically received an additional amount of approximately $20.00 per day from management as "tips."

166.    From approximately August 20, 2010, through approximately November 2010, Named Plaintiff Eduardo Lora worked from 7:30 a.m. to 7:30 p.m., four days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day.  During this

period, Named Plaintiff Eduardo Lora typically received an additional amount of approximately $20.00 per day from management as "tips."

167.     From approximately December 2010, through approximately March 2011, Named Plaintiff Eduardo Lora worked from 7:30 a.m. to 7:30 p.m., six days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Eduardo Lora typically received an additional amount of approximately $20.00 per day from management as "tips."

168.     From approximately April 2011, through approximately May 11, 2012, Named Plaintiff Eduardo Lora worked from 7:30 a.m. to 7:30 p.m., four days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Eduardo Lora typically received an additional amount of approximately $18.00 per day from management as "tips."

169.     From approximately May 12, 2012, through approximately June 2, 2012, Named Plaintiff Eduardo Lora worked from 7:30 a.m. to 7:30 p.m., three days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Eduardo Lora typically received an additional amount of approximately $18.00 per day from management as "tips."

170.     During the week of June 3, 2012, Named Plaintiff Eduardo Lora worked one day (on June 3, 2012) at J.V. Car Wash/Broadway, for which he was paid approximately $70.00. Named Plaintiff Eduardo Lora also received an additional amount of approximately $18.00 from management as "tips."

171.     Upon information and belief, in the course of Named Plaintiff Eduardo Lora's employment at J.V. Car Wash/Broadway, Named Plaintiff Eduardo Lora observed and had

conversations with his co-workers.  From his personal observations of and from his conversations with his co-workers, Named Plaintiff Eduardo Lora learned that the other employees who worked at J.V. Car Wash/Broadway, Harlem and/or Bayway worked approximately the same hours as he did, and that the other employees who worked at J.V. Car Wash/Broadway, Harlem and/or Bayway were paid in the same manner and amounts (or less) than he was paid.

172.    Throughout the period of his employment, Defendants never advised Named Plaintiff Eduardo Lora of the tip credit provisions of the FLSA, and Defendants never permitted Named Plaintiff Eduardo Lora to retain all of the amounts that he received as tips.  Further, throughout the period of his employment, Defendants never advised Named Plaintiff Eduardo Lora of the tip credit provisions of the New York Labor Law, and Defendants never permitted Named Plaintiff Eduardo Lora to retain all of the amounts that he received as tips.

173.    Defendants have failed to compensate Named Plaintiff Eduardo Lora at an hourly rate that was at least equal to the statutory minimum hourly wage rate.

174.    At all times relevant to this Amended Complaint, Named Plaintiff Eduardo Lora was required to be paid overtime pay at the statutory rate of one-and-one-half times his regular hourly rate of pay after he had worked forty (40) hours in a workweek.

175.    From approximately December 2009, through approximately June 5, 2012, Defendants have failed to compensate Named Plaintiff Eduardo Lora for time worked in excess of forty (40) hours per week at a rate of at least one and one-half times his regular hourly rate.

176.    From approximately December 2009, through approximately June 5, 2012, Named Plaintiff Eduardo Lora worked more than ten (10) hours and/or worked a split shift on most workdays on which he was employed by the Defendants.

177.    From approximately December 2009, through approximately June 5, 2012, Defendants have failed to compensate Named Plaintiff Eduardo Lora for time worked on a shift of more than ten (10) hours and/or worked on a split shift.

178.    Defendants willfully disregarded and purposefully evaded record keeping requirements of the FLSA and the New York Labor Law by failing to maintain accurate time sheets, payroll records and post compliance posters.

179.    At all times relevant to this Amended Complaint, Defendants paid Named Plaintiff Eduardo Lora in cash, without providing an accurate indication as to his rate of pay, his hours worked each day, and the total hours he worked each week.

180.    Defendants denied Named Plaintiff Eduardo Lora time off for meals and breaks.

181.    On numerous occasions, Named Plaintiff Eduardo Lora received neither the thirty (30) minute noonday break period during shifts in excess of six (6) hours that extend over the noonday meal period, nor the additional twenty (20) minutes between 5:00 p.m. and 7:00 p.m. for those employed on a shift starting before 11:00 a.m. and continuing after 7:00 p.m.

182.    Defendants' failure to pay Named Plaintiff Eduardo Lora for all his hours worked has been willful.

183.    Defendants' failure to pay Named Plaintiff Eduardo Lora an overtime premium for his work in excess of forty (40) hours per week has been willful.

184.    Defendants' failure to pay Named Plaintiff Eduardo Lora for working in excess of a spread of ten hours per day and/or for working a split shift has been willful.

F.    Giovanni Paulino.

185.    Named Plaintiff Paulino was an employee of the Defendants, working at J.V. Car Wash/Broadway and/or Bayway, from approximately February 11, 2008, through approximately June 5, 2012.

186.    From approximately February 11, 2008, through approximately July 2008, Named Plaintiff Paulino worked from 7:30 a.m. to 7:30 p.m., six days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $50.00 per day.  During this period, Named Plaintiff Paulino typically received an additional amount of approximately $20.00 per day from management as "tips."

187.    From approximately August 2008, through approximately July 2009, Named Plaintiff Paulino worked from 7:30 a.m. to 7:30 p.m., five days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $50.00 per day.  During this period, Named Plaintiff Paulino typically received an additional amount of approximately $20.00 per day from management as "tips."

188.    From approximately August 2009, through approximately July 2010, Named Plaintiff Paulino worked from 7:30 a.m. to 7:30 p.m., five days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $60.00 per day.  During this period, Named Plaintiff Paulino typically received an additional amount of approximately $20.00 per day from management as "tips."

189.    From approximately August 2010, through approximately April 2011, Named Plaintiff Paulino worked from 7:30 a.m. to 7:30 p.m., three days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day.  During this

period, Named Plaintiff Paulino typically received an additional amount of approximately $20.00 per day from management as "tips."

190.     From approximately May 2011, through approximately November 11, 2011, Named Plaintiff Paulino worked from 7:30 a.m. to 7:30 p.m., five days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Paulino typically received an additional amount of approximately $20.00 per day from management as "tips."

191.     During the month of December 2011, Named Plaintiff Paulino worked from 7:30 a.m. to 7:30 p.m., three days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day, and for which Named Plaintiff Paulino typically received an additional amount of approximately $20.00 per day from management as "tips."  During this period, Named Plaintiff Paulino also worked from 8:00 a.m. to 6:00 p.m., two days a week, at Bayway, for which he was typically paid an average of approximately $45.00 per day.

192.     From approximately January 2012, through approximately February 12, 2012, Named Plaintiff Paulino worked from 7:30 a.m. to 7:30 p.m., four days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Paulino typically received an additional amount of approximately $20.00 per day from management as "tips."

193.     From approximately April 10, 2012, through approximately May 11, 2012, Named Plaintiff Paulino worked from 7:30 a.m. to 7:30 p.m., four days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Paulino typically received an additional amount of approximately $20.00 per day from management as "tips."

194.     From approximately May 12, 2012, through approximately June 2, 2012, Named Plaintiff Paulino worked from 7:30 a.m. to 7:30 p.m., three days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Paulino typically received an additional amount of approximately $20.00 per day from management as "tips."

195.     During the week of June 3, 2012, Named Plaintiff Paulino worked one day (on June 3, 2012) at J.V. Car Wash/Broadway, for which he was paid approximately $70.00.  Named Plaintiff Paulino also received an additional amount of approximately $20.00 from management as "tips."

196.     Upon information and belief, in the course of Named Plaintiff Paulino's employment at J.V. Car Wash/Broadway and/or Bayway, Named Plaintiff Paulino observed and had conversations with his co-workers.  From his personal observations of and from his conversations with his co-workers, Named Plaintiff Paulino learned that the other employees who worked at J.V. Car Wash/Broadway, Harlem and/or Bayway worked approximately the same hours as he did, and that the other employees who worked at J.V. Car Wash/Broadway, Harlem and/or Bayway were paid in the same manner and amounts (or less) than he was paid.

197.     Throughout the period of his employment, Defendants never advised Named Plaintiff Paulino of the tip credit provisions of the FLSA, and Defendants never permitted Named Plaintiff Paulino to retain all of the amounts that he received as tips.  Further, throughout the period of his employment, Defendants never advised Named Plaintiff Paulino of the tip credit provisions of the New York Labor Law, and Defendants never permitted Named Plaintiff Paulino to retain all of the amounts that he received as tips.

198.    Defendants have failed to compensate Named Plaintiff Paulino at an hourly rate that was at least equal to the statutory minimum hourly wage rate.

199.    At all times relevant to this Amended Complaint, Named Plaintiff Paulino was required to be paid overtime pay at the statutory rate of one-and-one-half times his regular hourly rate of pay after he had worked forty (40) hours in a workweek.

200.    From approximately February 11, 2008, through approximately June 5, 2012, Defendants have failed to compensate Named Plaintiff Paulino for time worked in excess of forty (40) hours per week at a rate of at least one and one-half times his regular hourly rate.

201.    From approximately February 11, 2008, through approximately June 5, 2012, Named Plaintiff Paulino worked more than ten (10) hours and/or worked a split shift on most workdays on which he was employed by the Defendants.

202.    From approximately February 11, 2008, through approximately June 5, 2012, Defendants have failed to compensate Named Plaintiff Paulino for time worked on a shift of more than ten (10) hours and/or worked on a split shift.

203.    Defendants willfully disregarded and purposefully evaded record keeping requirements of the FLSA, the New York Labor Law and the New Jersey Wage and Hour Law by failing to maintain accurate time sheets, payroll records and post compliance posters.

204.    At all times relevant to this Amended Complaint, Defendants paid Named Plaintiff Paulino in cash, without providing an accurate indication as to his rate of pay, his hours worked each day, and the total hours he worked each week.

205.    Defendants denied Named Plaintiff Paulino time off for meals and breaks.

206.    On numerous occasions, Named Plaintiff Paulino received neither the thirty (30) minute noonday break period during shifts in excess of six (6) hours that extend over the

noonday meal period, nor the additional twenty (20) minutes between 5:00 p.m. and 7:00 p.m.

for those employed on a shift starting before 11:00 a.m. and continuing after 7:00 p.m.

207.    Defendants' failure to pay Named Plaintiff Paulino for all his hours worked has

been willful.

208.    Defendants' failure to pay Named Plaintiff Paulino an overtime premium for his

work in excess of forty (40) hours per week has been willful.

209.    Defendants' failure to pay Named Plaintiff Paulino for working in excess of a

spread of ten hours per day and/or for working a split shift has been willful.

G.    Jose Rodriguez.

210.    Named Plaintiff Jose Rodriguez was an employee of the Defendants, working at

J.V. Car Wash/Broadway, from approximately September 20, 2004, through approximately June

5, 2012.

211.    From approximately September 20, 2004, through approximately July 2009,

Named Plaintiff Jose Rodriguez worked from 7:30 a.m. to 7:30 p.m., six days a week, at J.V. Car

Wash/Broadway, for which he was typically paid approximately $50.00 per day.  During this

period, Named Plaintiff Jose Rodriguez typically received an additional amount of

approximately $20.00 per day from management as "tips."

212.    From approximately August 2009, through approximately July 2010, Named

Plaintiff Jose Rodriguez worked from 7:30 a.m. to 7:30 p.m., six days a week, at J.V. Car

Wash/Broadway, for which he was typically paid approximately $60.00 per day.  During this

period, Named Plaintiff Jose Rodriguez typically received an additional amount of

approximately $20.00 per day from management as "tips."

213. From approximately August 2010, through approximately December 18, 2011, Named Plaintiff Jose Rodriguez worked from 7:30 a.m. to 7:30 p.m., four days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day. During this period, Named Plaintiff Jose Rodriguez typically received an additional amount of approximately $20.00 per day from management as "tips."

214. From approximately January 22, 2012, through approximately May 10, 2012, Named Plaintiff Jose Rodriguez worked from 7:30 a.m. to 7:30 p.m., five days a week, at J.V. Car Wash/Broadway, for which he was typically paid approximately $70.00 per day. During this period, Named Plaintiff Jose Rodriguez typically received an additional amount of approximately $20.00 per day from management as "tips."

215. During the week of June 3, 2012, Named Plaintiff Jose Rodriguez worked one day (on June 3, 2012) at J.V. Car Wash/Broadway, for which he was paid approximately $70.00. Named Plaintiff Jose Rodriguez also received an additional amount of approximately $20.00 from management as "tips."

216. Upon information and belief, in the course of Named Plaintiff Jose Rodriguez's employment at J.V. Car Wash/Broadway, Named Plaintiff Jose Rodriguez observed and had conversations with his co-workers. From his personal observations of and from his conversations with his co-workers, Named Plaintiff Jose Rodriguez learned that the other employees who worked at J.V. Car Wash/Broadway, Harlem and/or Bayway worked approximately the same hours as he did, and that the other employees who worked at J.V. Car Wash/Broadway, Harlem and/or Bayway were paid in the same manner and amounts (or less) than he was paid.

217.    Throughout the period of his employment, Defendants never advised Named Plaintiff Jose Rodriguez of the tip credit provisions of the FLSA, and Defendants never permitted Named Plaintiff Jose Rodriguez to retain all of the amounts that he received as tips. Further, throughout the period of his employment, Defendants never advised Named Plaintiff Jose Rodriguez of the tip credit provisions of the New York Labor Law, and Defendants never permitted Named Plaintiff Jose Rodriguez to retain all of the amounts that he received as tips.

218.    Defendants have failed to compensate Named Plaintiff Jose Rodriguez at an hourly rate that was at least equal to the statutory minimum hourly wage rate.

219.    At all times relevant to this Amended Complaint, Named Plaintiff Jose Rodriguez was required to be paid overtime pay at the statutory rate of one-and-one-half times his regular hourly rate of pay after he had worked forty (40) hours in a workweek.

220.    From approximately September 20, 2004, through approximately June 5, 2012, Defendants have failed to compensate Named Plaintiff Jose Rodriguez for time worked in excess of forty (40) hours per week at a rate of at least one and one-half times his regular hourly rate.

221.    From approximately September 20, 2004, through approximately June 5, 2012, Named Plaintiff Jose Rodriguez worked more than ten (10) hours and/or worked a split shift on most workdays on which he was employed by the Defendants.

222.    From approximately September 20, 2004, through approximately June 5, 2012, Defendants have failed to compensate Named Plaintiff Jose Rodriguez for time worked on a shift of more than ten (10) hours and/or worked on a split shift.

223.    Defendants willfully disregarded and purposefully evaded record keeping requirements of the FLSA and the New York Labor Law by failing to maintain accurate time sheets, payroll records and post compliance posters.

224.    At all times relevant to this Amended Complaint, Defendants paid Named Plaintiff Jose Rodriguez in cash, without providing an accurate indication as to his rate of pay, his hours worked each day, and the total hours he worked each week.

225.    Defendants denied Named Plaintiff Jose Rodriguez time off for meals and breaks.

226.    On numerous occasions, Named Plaintiff Jose Rodriguez received neither the thirty (30) minute noonday break period during shifts in excess of six (6) hours that extend over the noonday meal period, nor the additional twenty (20) minutes between 5:00 p.m. and 7:00 p.m. for those employed on a shift starting before 11:00 a.m. and continuing after 7:00 p.m.

227.    Defendants' failure to pay Named Plaintiff Jose Rodriguez for all his hours worked has been willful.

228.    Defendants' failure to pay Named Plaintiff Jose Rodriguez an overtime premium for his work in excess of forty (40) hours per week has been willful.

229.    Defendants' failure to pay Named Plaintiff Jose Rodriguez for working in excess of a spread of ten hours per day and/or for working a split shift has been willful.

H.    Jose Rodolfo Rodriguez-Tineo.

230.    Named Plaintiff Rodriguez-Tineo was an employee of the Defendants, working at Harlem, from approximately July 10, 2011, through approximately June 7, 2012.

231.    From approximately July 10, 2011, through approximately September 10, 2011, Named Plaintiff Rodriguez-Tineo worked from 7:30 a.m. to 7:30 p.m., three days a week, at Harlem, for which he was typically paid approximately $70.00 per day. During this period, Named Plaintiff Rodriguez-Tineo typically received an additional amount of approximately $15.00 per day from management as "tips."

232.    From approximately September 11, 2011, through approximately December 25, 2011, Named Plaintiff Rodriguez-Tineo worked from 7:30 a.m. to 7:30 p.m., five days a week, at Harlem, for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Rodriguez-Tineo typically received an additional amount of approximately $15.00 per day from management as "tips."

233.    From approximately February 1, 2012, through approximately April 1, 2012, Named Plaintiff Rodriguez-Tineo worked from 7:30 a.m. to 7:30 p.m., five days a week, at Harlem, for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Rodriguez-Tineo typically received an additional amount of approximately $15.00 per day from management as "tips."

234.    From approximately April 17, 2012, through approximately mid-May, 2012, Named Plaintiff Rodriguez-Tineo worked from 7:30 a.m. to 7:30 p.m., five days a week, at Harlem, for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Rodriguez-Tineo typically received an additional amount of approximately $15.00 per day from management as "tips."

235.    From approximately mid-May 2012, through approximately June 2, 2012, Named Plaintiff Rodriguez-Tineo worked from 7:30 a.m. to 7:30 p.m., three days a week, at Harlem, for which he was typically paid approximately $70.00 per day.  During this period, Named Plaintiff Rodriguez-Tineo typically received an additional amount of approximately $15.00 per day from management as "tips."

236.    During the week of June 3, 2012, Named Plaintiff Rodriguez-Tineo worked one day (on June 3, 2012) at Harlem, for which he was paid approximately $70.00.  Named Plaintiff

Rodriguez-Tineo also received an additional amount of approximately $15.00 from management as "tips."

237.     Upon information and belief, in the course of Named Plaintiff Rodriguez-Tineo's employment at Harlem, Named Plaintiff Rodriguez-Tineo observed and had conversations with his co-workers.  From his personal observations of and from his conversations with his co-workers, Named Plaintiff Rodriguez-Tineo learned that the other employees who worked at J.V. Car Wash/Broadway worked approximately the same hours as he did, and that the other employees who worked at J.V. Car Wash/Broadway were paid in the same manner and amounts (or less) than he was paid.

238.     Throughout the period of his employment, Defendants never advised Named Plaintiff Rodriguez-Tineo of the tip credit provisions of the FLSA, and Defendants never permitted Named Plaintiff Rodriguez-Tineo to retain all of the amounts that he received as tips. Further, throughout the period of his employment, Defendants never advised Named Plaintiff Rodriguez-Tineo of the tip credit provisions of the New York Labor Law, and Defendants never permitted Named Plaintiff Rodriguez-Tineo to retain all of the amounts that he received as tips.

239.     Defendants have failed to compensate Named Plaintiff Rodriguez-Tineo at an hourly rate that was at least equal to the statutory minimum hourly wage rate.

240.     At all times relevant to this Amended Complaint, Named Plaintiff Rodriguez-Tineo was required to be paid overtime pay at the statutory rate of one-and-one-half times his regular hourly rate of pay after he had worked forty (40) hours in a workweek.

241.     From approximately July 10, 2011, through approximately June 7, 2012, Defendants have failed to compensate Named Plaintiff Rodriguez-Tineo for time worked in

excess of forty (40) hours per week at a rate of at least one and one-half times his regular hourly rate.

242.    From approximately July 10, 2011, through approximately June 7, 2012, Named Plaintiff Rodriguez-Tineo worked more than ten (10) hours and/or worked a split shift on most workdays on which he was employed by the Defendants.

243.    From approximately July 10, 2011, through approximately June 7, 2012, Defendants have failed to compensate Named Plaintiff Rodriguez-Tineo for time worked on a shift of more than ten (10) hours and/or worked on a split shift.

244.    Defendants willfully disregarded and purposefully evaded record keeping requirements of the FLSA and the New York Labor Law by failing to maintain accurate time sheets, payroll records and post compliance posters.

245.    At all times relevant to this Amended Complaint, Defendants paid Named Plaintiff Rodriguez-Tineo in cash, without providing an accurate indication as to his rate of pay, his hours worked each day, and the total hours he worked each week.

246.    Defendants denied Named Plaintiff Rodriguez-Tineo time off for meals and breaks.

247.    On numerous occasions, Named Plaintiff Rodriguez-Tineo received neither the thirty (30) minute noonday break period during shifts in excess of six (6) hours that extend over the noonday meal period, nor the additional twenty (20) minutes between 5:00 p.m. and 7:00 p.m. for those employed on a shift starting before 11:00 a.m. and continuing after 7:00 p.m.

248.     Defendants' failure to pay Named Plaintiff Rodriguez-Tineo for all his hours worked has been willful.

249.    Defendants' failure to pay Named Plaintiff Rodriguez-Tineo an overtime premium for his work in excess of forty (40) hours per week has been willful.

250.    Defendants' failure to pay Named Plaintiff Rodriguez-Tineo for working in excess of a spread of ten hours per day and/or for working a split shift has been willful.

I.      <u>Retaliatory Actions by Defendants.</u>

251.    On May 11, 2012, an initial conference was held by the Court in the instant action.  Defendant Vasquez attended that conference.

252.    On or about May 11, 2012, Defendant Vargas told Named Plaintiff Melvin Lora that Defendant Vasquez had instructed Defendant Vargas to reduce the work schedules of the employees who were participating in the instant action to three days per week, and only on the week-end (Friday, Saturday and Sunday).  Defendant Vargas also told Named Plaintiff Melvin Lora that Defendant Vasquez had instructed that if weather were to turn cloudy or rainy, the employees who were participating in the instant action were the first employees that Defendant Vargas was to send home.

253.    Following this conversation with Defendant Vargas, Named Plaintiff Melvin Lora's work-week was reduced from four days per week to three days per week.

254.    On or about May 26, 2012, at approximately 8:00 a.m., while Named Plaintiff Melvin Lora was working his shift at J.V. Car Wash/Broadway, Defendant Vargas told Named Plaintiff Melvin Lora that the employees who were participating in the instant action were no longer welcome at J.V. Car Wash/Broadway because they were suing the company.

255.    On a number of occasions between May 11, 2012, and June 5, 2012, Defendant Vargas told Named Plaintiff Melvin Lora that the employees who were participating in the instant action were on a "black list," and that Defendant Vasquez had told him [Defendant

42

Vargas] not to call the employees who were on that list to come into work, even if J.V. Car Wash/Broadway was very busy.

256.    Named Plaintiff Melvin Lora worked his shift at J.V. Car Wash/Broadway on June 3, 2012. On or about June 5, 2012, Defendant Vargas telephoned Named Plaintiff Melvin Lora, and told Named Plaintiff Melvin Lora that Defendant Vasquez had instructed him [Defendant Vargas] to fire all the employees who were participating in this action, because he [Defendant Vasquez] "was not going to work with enemies." Defendant Vargas told Named Plaintiff Melvin Lora not to come to work, and also told Named Plaintiff Melvin Lora to tell his brother, Named Plaintiff Eduardo, Lora not to come to work, either.

257.    On or about June 5, 2012, Defendants terminated Named Plaintiff Melvin Lora's employment in retaliation for his participation in the instant action.

258.    During the week-end of May 12-13, 2012, while Named Plaintiff Eduardo Lora was working, Defendant Vargas told him that he was on the "black list," because he was suing the company, and that all the employees on the "black list" were only going to get three days of work each week.

259.    Following this conversation with Defendant Vargas, Named Plaintiff Eduardo Lora's work-week was reduced from four days per week to three days per week.

260.    On a number of occasions between approximately May 12, 2012, and June 5, 2012, Defendant Vargas told Named Plaintiff Eduardo Lora that he and the other employees who were suing the company were on the "black list."

261.    During the week-end of May 19-20, 2012, Defendant Vargas told Named Plaintiff Eduardo Lora that Defendant Vasquez had instructed him [Defendant Vargas] to tell the employees who were suing the company that they were no longer welcome at the company, and

that the car wash could get "so busy that everything can break down," and that Defendant Vargas still was not to call the employees who were suing the company to come into work.

262.    Named Plaintiff Eduardo Lora worked his shift at J.V. Car Wash/Broadway on June 3, 2012.  On or about June 5, 2012, Named Plaintiff Eduardo Lora was in the room with his brother, Named Plaintiff Melvin Lora, when Defendant Vargas telephoned Named Plaintiff Melvin Lora.  At the conclusion of that telephone conversation, Named Plaintiff Eduardo Lora was told by his brother, Named Plaintiff Melvin Lora, that Defendant Vargas had instructed him not to come to work.  Named Plaintiff Melvin Lora told Named Plaintiff Eduardo Lora of his telephone conversation with Defendant Vargas, and of Defendant Vasquez's instruction to Defendant Vargas to fire all the people who were in the lawsuit, because Defendant Vasquez did not want "to work with enemies."

263.    On or about June 5, 2012, Defendants terminated Named Plaintiff Eduardo Lora's employment in retaliation for his participation in the instant action.

264.    On or about May 12, 2012, while Named Plaintiff Paulino was working his shift at J.V. Car Wash/Broadway, Defendant Vargas told Named Plaintiff Paulino that there was a list with the names of the employees who were participating in the instant action, and that those employees were only going to work on the week-ends, and only three days a week.

265.    Following this conversation with Defendant Vargas, Named Plaintiff Paulino's work-week was reduced from four days per week to three days per week.

266.    Named Plaintiff Paulino worked his shift at J.V. Car Wash/Broadway on June 3, 2012.  On or about June 5, 2012, at approximately 7:32 a.m., Defendant Vargas telephoned Named Plaintiff Paulino.  Defendant Vargas told Named Plaintiff Paulino not to come to the car wash any more, and that Defendant Vasquez had told him [Defendant Vargas] "to fire all the

people in the lawsuit and not to allow them back to work because he [Defendant Vasquez] was not going to work with enemies." Defendant Vargas told Named Plaintiff Paulino not to come to work.

267.   On or about June 5, 2012, Defendants terminated Named Plaintiff Paulino's employment in retaliation for his participation in the instant action.

268.   On or about May 26, 2012, while Named Plaintiff Diaz was working his shift at J.V. Car Wash/Broadway, Defendant Vargas told Named Plaintiff Diaz that Defendant Vasquez had instructed him [Defendant Vargas] to tell the employees who were participating in the instant action that their work schedules were being reduced to only three days (Friday, Saturday and Sunday) per week, as a "punishment" for suing the company.

269.   On or about May 28, 2012, while Named Plaintiff Diaz was working his shift at Harlem, Defendant Federus told Named Plaintiff Diaz that he was to go home after his shift ended, and that he would call Named Plaintiff Diaz if he was needed to work during the week.

270.   Following these conversations with Defendant Vargas and with Defendant Federus, Named Plaintiff Diaz's work-week was reduced from six days per week to three days per week.

271.   Named Plaintiff Diaz worked his shift at J.V. Car Wash/Broadway on June 3, 2012.  On or about June 5, 2012, Defendant Vargas telephoned Named Plaintiff Diaz.  Defendant Vargas told Named Plaintiff Diaz that Defendant Vasquez had instructed him [Defendant Vargas] to tell "the people who were in the lawsuit that they were no longer welcomed at the company because Jose [Defendant Vasquez] did not want people who were against him" working there.  Defendant Vargas told Named Plaintiff Diaz not to come to work.

272.     On or about June 5, 2012, Defendants terminated Named Plaintiff Diaz's employment in retaliation for his participation in the instant action.

273.     Named Plaintiff Jose Rodriguez worked his shift at J.V. Car Wash/Broadway on June 3, 2012.  On or about June 5, 2012, Defendant Vargas telephoned Named Plaintiff Jose Rodriguez.  Defendant Vargas told Named Plaintiff Jose Rodriguez that Defendant Vasquez had instructed him [Defendant Vargas] to tell Named Plaintiff Jose Rodriguez that he was no longer welcomed at the company because he was suing the company, and that Defendant Vasquez "can't work with enemies in the company."  Defendant Vargas told Named Plaintiff Jose Rodriguez not to come to work.

274.     On or about June 5, 2012, Defendants terminated Named Plaintiff Jose Rodriguez's employment in retaliation for his participation in the instant action.

275.     Named Plaintiff Rodriguez-Tineo worked his shift at Harlem on June 3, 2012.  On or about June 7, 2012, Defendant Federus telephoned Named Plaintiff Rodriguez-Tineo before the start of his shift at Harlem.  Defendant Federus told Named Plaintiff Rodriguez-Tineo that he was no longer needed because work at Harlem was slow, and that Defendant Federus would call Named Plaintiff Rodriguez-Tineo if work picked up.  Since June 7, 2012, Defendant Federus has not called Named Plaintiff Rodriguez-Tineo to return to work.

276.     On or about June 7, 2012, Defendants terminated Named Plaintiff Rodriguez-Tineo's employment in retaliation for his participation in the instant action.

### FIRST CAUSE OF ACTION:
### THE FAIR LABOR STANDARDS ACT:
### UNPAID MINIMUM WAGES
### (ALL NAMED PLAINTIFFS)

277.     Named Plaintiffs repeat and re-allege each and every allegation set forth in Paragraphs 1 through 276 of this Amended Complaint, as if fully set forth herein.

278.   Named Plaintiffs have consented to be parties to this action pursuant to 29 U.S.C. § 216(b), and have filed consents to join this action with the court.

279.   The Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this complaint.

280.   Pursuant to FLSA, 29 U.S.C. § 206, "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: (1) except as otherwise provided in this section, not less than – (A) $5.85 an hour, beginning on [July 24,] 2007; (B) $6.55 an hour, beginning [July 24, 2008]; and (C) $7.25 an hour, beginning [July 24, 2009]."

281.   Further, pursuant to FLSA, 29 U.S.C. § 203(d), an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."

282.   Further, pursuant to FLSA, 29 U.S.C. § 203(g), "employ" includes "to suffer or permit to work."

283.   Named Plaintiffs and other members of the FLSA Class are employees, within the meaning contemplated in FLSA, 29 U.S.C. § 203(e).

284.   The Car Wash Defendants constitute an employer within the meaning contemplated in the FLSA, 29 U.S.C. § 203(d).

285.   Pursuant to 29 U.S.C. § 203(d) and the cases interpreting the same, each of Defendants Vazquez, Vargas, Jimenez, Federus, Domingo Doe and Perez constitutes an

"employer" for the purpose of FLSA and, consequently, each of Defendants Vazquez, Vargas, Jimenez, Federus, Domingo Doe and Perez is liable for violations of FLSA.

286.    Upon information and belief, Defendants failed to pay Named Plaintiffs and other members of the FLSA Class all earned minimum wages for all of the time they worked for Defendants in any given week.

287.    Pursuant to FLSA, 29 U.S.C. § 203(m), a "tip credit" against the minimum wage may only be taken against the minimum wage where "all tips received by such employee have been retained by the employee, except [for] the pooling of tips among employees who customarily and regularly receive tips."

288.    Upon information and belief, Defendants did not pay all tips received by its tipped employees to those employees and others working in occupations which "customarily and regularly receive tips," and improperly retained tips and gratuities for management personnel and car wash expenses.

289.    Upon information and belief, Defendants illegally claimed a tip credit against the minimum wage for its tipped employees, when such a credit was not legally permissible.

290.    Defendants have willfully failed to pay to Named Plaintiffs and other members of the FLSA Class, for each hour that they worked, a wage of not less than the statutory minimum set forth in 29 U.S.C. § 206(a).

291.    Defendants also violated Section 211(c) of the FLSA, 29 U.S.C. § 211(c), by failing to keep required records.

292.    Defendants' violations of the FLSA, as described in this Amended Complaint have been willful and intentional.  Defendants have not made a good faith effort to comply with

the FLSA with respect to their compensation of Named Plaintiffs and other similarly situated current and former employees.

293.     Because of the Defendants' willful violations of the FLSA, a three-year statute of limitations applies to such violations pursuant to 29 U.S.C. § 255.

294.     As a result of the Defendants' willful violations of the FLSA, Named Plaintiffs and all others similarly situated have suffered damages by being denied minimum wages in accordance with 29 U.S.C. §§ 206 *et seq.*

295.     As a result of the unlawful acts of the Defendants, Named Plaintiffs and the members of the FLSA Class have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION:**
**THE FAIR LABOR STANDARDS ACT:**
**UNPAID OVERTIME PREMIUM HOURLY WAGES**
**(ALL NAMED PLAINTIFFS)**

296.     Named Plaintiffs repeat and re-allege each and every allegation set forth in Paragraphs 1 through 295 of this Amended Complaint, as if fully set forth herein.

297.     Named Plaintiffs have consented to be parties to this action pursuant to 29 U.S.C. § 216(b), and have filed consents to join this action with the court.

298.     Defendants have engaged in a widespread pattern and practice of violating the FLSA, as detailed in this complaint.

299.     Pursuant to the FLSA, 29 U.S.C § 207, "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives

compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

300.    Further, pursuant to FLSA, 29 U.S.C. § 203(d), an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization."

301.    Further, pursuant to FLSA, 29 U.S.C. § 203(g), "employ" includes "to suffer or permit to work."

302.    Named Plaintiffs and other members of the FLSA Class are employees, within the meaning contemplated in FLSA, 29 U.S.C. § 203(e).

303.    The Car Wash Defendants constitute an employer within the meaning contemplated in the FLSA, 29 U.S.C. § 203(d).

304.    Pursuant to 29 U.S.C. § 203(d) and the cases interpreting the same, each of Defendants Vazquez, Vargas, Jimenez, Federus, Domingo Doe and Perez constitutes an "employer" for the purpose of FLSA and, consequently, each of Defendants Vazquez, Vargas, Jimenez, Federus, Domingo Doe and Perez is liable for violations of FLSA.

305.    Upon information and belief, Named Plaintiffs and other members of the FLSA Class regularly worked more than forty (40) hours a week while working for Defendants.

306.    Upon information and belief, Defendants failed to pay Named Plaintiffs and other members of the FLSA Class overtime wages, at the rate of one and one half times the regular rate of pay, for the time in which they worked after the first forty hours in any given week.

307.    Defendants have willfully failed to record, credit, or properly compensate Named Plaintiffs and the FLSA Class Members for work performed in excess of 40 hours per workweek.

308.     Defendants also violated Section 211(c) of the FLSA, 29 U.S.C. § 211(c), by failing to keep required records.

309.     Defendants' violations of the FLSA, as described in this Amended Complaint have been willful and intentional.  The Defendants have not made a good faith effort to comply with the FLSA with respect to their compensation of Named Plaintiffs and other similarly situated current and former employees.

310.     Because of the Defendants' willful violations of the FLSA, a three-year statute of limitations applies to such violations pursuant to 29 U.S.C. § 255.

311.     As a result of the Defendants' willful violations of the FLSA, Named Plaintiffs and all others similarly situated have suffered damages by being denied overtime compensation and other wages in accordance with 29 U.S.C. §§ 206 *et seq*.

312.     As a result of the unlawful acts of the Defendants, Named Plaintiffs and the FLSA Class have been deprived of overtime compensation and other wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

**THIRD CAUSE OF ACTION:**
**VIOLATIONS OF THE NEW YORK LABOR LAW:**
**UNPAID MINIMUM WAGES**
**(NAMED PLAINTIFFS RONARD LORA, MARCO ANTONIO DIAZ,**
**MELVIN LORA, EDUARDO LORA, GIOVANNI PAULINO,**
**JOSE RODRIGUEZ, AND JOSE RODOLFO RODRIGUEZ-TINEO)**

313.     Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo repeat and re-allege each and every allegation set forth in Paragraphs 1 through 312 of this Amended Complaint, as if fully set forth herein.

314.    Pursuant to the Article 6 and Article 19 of the New York Labor Law, workers, such as Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and other members of the New York Class, are protected from wage underpayments and improper employment practices.

315.    Pursuant to the New York Labor Law, N.Y. LAB. LAW § 652, "Every employer shall pay to each of its employees for each hour worked a wage of not less than: … $6.00 on and after January 1, 2005, $6.75 on and after January 1, 2006, [and] $7.15 on and after January 1, 2007, or, if greater, such other wage as may be established by federal law pursuant to [FLSA]."

316.    Pursuant to the New York Labor Law, N.Y. LAB. LAW § 651, the term "employee" means "any individual employed or permitted to work by an employer in any occupation."

317.    As persons employed for hire by Defendants, Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and other members of the New York Class, are "employees," as understood in the New York Labor Law, N.Y. LAB. LAW § 651.

318.    Pursuant to the New York Labor Law, N.Y. LAB. LAW § 651, the term "employer" includes any "any individual, partnership, association, corporation, limited liability company, business trust, legal representative, or any organized group of persons acting as employer."

319.    As the entities that hired the Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and other members of the New York Class, the Car Wash Defendants constitute an "employer."

320.    Upon information and belief, pursuant to the New York Labor Law §§ 190 *et seq*, 650 *et seq* and the cases interpreting same, each of Defendants Vazquez, Vargas, Jimenez, Federus and Domingo Doe is an "employer."

321.    Defendants violated the New York Labor Law, N.Y. LAB. LAW § 650, *et seq*, by failing to pay proper wages to Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and other members of the New York Class, by, among other things, failing to pay minimum wages to Named Plaintiffs and other members of the New York Class for all hours worked.

322.    Upon information and belief, Defendants' failure to pay Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and other members of the New York Class, the required wages as set forth above was willful within the meaning of Sections 198 and 663 of the New York Labor Law.

323.    Defendants failed to maintain proper employment records as required by N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.6, and Sections 195(4) and 661 of the New York Labor Law.

324.    Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and the members of the New York Class, are entitled to the unpaid wages required by New York Labor Law.

325.    As a result of the unlawful acts of the Defendants, Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and the members of the New York Class, have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts,

liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation

pursuant to the New York Labor Law, N.Y. LAB. LAW § 650 *et seq.*

**FOURTH CAUSE OF ACTION:**
**VIOLATIONS OF THE NEW YORK LABOR LAW:**
**UNPAID OVERTIME PREMIUM HOURLY WAGES**
**(NAMED PLAINTIFFS RONARD LORA, MARCO ANTONIO DIAZ,**
**MELVIN LORA, EDUARDO LORA, GIOVANNI PAULINO,**
**JOSE RODRIGUEZ, AND JOSE RODOLFO RODRIGUEZ-TINEO)**

326.   Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora,

Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo repeat and re-allege each

and every allegation set forth in Paragraphs 1 through 325 of this Amended Complaint, as if fully

set forth herein.

327.   N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2 requires an employer shall to

pay an employee overtime "at a wage rate of one and one-half times the employee's regular

rate."

328.   The New York Labor Law, N.Y. LAB. LAW § 663, provides that "[i]f any

employee is paid by his employer less than the wage to which he is entitled under the provisions

of this article, he may recover in a civil action the amount of any such underpayments, together

with costs and such reasonable attorney's fees."

329.   Upon information and belief, Named Plaintiffs Ronard Lora, Marco Antonio

Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo

Rodriguez-Tineo, and other members of the New York Class, regularly worked more than forty

(40) hours a week while working for Defendants.

330.   Upon information and belief, Named Plaintiffs Ronard Lora, Marco Antonio

Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo

Rodriguez-Tineo, and other members of the New York Class, did not receive the New York

statutory overtime compensation for all hours worked after the first forty (40) hours of work in a week.

331.   Consequently, by failing to pay to Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and other members of the New York Class, the overtime compensation for work they performed after the first forty (40) hours worked in a week, Defendants violated the New York Labor Law, N.Y. LAB. LAW § 663 and N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.2.

332.   Defendants' failure to pay overtime compensation for work performed by Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and other members of the New York Class, after the first forty (40) hours worked in a week was willful within the meaning of the New York Labor Law, N.Y. LAB. LAW §§ 198 and 663.

333.   Defendants have willfully failed to record, credit, or properly compensate Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and other members of the New York Class, for work performed in excess of forty (40) hours per workweek.

334.   Defendants failed to maintain proper employment records as required by N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.6 and the New York Labor Law, N.Y. LAB. LAW §§ 195(4) and 661.

335.   Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and the members of the

New York Class, are entitled to the unpaid overtime compensation required by New York Labor Law.

336.    As a result of the unlawful acts of the Defendants, Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and the members of the New York Class, have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the New York Labor Law, N.Y. LAB. LAW § 650 *et seq.*

**FIFTH CAUSE OF ACTION:**
**VIOLATIONS OF THE NEW YORK LABOR LAW:**
**UNPAID SPREAD OF HOURS PAY**
**(NAMED PLAINTIFFS RONARD LORA, MARCO ANTONIO DIAZ,**
**MELVIN LORA, EDUARDO LORA, GIOVANNI PAULINO,**
**JOSE RODRIGUEZ, AND JOSE RODOLFO RODRIGUEZ-TINEO)**

337.    Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo repeat and re-allege each and every allegation set forth in Paragraphs 1 through 336 of this Amended Complaint, as if fully set forth herein.

338.    At times relevant to this action, Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and the members of the New York Class, were employees and the Defendants have been employers within the meaning of Sections 190(2)-(3) and 651(5)-(6) of the New York Labor Law.

339.    Defendants failed to pay Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and the members of the New York Class, an extra hour of pay at the statutory minimum

hourly wage rate for each day when the shift of a Named Plaintiff or of a member of the New York Class exceeded ten (10) hours, and/or when a Named Plaintiff or a member of the New York Class worked a split shift, in violation of N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.4.

340.   Defendants' failure to pay the required wages as set forth above was willful within the meaning of Sections 198 and 663 of the New York Labor Law.

341.   Defendants failed to maintain proper employment records as required by N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.6 and the New York Labor Law, N.Y. LAB. LAW §§ 195(4) and 661.

342.   Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and the members of the New York Class, are entitled to the unpaid wages required by New York Labor Law.

343.   As a result of the unlawful acts of the Defendants, Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and the members of the New York Class, have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the New York Labor Law, N.Y. LAB. LAW § 650 *et seq.*

**SIXTH CAUSE OF ACTION:**
**VIOLATIONS OF THE NEW YORK LABOR LAW:**
**IMPROPERLY WITHHELD GRATUITIES**
**(NAMED PLAINTIFFS RONARD LORA, MARCO ANTONIO DIAZ,**
**MELVIN LORA, EDUARDO LORA, GIOVANNI PAULINO,**
**JOSE RODRIGUEZ, AND JOSE RODOLFO RODRIGUEZ-TINEO)**

344.   Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo repeat and re-allege each

and every allegation set forth in Paragraphs 1 through 343 of this Amended Complaint, as if fully set forth herein.

345.    Pursuant to the New York Labor Law, N.Y. LAB. LAW § 196-d, "No employer or his agent or an officer or agent of any corporation, or any other person shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

346.    By improperly withholding portions of gratuities provided to Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and other members of the New York Class, Defendants violated the New York Labor Law, N.Y. LAB. LAW § 196-d.

347.    Upon information and belief, Defendants' improper withholding of gratuities earned by Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and other members of the New York Class, was willful within the meaning of Sections 198 and 663 of the New York Labor Law.

348.    Defendants failed to maintain proper employment records as required by N.Y. COMP. CODES R. & REGS. tit. 12, § 142-2.6 and the New York Labor Law, N.Y. LAB. LAW §§ 195(4) and 661.

349.    Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo, and the members of the New York Class, are entitled to the unpaid gratuities required by New York Labor Law.

350.    As a result of the unlawful acts of the Defendants, Named Plaintiffs Ronard Lora, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose

Rodolfo Rodriguez-Tineo, and the members of the New York Class, have been deprived of wages and gratuities in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the New York Labor Law, N.Y. LAB. LAW § 650 *et seq.*

## SEVENTH CAUSE OF ACTION:
## VIOLATIONS OF THE NEW JERSEY WAGE AND HOUR LAW:
## UNPAID MINIMUM WAGE COMPENSATION
## (NAMED PLAINTIFFS HUGO RIVERA AND GIOVANNI PAULINO)

351.     Named Plaintiffs Hugo Rivera and Giovanni Paulino repeat and re-allege each and every allegation set forth in Paragraphs 1 through 350 of this Amended Complaint, as if fully set forth herein.

352.     Pursuant to the New Jersey Wage and Hour Law, N.J. STAT. ANN. §§ 34:11-56a *et seq.* and N.J.A.C. §12:56-3.1, "employees shall be paid not less than the minimum hourly wage rate set by [the FLSA]."

353.     Pursuant to the New Jersey Wage and Hour Law, N.J. STAT. ANN. §§ 34:11-56a *et seq.* and N.J.A.C. §§12:56-1.1 *et seq.*, workers, such as Named Plaintiffs Hugo Rivera and Giovanni Paulino, and other members of the New Jersey Class, are protected from wage underpayments and improper employment practices.

354.     Pursuant to the New Jersey Wage and Hour Law, N.J. STAT. ANN. § 34:11-56al(g), the term "employer" means "any individual, partnership, association, corporation or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee."

355.     As the entities that hired Named Plaintiffs Hugo Rivera and Giovanni Paulino, and other members of the New Jersey Class, the Car Wash Defendants constitute an "employer."

356.   Pursuant to N.J. STAT. ANN. § 34:11-56a1(h), the term "employee" means "any individual employed by an employer."

357.   As persons employed for hire by Defendants, Named Plaintiffs Hugo Rivera and Giovanni Paulino, and other members of the New Jersey Class, are "employees."

358.   Upon information and belief, pursuant to N.J. STAT. ANN. §§ 34:11-56a *et seq*., and the cases interpreting same, each of Defendants Vazquez and Perez is an "employer."

359.   Defendants failed to pay Named Plaintiffs Hugo Rivera and Giovanni Paulino, and other members of the New Jersey Class, the minimum wage for all hours worked.

360.   In failing to pay Named Plaintiffs Hugo Rivera and Giovanni Paulino, and other members of the New Jersey Class, minimum wages for all hours worked, Defendants violated N.J. STAT. ANN. § 34:11-56a4 and N.J.A.C. § 12:56-3.1.

361.   Pursuant to N.J. STAT. ANN. § 34:11-56a25, "[i]f any employee is paid by an employer less than the minimum fair wage to which such employee is entitled … such employee may recover in a civil action the full amount of such minimum wage less any amount actually paid to him or her by the employer together with costs and such reasonable attorney's fees as may be allowed by the court …."

362.   Upon information and belief, Defendants' failure to pay Named Plaintiffs Hugo Rivera and Giovanni Paulino, and other members of the New Jersey Class, the required wages as set forth above was willful.

363.   Named Plaintiffs Hugo Rivera and Giovanni Paulino, and the members of the New Jersey Class, are entitled to the unpaid wages required by the New Jersey Wage and Hour Law.

364.     As a result of the unlawful acts of the Defendants, Named Plaintiffs Hugo Rivera and Giovanni Paulino, and the members of the New Jersey Class, have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to N.J. STAT. ANN. §§ 34:11-56a *et seq.* and N.J.A.C. §§ 12:56 *et seq.*

## EIGHTH CAUSE OF ACTION: VIOLATIONS OF THE NEW JERSEY WAGE AND HOUR LAW: UNPAID OVERTIME COMPENSATION (NAMED PLAINTIFFS HUGO RIVERA AND GIOVANNI PAULINO)

365.     Named Plaintiffs Hugo Rivera and Giovanni Paulino repeat and re-allege each and every allegation set forth in Paragraphs 1 through 364 of this Amended Complaint, as if fully set forth herein.

366.     Pursuant to the New Jersey Wage and Hour Law, N.J. STAT. ANN. § 34:11-56a4, and N.J.A.C. §12:56-6.1, "Every employer shall pay to each of his employees … [one and one-half] 1½ times such employee's regular hourly wage for each hour of working time in excess of 40 hours in any week …."

367.     Named Plaintiffs Hugo Rivera and Giovanni Paulino, and other members of the New Jersey Class, regularly worked over forty (40) hours per week, and were not properly paid overtime compensation at one-and-one-half times their regular hourly rate for such hours.

368.     In failing to pay Named Plaintiffs Hugo Rivera and Giovanni Paulino, and other members of the New Jersey Class, overtime compensation for all hours worked over forty (40) hours in any given week, Defendants violated N.J. STAT. ANN. § 34:11-56a4 and N.J.A.C. § 12:56-6.4.

369.   Upon information and belief, Defendants' failure to pay Named Plaintiffs Hugo Rivera and Giovanni Paulino, and other members of the New Jersey Class, the required overtime compensation as set forth above was willful.

370.   Named Plaintiffs Hugo Rivera and Giovanni Paulino, and the members of the New Jersey Class, are entitled to the unpaid overtime compensation required by the New Jersey Wage and Hour Law.

371.   As a result of the unlawful acts of the Defendants, Named Plaintiffs Hugo Rivera and Giovanni Paulino, and the members of the New Jersey Class, have been deprived of wages in amounts to be determined at trial, and are entitled to recovery of such amounts, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to N.J. STAT. ANN. §§ 34:11-56a *et seq*. and N.J.A.C. §§ 12:56 *et seq*.

## NINTH CAUSE OF ACTION:
## RETALIATION IN VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (PLAINTIFFS MARCO ANTONIO DIAZ, MELVIN LORA,
### EDUARDO LORA, GIOVANNI PAULINO,
### JOSE RODRIGUEZ, AND JOSE RODOLFO RODRIGUEZ-TINEO)

372.   Named Plaintiffs Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo repeat and re-allege each and every allegation set forth in Paragraphs 1 through 371 of this Amended Complaint, as if fully set forth herein.

373.   As set forth more fully above, Defendants retaliated against Named Plaintiffs Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo for their protected complaints of wage and hour violations by the Defendants, and in particular, their protected conduct in participating in this action.  Among other things, Defendants retaliated against Named Plaintiffs Marco Antonio Diaz, Melvin Lora,

Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo by reducing the number of days per week that they worked and by terminating their employment.

374.    The retaliation suffered by Named Plaintiffs Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo was in violation of Section 215(a)(3) of the FLSA.

375.    As a result, Named Plaintiffs Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo have suffered the loss of earnings, with attendant benefits, plus interest.

**TENTH CAUSE OF ACTION:**
**RETALIATION IN VIOLATION OF THE NEW YORK LABOR LAW**
**(PLAINTIFFS MARCO ANTONIO DIAZ, MELVIN LORA,**
**EDUARDO LORA, GIOVANNI PAULINO,**
**JOSE RODRIGUEZ, AND JOSE RODOLFO RODRIGUEZ-TINEO)**

376.    Named Plaintiffs Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo repeat and re-allege each and every allegation set forth in Paragraphs 1 through 375 of this Amended Complaint, as if fully set forth herein.

377.    As set forth more fully above, Defendants retaliated against Named Plaintiffs Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo for their protected complaints of wage and hour violations by the Defendants, and in particular, their protected conduct in participating in this action.  Among other things, Defendants retaliated against Named Plaintiffs Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo by reducing the number of days per week that they worked and by terminating their employment.

378.    The retaliation suffered by Named Plaintiffs Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo was in violation of Section 215(1) of the New York Labor Law.

379.    As a result, Named Plaintiffs Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo have suffered the loss of earnings, with attendant benefits, plus interest.

## JURY DEMAND

380.    Named Plaintiffs request a jury trial on all issues of fact and damages arising herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Named Plaintiffs, individually and on behalf of all other similarly situated persons, pray for the following relief:

A.    That, at the earliest possible time, Named Plaintiffs be allowed to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have at any time during the six years immediately preceding the filing of this suit, up through and including the date of this court's issuance of court-supervised notice, been employed by the Defendants as non-exempt employees.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper minimum hourly compensation and premium overtime wages;

B.    Unpaid wages and an additional and equal amount as liquidated damages as pursuant to 29 U.S.C. § 201 *et seq*. and the supporting United States Department of Labor regulations;

C.      An award of damages for unlawful retaliation in violation of the FLSA, 29

        U.S.C. § 215(a)(3);

D.      Certification of this case as a class action pursuant to Rule 23 of the Federal

        Rules of Civil Procedure;

E.      Designation of Named Plaintiffs Ronard Lora, Hugo Rivera, Marco Antonio

        Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose

        Rodolfo Rodriguez-Tineo as representatives of the Putative Class, and counsel of

        record as Class Counsel;

F.      Issuance of a declaratory judgment that the practices complained of in this

        Amended Complaint are unlawful under the New York Labor Law, N.Y. LAB.

        LAW, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the supporting

        New York State Department of Labor regulations; and under the New Jersey

        Wage and Hour Law, N.J. STAT. ANN. §§ 34:11-4.1, *et seq.*, §§ 34:11-56a *et seq.*,

        and the supporting New Jersey State regulations;

G.      Unpaid wages and liquidated damages as pursuant to the New York Labor Law,

        N.Y. LAB. LAW, Article 6, §§ 190 *et seq.*, and Article 19, §§ 650 *et seq.*, and the

        supporting New York State Department of Labor regulations; and as pursuant to

        the New Jersey Wage and Hour Law, N.J. STAT. ANN. §§ 34:11-4.1, *et seq.*,

        §§ 34:11-56a *et seq.*, and the supporting New Jersey State regulations;

H.      An award of damages for unlawful retaliation in violation of the New York

        Labor Law, N.Y. LAB. LAW, Article 7, § 215(1);

I.      Prejudgment interest;

J.     An injunction requiring the Defendants and any and all subsidiaries, or successors-in-interest, to pay all statutorily-required wages pursuant to the New York Labor Law and pursuant to the New Jersey Wage and Hour Law;

K.     After determination of class-wide liability, of individual damages, and of the Defendants' liability for back pay, notice to class members of the opportunity to intervene in this action or to file separate actions to recover liquidated damages under Article 6 and Article 19 of the New York Labor Law, N.Y. LAB. LAW, §§ 198(1-a), 663(1);

L.     Attorneys' fees and costs of the action; and

M.     Such other relief as this Court shall deem just and proper.

Dated: New York, New York
July 6, 2012

Respectfully submitted,

**ARENSON, DITTMAR & KARBAN**

By: Laura E. Longobardi
295 Madison Avenue, Suite 700
New York, New York 10017
(212) 490-3600

Attorneys for Named Plaintiffs Ronard Lora, Hugo Rivera, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo and the Putative Class