LAW OFFICES
# ARENSON, DITTMAR & KARBAN
295 MADISON AVENUE
NEW YORK, N.Y. 10017

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/3/13

FACSIMILE
(212) 490-7102

TELEPHONE
(212) 490-3600

November 9, 2012

**BY HAND DELIVERY**
The Honorable Louis L. Stanton
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

    Re:   *Ronard Lora, et al., v. J.V. Car Wash, Ltd., et al.,*
           **No. 11-CV-9010 (LLS)**

Dear Judge Stanton:

    We represent the Plaintiffs Ronard Lora, Hugo Rivera, Marco Antonio Diaz, Melvin Lora, Eduardo Lora, Giovanni Paulino, Jose Rodriguez and Jose Rodolfo Rodriguez-Tineo (the "Named Plaintiffs"), together with Ramon Alvarez, Denis Rene Barahona, Margarito Gallardo, Braulio Flores Matamoros, Robertico Perez Olmos, Jose Antonio Pichardo, Michel Rodriguez, Francisco Guerrero, Rojas Corona Valerio and Ramiro Rodriguez del Pilar (the "Opt-In Plaintiffs"), in the above-referenced action (the "FLSA Action"). The FLSA Action asserts claims for the non-payment of wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); under Article 6 (Payment of Wages) and Article 19 (Minimum Wage Act) of the New York Labor Law (the "NYLL"), §§ 190 *et seq.*, §§ 650 *et seq.*; under Title 12 of the New York Codes, Rules and Regulations; under the New Jersey Wage and Hour Law, N.J. STAT. ANN. §§ 34:11-4.1, *et seq.*, §§ 34:11-56a, *et seq.*; and under the supporting New Jersey State regulations, N.J.A.C. § 12:56-6.1, § 12:56-6.4.[1]

    We are submitting this letter, as permitted by Your Honor during the status conference on October 26, 2012, pursuant to Rule 26(c) of the Federal Rules of Civil Procedure and Rule 37.2 of the Local Rules of this Court, to request an Order (a) protecting the Named Plaintiffs, the Opt-In Plaintiffs and any claimant who may in the future opt into this FLSA Action from being compelled to disclose any information and/or documents concerning their Social Security numbers, which are sensitive and confidential information; (b) prohibiting the Defendants and/or their counsel from seeking and/or obtaining information and/or documents concerning the Social Security numbers of the Named Plaintiffs, the Opt-In Plaintiffs and/or any future claimant; and (c) for such other and further relief as the Court may deem just and proper.

*[Handwritten annotation:] This application for a protective order is granted and will remain in effect until the first day of trial, when the Social Security numbers shall be produced to defendants' counsel, unless this order is [→ altered or amended by further order; Louis L. Stanton 5/3/13]*

---
[1] The FLSA Action also asserts claims of unlawful retaliation in violation of Section 215(a)(3) of the FLSA, and in violation of Section 215(1) of the NYLL, on behalf of certain of the Named Plaintiffs.

The Hon. Louis L. Stanton
November 9, 2012
Page 2

1. **Background.**

On or about July 2, 2012, counsel for the Defendants served a Notice of Taking of Deposition of Plaintiffs with Notice to Produce Documents ("Defendants' Discovery Demand") upon counsel for the Named Plaintiffs and the Opt-In Plaintiffs. That Discovery Demand sought six categories of documents to be produced by the Named Plaintiffs and the Opt-In Plaintiffs, including, among other things, "Social Security Card from the U.S. Social Security Administration, 'Green card' concerning immigration status from the U.S. Department of Homeland Security or successor or predecessor government agency, and U.S. and NY and/or NJ Income Tax Returns." A copy of Defendants' Discovery Demand is attached as Exhibit A.

On or about July 20, 2012, I served Plaintiffs' Written Objections and Responses to Defendants' Discovery Demand ("Plaintiffs' Written Response") upon counsel for the Defendants. In that Written Response, I indicated that the Named Plaintiffs and the Opt-In Plaintiffs would produce documents in response to three of the six categories demanded by Defendants – to the extent that the Named Plaintiffs and the Opt-In Plaintiffs had such documents in their possession – at a mutually acceptable date and time. Documents responsive to these categories were in fact produced to counsel for the Defendants on July 24, 2012, prior to the commencement of his taking the depositions of seventeen of the eighteen Named Plaintiffs and Opt-In Plaintiffs.

With regard to the three remaining categories of documents demanded by the Defendants – Social Security cards, "green cards" and tax returns – I objected to the production of such documents on the specific grounds that such documents and/or information were irrelevant to the subject matter of the instant action and not reasonably calculated to lead to the discovery of admissible evidence, and that the production of such documents and/or information was sought solely to annoy, harass, embarrass and oppress the Named Plaintiffs and the Opt-In Plaintiffs. A copy of Plaintiffs' Written Response is attached as Exhibit B.

During the course of conferences held before the Court on July 25, 2012, September 7, 2012, and October 26, 2012, counsel for the Defendants continued to demand the disclosures of the Named Plaintiffs' and the Opt-In Plaintiffs' Social Security numbers, immigration status and tax returns. Counsel claimed that the Defendants have no records showing that any of the Named Plaintiffs or the Opt-In Plaintiffs ever worked for any of the Defendants.[2] Counsel for the Defendants alleged that all of the Named Plaintiffs and Opt-In Plaintiffs instead are a group of criminal "delinquents," who are forcing the Defendants to permit them to conduct their own business on the Defendants' premises, using the Defendants' equipment and materials.[3] Counsel for the Defendants claimed that disclosures of the Named Plaintiffs' and the Opt-In Plaintiffs' Social Security numbers, immigration status and tax returns are necessary to enable the Defendants to determine whether any of these individuals actually worked for the Defendants. Counsel for the Defendants also asserted that they wanted to know what the Named Plaintiffs

---

[2] Counsel for the Defendants also have repeatedly stated that the Defendants' employment records are in such disarray that the production of any of the Defendants' records could subject the Defendants' to penalties.

[3] As this Court is aware, the Named Plaintiffs and the Opt-In Plaintiffs vigorously deny the Defendants' defamatory allegations, and assert that they are indeed proper parties to this FLSA Action.

The Hon. Louis L. Stanton
November 9, 2012
Page 3

and the Opt-In Plaintiffs were reporting on their tax returns with regard to their employment with the Defendants.

At each conference, I maintained my position that disclosures of the information sought by the Defendants were not permitted under the case law pertaining to the scope of discovery in actions brought under the FLSA. At the conference on October 26, 2012, I advised the Court that I could not make disclosures concerning the Social Security numbers, immigration status and tax returns of some, but not all, of the Named Plaintiffs and Opt-In Plaintiffs, because any Plaintiff as to whom no disclosure had been made would immediately be perceived as having immigration issues. At the October 26 conference, this Court ruled that, in accordance with the FLSA case law, at the present time, Defendants would not be permitted to obtain discovery of the Named Plaintiffs' and the Opt-In Plaintiffs' immigration status and tax returns. The Court gave leave at that time for the Named Plaintiffs and the Opt-In Plaintiffs to make this letter request for an order protecting them from discovery concerning their Social Security numbers.

## II. A Protective Order Is Warranted and Should Be Granted.

Defendants assert that they require information about the Named Plaintiffs' and the Opt-In Plaintiffs' Social Security numbers in order to determine whether these individuals ever worked for the Defendants. We submit that such disclosure is both unpermitted and unnecessary.

The Federal Rules of Civil Procedure limit the scope of discovery to "any matter relevant to the claims or defenses of any party," or any matter that appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. 26 (b)(1). Rule 26(c) authorizes courts, for good cause, to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters ...." Fed. R. Civ. P. 26(c). "[T]he burden is upon the party seeking non-disclosure or a protective order to show good cause." *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir.1992). Here, the Named Plaintiffs and the Opt-In Plaintiffs can easily meet their burden of showing good cause for the granting of the protective order, as it is well-settled law that the information currently sought by the Defendants is not subject to disclosure. As such, an order protecting the Named Plaintiffs and the Opt-In Plaintiffs from the disclosure of this information is warranted.

### A. Disclosure of a Plaintiff's Immigration Status Is Not Permitted in FLSA Cases.

Whether a plaintiff is authorized to work in this country, and whether that plaintiff has used inappropriate documentation with respect to his or her immigration status, has no bearing on that plaintiff's right to recover unpaid wages under the FLSA or the NYLL. All employees, regardless of immigration status, are entitled to the protections of the FLSA with respect to work that they already have performed, but for which they have not been compensated properly. *See Flores v. Amigon*, 233 F. Supp. 2d 462, 463 (E.D.N.Y. 2002). As a result, federal courts have rejected defense demands in FLSA cases for information about a plaintiff's immigration status, including information related to that status, such as a plaintiff's Social Security number and tax returns, on the grounds that such information is irrelevant and therefore undiscoverable. *See,*

The Hon. Louis L. Stanton
November 9, 2012
Page 4

*e.g., Solis v. Cindy's Total Care, Inc.*, No. 10 Civ. 7242 (PAE), 2011 WL 5170009, *1 (S.D.N.Y. Oct. 31, 2011) ("an employee's immigration status, or national origin, is clearly irrelevant to a claim for back pay for overtime wages under the FLSA"); *Liu v. Donna Karan Int'l, Inc.*, 207 F. Supp. 2d 191, 192 (S.D.N.Y. 2002) ("courts addressing the issue of whether defendants should be allowed to discover plaintiff-workers' immigration status in cases seeking unpaid wages brought under the FLSA have found such information to be undiscoverable").

In denying these defense requests, federal courts have noted that the FLSA is a remedial statute, and that irrelevant inquiries into a worker's immigration status would both create a chilling and intimidating effect upon the willingness of individuals to assert their workplace rights, and render the FLSA impotent as a means for protecting undocumented workers from exploitation. *See Flores*, 233 F. Supp. 2d at 464-65 n.2 (the *in terrorem* effect of being compelled to disclose their immigration status would force most undocumented aliens to withdraw their claims or refrain from bringing suit in the first instance, and thus "would effectively eliminate the FLSA as a means for protecting undocumented workers from exploitation and retaliation"); *Liu*, 207 F. Supp. 2d at 193 (risk of injury to plaintiffs if immigration status were disclosed outweighs the need for its disclosure); *see also Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 (9th Cir. 2004) (action brought under Title VII, another remedial statute; undocumented workers asserting their rights face the harsher reality that their employer will likely report them to immigration authorities, subjecting them to the threat of deportation proceedings and/or criminal prosecution), *cert. denied*, 544 U.S. 905 (2005).

### B. Discovery of Social Security Numbers, Which Implicate a Plaintiff's Immigration Status, Is Similarly Barred in FLSA Cases.

With respect to discovery of Social Security numbers, the federal district courts within the Second Circuit regularly have granted protective orders denying access to such information to defendants. *See Uto v. Job Site Services Inc.*, 269 F.R.D. 209 (E.D.N.Y. 2010); *Rengifo v. Erevos Enterprises, Inc.*, No. 06 Civ. 4266 (SHS) (RLE), 2007 WL 894376 (S.D.N.Y. Mar. 20, 2007); *Avila-Blum v. Casa de Cambio Delgado, Inc.*, 236 F.R.D. 190 (S.D.N.Y. 2006); *Equal Emp't Opportunity Comm'n v. First Wireless Group, Inc.*, 225 F.R.D. 404 (E.D.N.Y.2004) ("*First Wireless Group I*"), *later proceeding*, *Equal Emp't Opportunity Comm'n v. First Wireless Group, Inc.*, No. 03-CV-4990 (JS) (ARL), 2007 WL 586720 (E.D.N.Y. Feb. 20, 2007) ("*First Wireless Group II*"); *Flores v. Amigon*, 233 F. Supp. 2d at 462-464 & n.2.

In *Uto*, the plaintiffs moved for a protective order to prevent them from having to disclose their Social Security numbers and tax returns, on the grounds that such information was not relevant, and was an attempt by the defendants to inquire into the plaintiffs' immigration status. 269 F.R.D. at 210-11. The Eastern District in *Uto* agreed that the plaintiffs had established good cause, as discovery of their immigration status, if it were found to be illegal, could subject them to embarrassment, criminal charges and, potentially, deportation. 269 F.R.D. at 212. Accordingly, the *Uto* court granted the plaintiffs' request, and barred the defendants from obtaining discovery of the plaintiffs' Social Security numbers or from inquiring directly or indirectly into the plaintiffs' immigration status. *Id.* The *Uto* court also found that the plaintiffs' tax returns were irrelevant to the FLSA claims, and that defendants had not shown a compelling

The Hon. Louis L. Stanton
November 9, 2012
Page 5

need for the disclosure of the tax returns, and therefore granted the plaintiffs' request for a protective order as to this information as well. *Id.*

Similarly, in *Rengifo*, the defendants sought information relating to the plaintiff's Social Security or tax identification number, claiming that it was necessary to obtain information on the number of hours that the plaintiff worked, and to determine the plaintiff's credibility. 2007 WL 894376, at *2. Magistrate Judge Ellis declined to grant disclosure of the plaintiff's Social Security number for either purpose, finding both that the plaintiff's Social Security number was "not relevant to the claims in this case," *id.*, and that the defendants' "attempt to discover tax identification numbers on the basis of testing credibility appears to be a back door attempt to learn of immigration status," *id.* at *3. Magistrate Judge Ellis therefore granted the requested protective order, barring the defendants from making any inquiry in the plaintiff's immigration status and Social Security number. *Id.*

The plaintiff in *Avila-Blum* sought a protective order barring defendants from inquiring into her immigration status at her deposition. 236 F.R.D. at 191. In support of her motion, the plaintiff referred the Southern District (Judge Marrero) to several related cases also pending in the Southern District, in one of which she also was a plaintiff, and in which that court (Judge Sheindlin) had issued protective orders barring inquiries into other plaintiffs' immigration status and Social Security numbers. *Id.* In objecting to a protective order that was granted to the plaintiff by Magistrate Judge Peck, the defendants asserted that they needed the information in order to impeach the plaintiff's credibility. Judge Marrero noted that the defendants had raised similar arguments before Judge Scheindlin concerning discovery of the plaintiffs' immigration status and Social Security numbers, and that Judge Scheindlin had rejected those arguments. *Id.* at 192. Judge Marrero upheld Magistrate Judge Peck's protective order, stating that a "properly limited and narrowly tailored examination in deposition and at trial may be permissible without opening broader collateral issues pertaining to [the plaintiff's] immigration status." *Id.*

Finally, the Equal Employment Opportunity Commission ("EEOC") in *First Wireless Group I* brought suit in the Eastern District under Title VII on behalf of a class of Hispanic workers who claimed that they had suffered both discrimination and retaliation on the basis of their race. The EEOC later sought a protective order against the discovery of any of the claimants' immigration status and tax returns. 225 F.R.D. at 405-06. There, Judge Seybert upheld the protective order issued by Magistrate Judge Lindsay, stating that "if this Court does not suppress discovery into the [claimants'] immigration status, it would significantly discourage employees from bringing actions against their employers who engage in discriminatory employment practices." *Id.* at 406. In *First Wireless Group II*, the defendants sought to obtain disclosures concerning the claimants' Social Security numbers, purportedly as part of their inquiry into the veracity of information that they obtained from the claimants during the hiring process. The defendants argued that their inquiry concerned the claimants' credibility, and not their immigration status, and therefore was not precluded by the protective order issued in *First Wireless I*. *See* 2007 WL 586720, at *2. Magistrate Judge Lindsay upheld the original protective order, holding that the defendants' efforts to learn whether the claimants had used false Social Security numbers were "nothing more than a back door attempt to shed light on [the claimants'] immigration status," and that the defendants were attempting to "avoid" the original protective order. *Id.* Judge Seybert agreed, stating:

> The Protective Order intended to protect the [claimants']
> immigration status due to the *in terrorem* effect such inquiry would
> have. Immigration status discovery in cases where plaintiffs are
> possibly undocumented is a very sensitive area of inquiry. In some
> cases, such information is not relevant because a claimant is
> continually employed or it was the employer who failed to comply
> with immigration laws. In most cases, however, the *in terrorem*
> effect of the proposed inquiry outweighs the probative value of the
> discovery.

*Id.* at *3. Judge Seybert noted that Magistrate Judge Lindsay "specifically found that asking if [claimants] provided false social security numbers was just another way to find out if [claimants] were illegally residing in this country." *Id.* at *4. Finally, Judge Seybert ruled that any line of questioning concerning the claimants' employment documents had to "be limited in a way that would avoid implicating [claimants'] immigration status, and ... without additional inquiry concerning [claimants'] social security numbers."

Further, we note that courts outside the Second Circuit also refuse to allow defendants to obtain discovery of Social Security numbers in FLSA cases. *See Montoya v. S.C.C.P. Painting Contractors, Inc.*, 530 F. Supp. 2d 746, 749-51 (D. Md. 2008) (precluding discovery as to identifying information – including Social Security numbers – of named plaintiffs and putative class members in a FLSA action, because such information was irrelevant and prejudicial); *Flores v. Albertson's, Inc.*, No. CV 01-0515 PA (SHX), 2004 WL 3639290, *2-*4 (C.D. Cal. Apr. 9, 2004) (concluding that Social Security numbers were "highly sensitive" pieces of information that "could readily be used to determine a plaintiff's immigration status," and precluding any discovery by the defendants); *Cabrera v. Ekema*, 265 Mich. App. 402, 404-411, 695 N.W.2d 78, 79-83 (Mich. Ct. App. 2005) (reversing trial court order compelling plaintiffs to produce their Social Security numbers, on grounds that such information was both irrelevant and sought for an improper purpose in a FLSA action).

### C. Defendants Cannot Justify Obtaining Disclosures of Social Security Numbers.

Defendants' claim that they need information regarding the Named Plaintiffs' and the Opt-In Plaintiffs' Social Security numbers in order to determine whether any of these individuals ever worked for the Defendants is specious. In an analogous case, the defendants in *Melendez v. Primavera Meats, Inc.*, 270 F.R.D. 143, 144-45 (E.D.N.Y. 2010), denied that they had ever employed the plaintiffs, and sought disclosure of plaintiffs' tax returns, claiming that such disclosure would show how much the defendants had paid the plaintiffs, if anything, and would show that the plaintiffs were employed by others. The plaintiffs sought a protective order, arguing that their tax returns were not relevant, and the defendants' requests for this disclosure were improper attempts to inquire into the plaintiffs' immigration status. The court ruled that the defendants had to satisfy a two-pronged test in order to obtain disclosure of tax returns, and that even assuming defendants could establish the first prong – relevance – defendants failed to meet the second prong – a compelling need for information that was not readily obtainable from a less intrusive source. The court found that defendants had not made any effort to obtain information

The Hon. Louis L. Stanton
November 9, 2012
Page 7

regarding how much they may have paid the plaintiffs, or regarding the plaintiffs' employment history from any other source, and granted the protective order.

Here, Defendants have other ways of determining whether these individuals worked for them, including asking the Named Plaintiffs and the Opt-In Plaintiffs themselves. As Defendants' counsel have stated that they intend to continue the depositions of the Named Plaintiffs and the Opt-In Plaintiffs, they have no need of discovery of Social Security numbers, immigration status, or tax returns.

Further, to the extent that Defendants' employment records concerning the Named Plaintiffs and the Opt-In Plaintiffs are lacking, it is because the Defendants either failed to obtain necessary documentation during their hiring procedures, or failed to maintain documentation throughout the employment of their workers. Judge Seybert, in *First Wireless Group I*, 225 F.R.D. at 407, found that there was "no evidence in the record which shows that the [defendant] had inquired into the [claimants'] immigration status at the time of hiring." In making this determination, she cited *Rivera,* in which the Ninth Circuit recognized that

> [r]egrettably, many employers turn a blind eye to immigration status during the hiring process: their aim is to assemble a workforce that is both cheap to employ and that minimizes their risk of being reported for violations of statutory rights. Therefore, employers have a perverse incentive to ignore immigration laws at the time of hiring but insist upon their enforcement when their employees complain.

*Id.* (quoting *Rivera,* 364 F.3d at 1072).

This is exactly what the Defendants have done in this FLSA Action. Therefore, Defendants cannot be heard to argue that they are entitled to any information touching upon the Social Security Numbers, immigration status or tax returns of any of the Named Plaintiffs or the Opt-In Plaintiffs, on the grounds that, if they in fact employed the Named Plaintiffs and the Opt-In Plaintiffs, Defendants already should have had this information in their possession. *See Solis v. Cindy's Total Care, Inc.,* No. 10 Civ. 7242 (PAE), 2011 WL 6013844, *1-*3 (S.D.N.Y. Dec. 2, 2011) (claims for backpay on behalf of undocumented workers who earned, but were not paid, overtime wages vindicate not only the policy underlying the FLSA but also federal immigration policy; employer who turned a "blind eye" to workers' immigration status at time of hiring would not be permitted at trial to defeat FLSA claims by attempting to offer evidence that plaintiffs could not have been lawfully hired); *Flores v. Amigon,* 233 F. Supp. 2d at 463-64 ("enforcing the FLSA's provisions requiring employers to pay proper wages to undocumented aliens when the work has been performed actually furthers the goal of the IRCA;"). Nor does the lack of any information regarding the Named Plaintiffs and the Opt-In Plaintiffs in the Defendants' records bar these claims, as the Defendants' failures to fulfill their record-keeping obligations under the FLSA entitles the Named Plaintiffs and the Opt-In Plaintiffs to establish their claims by other reliable evidence, including their own testimony. *Solis,* 2012 WL 28141, *6-*10, *17-*20 (S.D.N.Y. Jan. 5, 2012) (after bench trial, court made findings of fact and conclusions of law that defendants violated FLSA record-keeping and overtime pay requirements; given defendants' failure to maintain records as required by the FLSA, court

The Hon. Louis L. Stanton
November 9, 2012
Page 5

permitted plaintiff Secretary of Labor to establish hours worked and wages owed based on the testimony of defendants' employees).

    For these reasons, we believe that, in addition to the oral protective order issued by the Court at the October 26, 2012 conference, protecting the Named Plaintiffs and the Opt-In Plaintiffs from any disclosure of their immigration status and/or tax returns, a further protective order is warranted, shielding the Named Plaintiffs, the Opt-In Plaintiffs, and any future claimant in this FLSA Action[4] from being compelled to disclose any information and/or documents concerning their Social Security numbers; prohibiting the Defendants and/or their counsel from seeking and/or obtaining information and/or documents concerning the Social Security numbers of the Named Plaintiffs, the Opt-In Plaintiffs, and/or any future claimant; and granting such other and further relief as the Court may deem just and proper.

                            Respectfully submitted,

                            Laura E. Longobardi

LEL·
cc:    Paul E. Kerson, Esq. (by hand delivery)

---

[4] Defendants' Discovery Demand affects not only the Named Plaintiffs and the Opt-In Plaintiffs, but also any future claimants. We have reserved our rights to move to certify this case as a collective action pursuant to section 216(b) of the FLSA, at which time a notice of pendency of this FLSA Action will be sent to all current and former employees of the Defendants. If those other employees become aware that the Defendants are seeking information regarding their Social Security numbers, immigration status and tax returns, that knowledge will have a chilling effect on their potential participation in this FLSA Action.