UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Ronard Lora, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>J.V. Car Wash, Ltd., et al.,<br><br>Defendants. | Civ. No. 11-9010 (LLS) |

**Defendants' Memorandum of Law in Support of Motion To Dismiss For Lack of Subject Matter Jurisdiction**

Defendants, Jose Vasquez, J.V. Car Wash, Ltd., Harlem Hand Car Wash, Inc., Broadway Hand Car Wash Corp., Bayway Hand Car Wash Corp., Saturnino Vargas, Jose Jimenes, and all named defendants, by and through their attorney, Louis J. Maione, Esq., submit this Memorandum of Law in Support of their Motion to Dismiss for Lack of Subject Matter Jurisdiction.

## BACKGROUND FACTS

As the Court is no doubt aware, this action has been brought by approximately 10 "named" plaintiffs, together with a host of putative class members and "opt-in" plaintiffs, inter alia, under the Fair Labor Standards Act, 29 U.S.C. Sec. 201 et seq. (hereinafter, the "ACT" or "FLSA"), together with "supplemental", or state claims, brought pursuant to the applicable labor statutes as enacted in New York and New Jersey. One of the car washes, Bayway Hand Car Wash Corp. ("Bayway") is located in Elizabeth, New Jersey; the other three in New York. Mr. Vasquez, the owner of all four car washes, is a resident of New Jersey.

On the other hand, the plaintiffs, who, on the direction of counsel, refused to identify their residences in their depositions, have not proffered their addresses in the Amended Complaint ("Complain") but appear to be either New York and/or New Jersey residents merely as a consequence of deductive reasoning. These car washes being local in nature, and car wash employees usually being paid minimum wage, it would create an economic burden if an employee were saddled with lengthy and costly travel to and from work. In addition, the labor necessary to either wash and/or dry automobiles is unskilled, thereby disposing of any requirement for the importation of highly skilled labor from neighboring states, or even boroughs or neighborhoods. As a consequence, therefore, without federal subject matter jurisdiction, plaintiffs' attorneys would have been confronted with a palpable inability to establish diversity jurisdiction necessary to entreat this Court's subject matter jurisdiction and would have had to bring two separate actions in two separate states in which the application of the respective labor statutes is different.

For example, plaintiffs have alleged "spread-of-hours" violations under New York Law, a remedy unavailable under the New Jersey statute. In addition, the cost to counsel of maintaining two separate cases in two separate jurisdictions also would have been extremely burdensome, if not economically prohibitive, especially if plaintiffs fail to recover since attorneys fees are recoverable under the Act for prevailing plaintiffs. The convenience, therefore, of having a federal cause of action is obvious.

**THIS ACTION DOES NOT QUALIFY UNDER THE ACT**

This action and the allegations propounded therein by the Complaint do not qualify under the Act and, therefore, the matter should be dismissed for failure to state a cause of action or, alternatively, for lack of subject matter jurisdiction.

The Complaint, for the most part, merely recites, formulaicly, putatively pertinent sections of the Act and alleges that defendants have violated those sections. What the Complaint does not do, however, is to allege how these four car washes qualify as an "Enterprise" under the Act, other than to proffer the definition of "Enterprise" and then allege, "backdoor", that the defendants qualify under that definition.

Conversely, the Affidavit of Jose Vasquez ("Mr. Vasquez"), the owner of the car washes, shows that he maintains four car washes, three in New York, one in Elizabeth, New Jersey, and that none of the plaintiffs worked at any of these establishments.

These car washes only wash cars. They do not detail cars, i.e., they do not compound nor wax automobiles nor have they done so for years; they do not shampoo the interiors, nor do they tint windows. If these car washes offered those services, as plaintiffs' counsel has suggested, customers obviously would not want to pay cash for a $120-160 detailing; most would want to use a credit card at that amount. However, as Mr. Vasquez points out in his Affidavit in Support of the Motion to Dismiss for Lack of Subject Matter Jurisdiction, his businesses are strictly "cash" and no one can dispel that point. And, they are cash businesses simply because no more than $7.00 a car is involved in any one transaction.

The business is predicated on a quick, cheap, $7.00 washed automobile. No frills, no waxing, no detailing, no credit cards! Mr. Vasquez pays his employees in cash, at the end of each work shift, and he makes his purchases in cash as well. He maintains a simple business.

At each car wash Mr. Vasquez hires local, neighborhood help because, among other reasons, these workers are paid minimum wage and it would be too costly for any potential employee to travel far out of the neighborhood for another minimum wage job when one is available locally; it also would defy logic that workers would be shuttled from one site to another simply because of the lack of proximity of one car wash to the other. It would take close to two travel hours per day and $5.00 roundtrip, at a minimum, to travel from Harlem, for example, to Webster Avenue in the Bronx. It makes perfect sense therefore that very local help is the answer for these car washes, which historically always has been the case.

Plaintiffs' counsel has from time to time in this litigation advanced nothing more than bald conclusory allegations that defendants regularly had plaintiffs driven from New York to the Bayway operation in Elizabeth, New Jersey, without so much of an argument, rather reason, as to why the defendants would incur the costs attendant to this alleged transportation of labor for what amounts to the barest of unskilled labor. Is plaintiffs' counsel suggesting that these individuals are so especially imbued with skills necessary to wash and dry cars that they must be imported into New Jersey?

The cost of gasoline, tolls, auto insurance, and upkeep of a van to transport workers to Bayway, when unskilled labor is readily available, if not overabundant, in New Jersey, defies logic unless these plaintiffs simply are the most extraordinary of car washers and dryers. Unlike the state of North Dakota, where the unemployment rate presently is miniscule, it is public record that New Jersey has one of the highest unemployment rates in the entire country. Would it make sense, therefore, to import minimum wage employees to the situs of a car wash in an area where there are thousands of people ready to take on a minimum wage job? And, an unskilled one at that!

In his affidavit, Mr. Vasquez also proffers under oath that his clientele at all four washes is strictly local; cars from the neighborhood owned by the people of those neighborhoods. After all, who would travel from a neighboring state, Connecticut for example, incurring mechanical wear and tear, expensive gas prices, extraordinary tolls, and expended time to get to a car wash in Harlem? To counter this most reasonable of assumptions, plaintiffs' counsel, in correspondence with the Court, has advanced the rather specious argument that some of the plaintiffs have observed cars with New Jersey and Connecticut plates at the Broadway locale.

In the first instance, the Court, as with any trier of fact, must call upon its common sense, and what seems reasonable under the circumstances, in assessing a situation. In the instant matter, it is respectfully submitted that no one of prudent mind and reason could possibly believe that cars from out of state venues are meandering into the neighborhoods of Harlem, upper Broadway, and one of the worst sections of the Bronx, Webster Avenue, for the bargain of a $7.00 carwash. In analogizing to the concept of "six degrees of separation", it is respectfully submitted that almost every resident of Manhattan knows at least two people who live in New York City and who have their cars registered in either New Jersey, Connecticut, and even Pennsylvania. While these cars are registered elsewhere, they never leave New York except to be moved from one side of the street to the other playing the alternate side of the street game!

Even if these plaintiffs, most of whom cannot read or write English, at least as evidenced by their counsel's insistence that they required interpreters at their depositions, could somehow identify these out of state plates, these unsupported claims would do no more for their case than those folks who swear that they have seen UFO's from time to time. Of course they have.

Mr. Vasquez purchases soap, locally manufactured on Long Island, New York, or, for Bayway, locally manufactured in Linden, New Jersey; and, he buys towels locally in both New

York and New Jersey; no product which has been manufactured and/or transferred interstate. In fact, the towels purchased in New York are recycled, which means they become a local product upon recycling, if ever they were an interstate product.

The water used obviously is local unless the plaintiffs are going to argue that some of it must flow into New York, for example, from the mountains of Vermont. Which leaves the Court with only one question, that of whether washing an automobile qualifies as "…handling …goods or materials that have been moved in or produced for commerce by persons"? This is the seminal test to establish plaintiffs' entitlement to relief under the Act.

## VELEZ AND ARCHIE DISTINGUISHED

In their opposition to defendants' application to the Court for permission to interpose this motion, plaintiffs' counsel has relied heavily, and almost exclusively, on two Southern District of New York cases, Archie v. Grand Central Partnership, Inc., 997 F. Supp. 504, 530 (S.D.N.Y. 1998), and Velez v. Vasallo, 203 F.Supp.2d 312, 327-328 (S.D.N.Y. 2002), to support their contention that the putative plaintiffs in the instant matter either were "…handling, selling, or otherwise working on goods or materials that have moved in or produced for commerce by any person…". However, both of these cases are distinguished by the recent pronouncements of Circuit Courts in other cases while interpreting the meaning of "goods" and "materials" under the Act.

Other trial courts also have made the distinction. For example, in Collado v. Florida Cleanex, Inc., 727 F. Supp. 2d 1369, 1371 (S.D. Fla. 2010), the Court found that the facts were not in dispute and that, Cleanex performed no services, sent no invoices out-of-state, but was a

commercial cleaning company which provided janitorial services throughout southern Florida via its approximately 100 employees who, according to the Court, likely serviced roughly 30 buildings. Its out-of-state activity was attenuated at best. During the course of his engagement, Mr. Collado regularly used cleaning products manufactured out-of-state, which Cleanex purchased exclusively from local janitorial supply companies, grossing in excess of the $500,000 threshold amount necessary to qualify as an "Enterprise" under the Act.

Section 207 (a) (1) of the Act provides two forms of coverage to the putative employee, that of "individual coverage" or "enterprise coverage". Thorne v. All Restoration Servs., Inc., 448 F.3d 1264, 1266 (11th Cir. 2006).

In the instant matter, however, no individual coverage for the plaintiffs exists, as it certainly did not for Mr. Collado, because plaintiffs were employed (if one accepts their allegations as true) as washers/dryers for local car wash businesses. These plaintiffs do not work with, nor do they produce any goods in interstate commerce.

For individual coverage to exist under the Act, the plaintiffs must demonstrate that they are engaged in commerce or engaged in the production of goods for commerce, which they clearly are not and cannot; nor have they alleged that to be the case. Sec. 207 (a) (1).

As further enunciated by the Eleventh Circuit in Thorne, supra, for one to be "engaged in commerce" for purposes of coverage under the Act, he must be participating directly in the actual movement of persons or things in interstate commerce by working for an instrumentality of interstate commerce, such as the transportation or communication industry ( an interstate bus company, for example--clearly not the case at bar), or regularly using the instrumentalities of interstate commerce in his work such as the regular and recurrent use of interstate telephone,

mail, or travel (again, not the case at bar nor has it been pleaded by plaintiffs). Collado v. Cleanex, at 1373.

Like Mr. Collado, these plaintiffs do not work for an instrumentality of interstate commerce but for a local service company---a car wash which purchases soap, locally, and which is produced locally. These car washes simply are not instrumentalities of commerce. See, also, Tapia, 2009 WL 3246121 at 3.The trial court held that Mr. Collado was not engaged in the production of goods for commerce, and similarly the plaintiffs in this action have not alleged that in their pleading.

Plaintiffs' recovery, therefore, would be relegated to "enterprise coverage", were they employees handling, selling, or otherwise working on goods or materials that have been moved in, or produced in commerce. This, of course, could include the soap used to wash the cars, if not for the fact that the soap is manufactured locally (See Vasquez Affidavit).

"Where an enterprise acquired from within the state, the goods or materials used by its employees and has no role in causing goods or materials to move in interstate commerce to employees for their use in the business, enterprise coverage is not triggered." Flores v. Nuvoc, Inc., 610 F. Supp. 2d 1349, 1354 (S.D. Fla. 2008).

Section 203 (i) does not include * (emphasis hereinafter supplied) in the definition of "goods" that which is delivered into the actual physical possession of the ultimate consumer, i.e., here, the ultimate consumer is unquestionably the automobile owner. There can be no argument, tortured or otherwise, that the ultimate consumers of the automobiles washed at the defendant car washes are anything but their owners.

> The Supreme Court has articulated that it is the intent of Congress to regulate only activities constituting interstate commerce, not activities merely affecting interstate commerce. McLeod v. Threlkeld, 319 U.S. 491, 497, 63 S.Ct. 1248, 87 L.Ed. 1538 (1943). Therefore, for an employee to be "engaged in commerce" under the FLSA, he

> must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel.
>
> Thorne v. All Restoration, at 1266.

The Eleventh Circuit has posited that even the fact that some of the tools Mr. Thorne may have purchased may have crossed state lines at a previous time did not in and of itself implicate interstate commerce. So, too, if an occasional vehicle from Connecticut wanders into Harlem, it does not create an interstate environment.

The Eleventh Circuit emphatically stated that, "[w]hen goods reach the customer for whom they were intended, the interstate journey **ends** and the employees engaged in any further intrastate movement are not covered under the Act." (emphasis supplied). Thorne, at 1267, citing McLeod, supra, at 493. Hence, the autos, purchased by, and in the hands of the customers for whom they were intended, put the interstate journey of those "goods" to rest, and the argument of the defendants being engaged in an interstate business equally to rest. The customers are not engaged in commerce even if their local, Harlem Ford franchise previously purchased the vehicle from far away Detroit.

Therefore, the Defendant car washes are not engaged in commerce as defined by the Act, and neither are those washing the cars. These plaintiffs are engaged in nothing more than intrastate movement, if at all, and are not covered by the Act.

And, these "goods" or "materials" as previously suggested by Plaintiffs' counsel were not acquired by the car washes; they are merely washed by them.

Moreover, the cars in this action similarly are not included in the definition of "goods" under the Act once they have been delivered into the actual possession of the ultimate consumer-

--the car purchaser. Polycarpe v. & E & S Landscaping Service, Inc., 616 F.3d 1217, 1222 (11th Cir. 2010).

In other words, there is an exception to the definition of "goods" as a result of the ultimate-consumer application and, as the Eleventh Circuit pointed out in reaching its decision in Polycarpe; an exception very much alive today and still included in the definition of "goods" ("…often referred to as the ultimate-consumer exception: '[it] does not include goods after their delivery into the actual physical possession of the ultimate consumer thereof other than a producer, manufacturer, or processor thereof'" ). Polycarpe, at 1222.

So, for the plaintiffs to prevail, given this exception, they have to succeed in establishing the autos as "materials" for purposes of qualifying under the "handling materials" definition. But, according to the Court in Polycarpe, these autos would not meet the definition of "materials" either. Polycarpe, at 1224.

Whether an item qualifies as a "material" depends on whether the item is serving as a material in context, such as tools or other articles necessary for doing or making something. Polycarpe, at 1226. "Materials" means the "tools or other articles necessary for doing something." The Senate Report accompanying the 1974 amendments that added the term, "materials", described them as "being goods consumed in the employer's business, as e.g., the soap used by a laundry". Ergo, logically, it cannot be the thing itself (the autos).

Drawing a clear analogy, the Eleventh Circuit discussed china dinner plates produced out-of-state as an example; certainly "materials" if purchased by a catering business to be used in its banquet business---serving food on those dishes; and "'goods" if sold by a department store to the ultimate consumer.

The Eleventh Circuit in Polycarpe concluded that, "[h]aving discussed the relationship between the 'or materials' and 'goods' definition…" **it is conceivable that an item actually would not fall under either definition**. Id., at 1225-1226. In other words, if we were talking about a fine china dishwashing service, catering to the local socialite clientele, the soap conceivably could qualify as the "materials" but, the dishes which were purchased by, and are being washed for the homeowner---the ultimate-consumer who just had a large dinner party---would not fall under either definition. Neither do these automobiles!

The defendant car washes in the action at bar do not purchase the automobiles, hence the autos cannot qualify as "materials' and they certainly do not qualify as "goods" given the ultimate-consumer exception. Therefore, these defendants cannot be considered to be covered by the Act as an Enterprise. And, if not an "Enterprise", it wouldn't matter what other materials were engaged in the service despite the fact that all the other materials used by the defendants in this matter are all locally purchased and manufactured.

Which brings us back to Archie and Velez, supra, the two cases relied upon so heavily by plaintiffs' counsel in opposing defendants' request to make this motion.

In Archie, decided well before the Eleventh Circuit spoke so emphatically in either Thorne and/or Polycarpe, the trial court, in a well reasoned decision authored by Justice Sotomayor, found that the brooms, bags, pails, scrappers etc., used by the sanitation crews (the plaintiffs there), some of which undoubtedly moved in interstate commerce, constituted "'goods" or "materials", and that the defendants were an enterprise engaged in commerce by reason of its being awarded contracts from international bankers. Archie, at 529.

However, in the instant matter the service is all local, and the soap, water, and towels, the equivalent of what the sanitation crews used in Archie, were not moved in interstate

commerce. This is a clear distinction from the fact pattern in Archie and which takes this matter out of that analysis.

Moreover, the Velez Court, in upholding the recommendations of Magistrate Judge Katz, concluded that the Magistrate had been correct in recommending denial of the defendants' motion to vacate a default judgment, which was correct.

Nonetheless, the Magistrate was just plain wrong and, in what amounted to rush-to-judgment dicta in discussing the cars being parked in a number of garages in New York City, the Magistrate erroneously concluded that the autos must "…surely epitomize 'goods' or 'materials" that have been moved in or produced for interstate commerce"; this interpretation neither comports to either the Congressional intent in qualifying and distinguishing the difference between "goods" and "materials" after the 1974 amendments to the Act, nor to the interpretation of the Eleventh Circuit as enunciated in both Thorne and Polycarpe.

In Velez, Magistrate Katz completely overlooked or chose to ignore the ultimate-consumer exception when opining that the cars could be considered goods". In doing so, Magistrate Katz rather cavalierly opined that the automobiles were one or the other, kind of a "take your pick" analysis without a thorough look. We know now in light of Polycarpe and Thorne that those cars certainly could not be considered "goods".

And, the item upon which the service is being performed cannot by definition also be considered the "materials" used on the item on which the service is being performed; a clear redundancy. Therefore, those cases, or for that matter any case involving automobiles which remain in the hands of the ultimate user/consumer are, without more, inapposite if the decision rests on the automobiles being considered "goods".

They equally cannot be considered "materials" either. In light of the teachings of Thorne and Polycarpe, Velez would have to be overturned on appeal.

After the pronouncement by the Eleventh Circuit in Polycarpe, 616 F.3d 1217, the Southern District of Florida, on remand, and in keeping with the earlier teachings of the Eleventh Circuit, determined that the trucks manufactured out-of-state, purchased by the defendant landscaping company to transport the lawn equipment from client to client qualified as "materials" which have travelled in commerce, and triggered enterprise coverage under the Act. Polycarpe v. E & S Landscaping Service, Inc., 821 F.Supp 2d 1302, 1306 (S. D. Fla. 2011). "Goods" that are consumed by the employer, or those qualifying under the ultimate-consumer exception, do not satisfy enterprise coverage. Id., at 1305.

Of course, the distinction with that decision and the case at bar is that while E & S Landscaping purchased the trucks, the defendants here neither are purchasers or leasers of the cars. They merely wash them.

The only items not in dispute in Polycarpe as to the origin of production were the trucks which had a "significant connection" to the performance of landscaping.

And, in Rodilla v. TFC-RB, LLC, 2009 WL 3720892 (S. D. Fla. 2009), a case relied upon exclusively by the defendants in the remand of Polycarpe, the trial court determined that vehicles rented out by a car rental company were "goods", but would not qualify as "materials", because the rentals were the very "goods" at the center of the car rental's business. In other words, the car rental company either bought or leased these automobiles to, in turn, rent them out to others. This is again a clear distinction from the case at bar where the cars are owned and operated only by those intended to be the ultimate user/consumers---those seeking a wash.

The determination of whether an item is a "good" or "material" necessarily relies on the factual context of its use. 2009 U.S. Dist. Lexis 104157, [WL] at * 14.

In the case at bar, the cars cannot qualify as "goods" because the defendants do not sell or deal in cars. And, they do not qualify as "materials" because their use cannot be deemed to be an integral tool to carry out commerce. As with the china dinner plates being washed by the dish washing service, and as pronounced by the Eleventh Circuit in Polycarpe, they are neither "goods" nor "materials".

## SUMMARY OF ARGUMENT

As the Eleventh Circuit pointed out in Polycarpe, 616 F.3d 1217, 1225, it, meaning the item in question, "…could also count as **neither**", meaning "goods" or "materials", thereby eviscerating the enterprise application of interstate commerce. And, in the case at bar that is exactly the situation; the autos are neither "goods" nor "materials" and, therefore, we have no interstate commerce pursuant to the Act without more and, therefore, no federal subject matter jurisdiction. As such, this matter should be dismissed, with the plaintiffs free to file in the courts of New York and New Jersey to redress their putative claims.

September 4, 2013
N.Y., N.Y.

/s/ LM_______________________
Louis J. Maione, Esq. 8589
Attorney for Defendants
444 East 57th Street, 6th Floor
New York, N.Y. 10022
(917) 549-5693