UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Ronard Lora, et al., individually and on
Behalf of all others similarly situated,

                    Plaintiffs,

-against-

J.V. Car Wash, Ltd., et al.,

                    Defendants.

Civ.No. 11-9010 (LLS)

**AFFIDAVIT OF JOSE VASQUEZ IN REPLY TO OPPOSITION BY PLAINTIFFS TO MOTION TO DISMISS THE COMPLAINT**

---

Jose Vasquez, being duly sworn, under the penalties of perjury deposes and says as follows:

1. I am a defendant in the above-captioned matter and I submit this affidavit in reply to the opposition of the plaintiffs to defendants' motion to dismiss this matter for want of subject matter jurisdiction.

2. I am the owner of the four car wash defendants in this matter, one in New Jersey, the other three in New York, and am fully familiar with the facts as stated herein.

3. I have reviewed the affidavits of Rojas Corona Valerio ("Valerio"), Marcos Diaz ("Diaz"), Giovanni Paulino ("Paulino") and Ramon Alvarez Carrion ("Carrion"), as well as the declaration of Laura Longobardi, Esq. ("Longobardi"), the plaintiffs" attorney.

4. Where appropriate, I will address the specific misrepresentations of those four men and those of Ms. Longobardi, but initially I address the "common thread" of misstatements and lies found in these cookie cutter affidavits.

1

5. For example, in his affidavit (par. 24, p.5) Mr. Valerio, contends that he has seen "products" being used at my car washes that bear the name "Aura" which contents allegedly were sprayed on the cars. Mr. Paulino repeats the same lie in his affidavit (par. 32, p.6), as does Mr. Carrion (coincidentally to Mr. Valerio's, at par. 24, p.5).

6. In her declaration, Ms. Longobardi engages in what my attorney explained to me is nothing more than compounded hearsay, as opposed to "proof" or evidence, when she recites for the Court that she "…searched for Aura Detergents on the internet and found the company's website…" and, in turn, spoke to one of Aura's owners, a John Coppola ("Coppola"), who acknowledged selling a line of products, "which are not currently listed on the company's website".

7. That's interesting. She spoke to a man about some non-identified products NOT on his website but not about whether Aura sells product to the defendants.

8. With all due respect, so what? Is this evidence?

9. Ms. Longbardi could not even aver that Mr. Coppola sells me auto cleaning products which ARE on his website because he doesn't sell me anything.

10. And, Ms. Longobardi couldn't even say that Mr. Coppola told her that he sells me any product, again because he doesn't.

11. Ms. Longobardi had fourteen (14) days from the day my attorney served her with defendants' motion papers. She had ample opportunity to secure an affidavit from Mr. Coppola to say he sold product to the defendants but she didn't, because it is respectfully submitted he told her just the opposite—I am not a customer of his.

12. In addition, I seriously question the affidavits of these men because I observed approximately 16 or so at their depositions. Not only do they not speak English, as is

evidenced by their own admissions in their affidavits that needed to be translated, but I do not believe that they can read or write at all in English from what I observed at those depositions. Now, they contend that they saw and read the name "Aura" on product at my car washes?

13. They never have seen Aura's product because I purchase from Jobe in New Jersey and Glimtone in New York.

14. Making an unsupported claim without any proof is no evidence at all.

15. Ms. Longobardi then takes an enormous leap of logic by suggesting that these non-existent Aura products "...had to have moved in interstate commerce". Really?

16. Well, that might be the case but since I do not use that product, it has nothing to do with this case.

17. Moreover, why would I buy from Aura in New Jersey to have it shipped in to New York when Glimtone, a leader in the industry, is in my back yard? Actually, in the Bronx.

18. These kind of unfounded accusations and innuendo are unworthy of an attorney.

### CARS FROM ALL OVER THE UNITED STATES

19. Next, several of these plaintiffs allege that they have seen cars from Connecticut, Florida, South Carolina, North Carolina, Delaware and Pennsylvania, at my establishments (e.g., Valerio Aff., par 25).

20. Aside from the fact that Mr. Valerio by his own admission does not read English, as Messrs. Paulino, Diaz, and Carrion, also are wanting, do these gentlemen really think that the Court will believe that cars from South Carolina are driving to New York for a $7.00 car wash? That these men who cannot read English somehow can distinguish

what states these cars allegedly are from?

21. We live in a day and age when everyone has a cell phone, and most are equipped with HD cameras which are as good as any 35MM Nikon.

22. Isn't it strange that neither Ms. Longobardi, nor anyone on her behalf, nor any of these plaintiffs, could go to any one of my four car washes in the fourteen (14) days they have had since they were served with defendants' motion papers and take pictures: time-stamped pictures allegedly evidencing this stream of out-of-state automobiles?

23. As I stated in my affidavit in support of defendants' motion, I know of one customer for example who hasn't left the State of New York in more than 10 years that I have known him. Yet, he has a West Virginia license plate registered to his sister's home for "insurance" purposes.

24. Secondly, as I understand the law as explained to me, the automobiles do not qualify as "goods" or "materials" under the Fair Labor Standards Act ("Act"), and plaintiffs have not proven anything more than they can make bald, conclusory statements without any support that there exists this putative conga line of autos from out-of-state.

25. Why, because it is easy to say yet hard to substantiate since it is a lie!

26. The four gentlemen have done the same thing when swearing under oath that this "white van" is owned by the defendants. Two of theses affiants actually admit that they were told this by other workers. In other words, pure hearsay.

## GOOGLE MAPS?

27. In her declaration, Ms. Longobardi has made a tortured attempt in trying to establish that my car washes do "detailing".

28. In paragraph eleven (11), for example, at pp.4-5, she opines that I have contradicted myself by the documents I attached to my affidavit.

29. With all due respect, and without trying to embarrass her, Ms Longobardi apparently doesn't know the first thing about the car wash or detailing businesses, and neither do her clients.

30. The "spray wax" that I purchase is sprayed on a car from a Windex-like bottle as the car is being dried; it is a superficial glycerine-like wax product that is also used, as I understand it, to place a sheen on some fruit. This is not detailing.

31. The "rim cleaner" is just that—a tire rim cleaner; it is not detailing. Every wash gets a tire rim cleaning.

32. The "tire gel" is just that—a gel that puts a sheen on the tires; it is not detailing. Every wash gets a tire gel sheen.

33. Contrary to the superficial preening of an automobile with tire gel and the like, detailing is taking an automobile, compounding it, buffing it out, then waxing/simonizing it with high-quality carnuba wax, and then using a polyglycoat sealer.

34. In addition, the entire inside of the car is vacuumed, including the trunk, the upholstery or leather interior is cleaned, the rugs shampooed, windows cleaned inside, and the insides of the door jams are wiped down as well.

35. Detailing is a three (3) hour job and one that I abandoned over ten (10) years ago, as I stated in my affidavit in support of the motion to dismiss, because it takes twelve man hours to do a car (4 men at 3 hours). At $7.25 an hour per man, not counting overtime if the work cuts into overtime hours, that amounts to a minimum of $84.00-100 per car in labor alone. If you use another $8-12 in materials, you cannot make money at $120 per

auto, which is the most you can get in these low income neighborhoods. This is the reason I gave up the business years ago. These neighborhoods do not sustain the prices necessary to make a profit after taxes.

36. Car dealers like Infinity or Lexus, for example, charge $220 to detail an automobile. This is verified by a simple phone call to the dealers.

37. And, private detailers in Alpine, a very affluent New Jersey suburb, charge as much as $240 to detail a car, which of course for that price they pick up and deliver to your home.

38. You simply cannot charge these kinds of prices in Harlem or Webster or, without a doubt, Elizabeth. The clientele will not pay it and, quite frankly, most cannot afford it.

39. On the other hand, I cannot make money at $120 per car and that is precisely why I gave it up and precisely why these plaintiffs decided to move in on my car washes.

40. They can charge prices like that because they have no overhead, they do not declare their income, and they pay no taxes.

41. Ms. Longobardi either doesn't own an automobile, or if she does, she clearly has never had one detailed.

42. To bolster her shaky argument, she has appended what she liberally describes as "blurry" pictures from Google Maps, by which she purports to show I have a detail business because the sign at the Harlem car wash says "Harlem Detail Center"

43. I built Harlem in 1996, over seventeen (17) years ago when concededly we did detailing.

44. However, even though we stopped detailing, I have no intention of pulling that sign down to merely erect a new one unless Ms. Longobardi wants to front me the money.

45. It's really much simpler, and very much cheaper, to tell an inquiring customer that we don't do detailing any longer. Moreover, my steady clientele knows not to ask any more because they know we don't detail any longer.

46. Ms. Longobardi then gives her opinion that from these photos it "…certainly appears to be …full-service car wash businesses at all four locations". It does?

47. All that is visible in these unauthenticated pictures, which my attorney tells me do not rise to the status of admissible evidence, are cars being washed or just-washed cars being dried. They all appear to have New York plates in the three pictures of the New York car washes.

48. In fact, the picture of the Webster Car Wash shows absolutely nothing! Nonetheless, it does show that Webster stays open "24" hours a day for security reasons because of the neighborhood. It is not in my interest to leave that site unattended at night, unless I want to find nothing there in the morning.

49. It also shows the logo, "Wash & Lube", although as we did with the detailing at all four car washes, we gave up offering "lube" services more than 10 years ago at Webster. Perhaps the plaintiffs now want to claim that they worked for me doing oil changes and grease jobs?

50. And, irrespective of promoting a 24 hour day and lube service, I am not taking that sign down either: it is way too expensive.

51. These pictures not only are not proof of detailing, they aren't "proof" of anything but Ms. Longobardi's conjecture.

52. We do no detailing any more at any site.

53. We wash cars with soap manufactured locally and purchased locally. All Jobe's product

are manufactured in its warehouse in New Jersey and purchased and used in New Jersey. All of Glimkote's products are manufactured locally and purchased and used in New York, as with the recycled towels which are purchased locally.

54. All Ms. Longobardi's supposition that Aura products must travel in interstate commerce falls flat on its face because we do not use those products, period, and it is irrelevant as it applies to this case.

55. Moreover, these plaintiffs who cannot read or speak English, could not be deemed to have read these so-called Aura products.

56. In an attempt to challenge the proof submitted with my affidavit, Ms. Longobardi pulled Aura out of a hat, and these plaintiffs, now selective readers of soap products, endorsed her opinion.

57. I can provide the Court with the name of a dozen other car wash supply vendors, none of from whom I purchase goods. What would that prove? The same thing that Ms. Longobardi has tried to prove here, nothing.

### LONGOBARDI MUSINGS

58. Ms. Longobardi's declaration then goes into a diatribe about what I referred to as a "steady" roster of employees.

59. However, nothing which she referred to contradicts what I swore to earlier.

60. Most of our workers, except for my family members who help out wherever they are needed, are hired in the neighborhood.

61. If they are hired in the Bronx, at Webster, but actually have a legal address in

Manhattan, that is their business. I don't track them or follow them home. Many reside in local neighborhoods with relatives so they can walk to work.

62. So, if one of our workers lives in Manhattan and lives with his cousin in the Bronx, it is of no consequence to me or him where he actually resides so long as he fills out his paper work accurately.

63. Let me put it this way, I don't visit their apartments to see if they reside there in the evening.

64. As for Bayway, for which Ms. Longobardi believes she has uncovered a smoking gun, the explanation is simple.

65. She compares 2010 and 2011, when we had only Ofelia Sanchez, my girlfriend, and my brothers Victor and Jose, and an occasional employee or two, to 2012 when the business at Bayway actually took off.

66. A few of our workers preferred to work there because there is no state income tax in New Jersey and I suspect that if they all go out to New Jersey together it is to their benefit. Again, where they declare they reside and where they actually reside is not something that I have investigated.

67. I never said that no one from the state of New York worked in New Jersey. What I said was that most of my employees are local, and by that I mean that we hired them right there in the neighborhood. And, I do not transport workers from Bayway to New York as plaintiffs have suggested.

68. I am sure that the Court has the power to inquire of the motor vehicle bureau to see that none of the car washes, nor I personally, owns a van, despite the lies advanced by

plaintiffs who allege under oath that I own a white van to transport them from Jersey to New York or vice versa. What year is this van? What is the license plate number? In what state is it registered?

69. Merely saying that I own a van is no evidence or proof of anything.

70. As with the claim that these plaintiffs worked for us, there is nothing in the way of proof other than their bare accusations other than one or two who may have worked for the defendants for a short time..

71. While it is possible that one or two of these plaintiffs worked for us for a time since one of the managers could have hired him, like Mr. Alvarez, the Court must ask itself some pivotal questions.

72. Why would we ask Mr. Alvarez to complete a W-4 form to work at Webster, but not in New Jersey?

73. Why would there be a W-4 for him and not the 20-odd other plaintiffs when every one of our other workers has filled then out?

74. And, if Mr. Alvarez was terminated by me allegedly for suing the car washes, why hasn't plaintiffs' counsel submitted proof of his unemployment claim? Or his fully completed W-2 and income tax return to bolster his argument that he was underpaid.

75. My car washes do not qualify as an "Enterprise" for purposes of the Act, and it is not whether an individual travels back and forth between states to work for an organization which "bootstraps" the entity into an "Enterprise".

76. I have submitted proof to this Court that I use locally manufactured materials and goods which I purchase locally, and legal support that the automobiles are not considered

"goods" and/or "materials" under the Act. The Plaintiffs have not dispelled those facts.

77. I have given the plaintiffs every opportunity to submit an affidavit from Mr. Coppola of Aura to establish Ms. Longobardi's conjecture that we use his products. She has failed to do so.

78. We have given plaintiffs and their counsel ample time and opportunity to take real in-time photos to bolster their flimsy argument that my car washes are overrun by out-of-state vehicles. Again, they have failed to do so.

79. We have given plaintiffs and their counsel ample time and opportunity to establish that I own this phantom white van that transports legions of workers. Again, they failed.

80. While I have provided countless records to plaintiffs' counsel to show that we legally carry all workers on our books, plaintiffs only can point to one, Mr. Alvarez, who suggests that he was not properly paid.

81. One person does not constitute a class and does not qualify under the Act.

82. And, if plaintiffs' counsel really, really wanted to prove their case they could do it rather simply. Just provide redacted income tax returns, state, local, and federal, showing how much they earned, and from whom they were paid, and whether they were underpaid as counsel suggests.

83. This would be a simple endeavor but for one thing. These plaintiffs either are tax evaders, or they never worked for defendants and cannot show source of income. Or both!

84. For all these reasons, I respectfully request that the Court dismiss this action for lack of subject matter jurisdiction which plaintiffs failed to properly plead and which, now on

this motion, they have failed to establish in the face of proof provided by defendants that we are not subject to the Act.

85. If called to the stand at the trial of this matter, I would testify to the foregoing from personal knowledge as I have in this affidavit.

JOSE VASQUEZ

Sworn and subscribed to
before me this 23rd day
of September, 2013.

SUSAN A HASENBALG
NOTARY PUBLIC OF NEW JERSEY
Commission Expires 3/30/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

Ronard Lora, et al.,

              Plaintiffs,

    -v-

J.V. Car Wash, Ltd., et al.,

              Defendants.

------------------------------------x

Civ. No. 11-9010 (LLS)

### AFFIDAVIT OF JOSE VASQUEZ IN REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**LOUIS J. MAIONE, ESQ.**
Attorney at Law
444 E. 57th Street, 6th Fl.
New York, NY 10022
(917) 549-5693

Pursuant to 22NYCRR 130-1.1 the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

Dated: _____     Signature: _____

                                                Printed Name: <u>LOUIS J. MAIONE</u>

**PLEASE TAKE NOTICE**

_____ that the within is a (certified) true copy of a reply affirmation
Entered in the office of the clerk of the within named Court on_____
_____ that an Order of which the within is a true copy will be presented the
Before Hon. _____ , one of the judges of the within named Court, at     Dated: