UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Ronard Lora, et al., individually and on behalf of all others similarly situated,

                        Plaintiffs,

       -against-

J.V. Car Wash, Ltd., et al.,

                        Defendants.

Civ. No. 11-9010 (LLS)

---

**Defendants' Memorandum of Law in
Reply To Plaintiffs' Opposition To
Defendants' Motion To Dismiss For
Lack of Subject Matter Jurisdiction**

Defendants, Jose Vasquez, J.V. Car Wash, Ltd., Harlem Hand Car Wash, Inc., Broadway Hand Car Wash Corp., Bayway Hand Car Wash Corp., Saturnino Vargas, Jose Jimenes, and all named defendants, by and through their attorney, Louis J. Maione, Esq., submit this Memorandum of Law in Reply to the Opposition of Plaintiffs to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.

**BACKGROUND FACTS**

In an attempt at brevity, and to avoid burdening the Court, the defendants will refrain from recounting the background facts with which this Court keenly is aware and which have been presented to the Court in defendants' initial Memorandum of Law.

1598177-5

## PLAINTIFFS HAVE PROFFERED NOTHING TO DEFEAT THE MOTION

None of the four affidavits of the plaintiffs, nor the declaration of Laura Longobardi, Esq. ("Longobardi"), plaintiffs' counsel, have presented to the Court any evidence necessary to defeat the defendants' motion to dismiss for lack of subject matter jurisdiction, i.e., evidence which presents a dispute in respect of a material fact. And, because they must be rejected by the Court for the reason stated herein below, there is no evidence before this Court other than that advanced by defendants.

The Complaint in this matter never pleaded how the defendant car washes qualified as an "Enterprise" under the Fair Labor Standards Act (the "Act"). It never pleaded how, for example, the Enterprise met the "interstate commerce" criteria set out in the statute. It merely recited, almost verbatim, the statutory pronouncement of the definition of "Enterprise" and, without more, stated that the defendants operated in interstate commerce.

As a further example at facially deficient pleading, the Complaint never pleaded how, or what the Enterprise used in the way of "goods" in its business as defined under the Act; "goods" which were moved in interstate commerce, and precisely the identity of those "goods". Likewise, the Complaint never pleaded that the Enterprise used "materials" moved in interstate commerce, as defined under the Act, and/or the identity of those materials.

As stated in defendants' initial memorandum of law, plaintiffs merely formulaicly stated that the car washes qualified as an Enterprise and, ergo, plaintiffs must be allowed to avail themselves of federal subject matter jurisdiction.

While plaintiffs' counsel protests in her memorandum of law that the plaintiffs' claims have not been made "solely for the purpose of obtaining [federal] jurisdiction" that is exactly what counsel has done here for without the ability to bring this matter in federal court, the

plaintiffs' counsel would have the unwieldy burden of litigating in two separate venues, in two separate states, against different corporate entities. What better reason to attempt to plug their case into a federal statute than to avoid that onerous task?

Plaintiffs all have contended that they worked for the defendant car washes but conveniently have hidden behind the mantel of needing to be shielded from "harassment" by the defendants by refusing to disclose any bona fides about themselves, including addresses, social security numbers, and/or legal status.

Mindful that the Court upheld plaintiffs' counsel's application for a protective order on these issues until trial, it cannot be said that plaintiffs have to proffer nothing more than bare allegations that they all worked for the defendant car washes to prevail in this action. I worked for you—now pay me!

Income tax returns, local, state, and federal, on a redacted basis (without plaintiffs' social security numbers and addresses would have been acceptable) would surely go a long way to establish that all of these plaintiffs actually worked for the defendants, but were unjustly compensated by the defendants as they contend, unless, of course, these men have chosen to abrogate the law and have failed to file income tax returns, something which certainly would go to their credibility, and certainly something to which the defendants should be entitled to know in defending this matter.

Yet, plaintiffs' counsel has chosen to proffer nothing more than the bare allegations of 4 individuals who contend that they worked for defendants, with no proof whatsoever that they did, other than Ramon M. Alvarez Carrion ("Carrion"), seemingly the only exception, but whose "proof" is shaky at best. Of the four affidavits submitted by plaintiffs, only that of Carrion avers

that he filled out a W-4 in July of 2012 (par. 16, p.4) as defendants' principal has contended all along that he requires of every hire..

Assuming the truth of Carrion's statement, where is his fully completed W-2 for 2010, for 2011, and for 2012? Where are his income tax returns showing for whom he worked, and how much he received in compensation? Why does plaintiffs' counsel feel the entitlement to submit her own redacted versions of these documents, including Carrion's W-2's?

The answers lie in the details because Carrion avers in his affidavit (par. 28, p. 6) that he has seen some documents produced by defendants that he recognizes as the bottom halves of W-2's given to him by the defendants, and which he appended as Exhibit A to his affidavit. In the first instance, this man avers that he cannot read English. How then can he so testify to what these documents say?

Secondly, Ms. Longobardi obviously, and by her own admission, redacted information from these documents, including wages, tips, and other compensation, and federal income taxes withheld, etc. How then can the defendants tell whether the information redacted accurately reflects what Carrion was paid in any particular year and whether that pay met the minimum wage standard? How can defendants defend against these baseless allegations of plaintiffs being underpaid if they will not proffer their complete W-2's, and corresponding, and presumably accurate income tax returns, irrespective of suggesting that Carrion worked at one place but received a W-2 from another of the defendants? What is the issue at bar, the accuracy of what the plaintiffs were paid if they all actually worked for defendants, or at what carwash?

4

## THESE AFFIDAVITS HAVE NO PROBATIVE VALUE AND ARE INADMISSABLE

The foregoing actually begs the question of the truthfulness of these affidavits because none of them are admissible as a matter of law. Translated affidavits, without more, must be rejected by the Court.

Witness testimony translated from a foreign language must be properly authenticated and any interpretation must be shown to be an accurate translation. The statement of the interpreter must be sworn, describing the maker's qualification or expertise regarding language translation, and whether the maker actually did that translation. Here, plaintiffs have failed to lay a proper foundation for the admissibility of these "translated" affidavits. Jack v. Trans World Airlines, Inc., 854 F. Supp. 654, 659 (N.D. Ca. 1994); The Sunrider Corporation v. Bountiful Biotech Corp., 2010 WL 4590766, p.14 (C.D. Ca. 2010), citing Jack, supra, and Rule 604 of the Federal Rules of Evidence ("FRE"), that an interpreter must be qualified as an expert and there must be the administration of an oath or affirmation to make a true translation. See also, Fonseca v. Hall, 568 F. Supp. 2d 1110, 1125 n. 10 (C.D. Ca. 2008); Rosario-Guerra v. Orange Blossom Harvesting, 265 F.R.D. 619, 623-624 (M.D. Fla. 2010). Cf., Rule 901 of FRE.

None of these four affiants can read English. They do not aver that they made affidavits in Spanish first that then were translated into English accompanied by the certification of a qualified interpreter. They aver only that the affidavits were "interpreted" for them in Spanish and that they understand the contents. Who interpreted the affidavit? Who wrote the affidavits in English which then were read to the affiants in Spanish? Absent evidence sufficient to demonstrate that statements of affiants originally were in Spanish and later translated into English, with a certification by a qualified interpreter, these affidavits are inadmissible as a matter of law.

These affidavits were not made in accordance with the requirements of FRE 604 and 901, or in accordance with applicable case law. For these reasons, none of these four affidavits, nor the contents of anything contained, including exhibits, may be admitted or accepted by the Court in opposition to the motion.

### THE REAL FACTS

Both affidavits of Jose Vasquez ("Mr. Vasquez"), including the one being submitted in reply to plaintiffs' opposition to the motion, sorn to on September 23, 2013, show that he maintains four car washes, three in New York, one in Elizabeth, New Jersey.

These car washes only wash cars. They no longer detail cars, i.e., they do not compound or simonize automobiles, nor have they done so for years; they do not shampoo the interiors of cars, nor do they tint windows (Vasquez Reply Aff.).

In what only can be characterized as a feeble attempt to impugn what Mr. Vasquez has proffered under oath in respect of the soap products he purchases, and from which vendor, plaintiffs' counsel, with fourteen (14) (11 business) days at her disposal, chose *not* to speak to the actual suppliers of those products whom Mr. Vasquez identified by producing invoices substantiating purchases of the soap products. Rather, she chose to speak to a gentleman who owns a rival company to those suppliers who obviously did not tell plaintiffs' counsel that he sold product to the defendants, now or ever, or otherwise, though it would have amounted to compounded hearsay, Ms. Longobardi certainly would have proffered that information in her declaration. Her speculation and conjecture aside, this conversation with that gentlemen is proof of nothing. It is pure hearsay, but then again he did not say anything to impugn Mr. Vasquez's affidavit anyway.

So, too, did plaintiffs' counsel choose not to speak to, nor even contact the towel vendors.

Most egregiously, however, plaintiffs' counsel has never chosen to speak with Mr. Vasquez. In almost two years of litigation, plaintiffs have not taken the deposition of Mr. Vasquez to determine what "goods" or "materials" he allegedly utilizes in his business, and whether those were goods and/or materials which either flowed through, or were intended to flow through, interstate commerce as required under the Act.

And, finally, plaintiffs' counsel has not even contended in its opposition papers that they needed to take the deposition of Mr. Vasquez to oppose the motion, as he ostensibly was the only person in possession of facts necessary to oppose such motion.

This matter originally was scheduled to go to trial on August 5, 2013 but was adjourned when Mr. Vasquez relieved his former counsel of the engagement. Plaintiffs obviously were prepared to go to trial without having taken Mr. Vasquez' deposition because, as the Court no doubt will vividly recall, Ms. Longobardi vehemently opposed that adjournment. She obviously then was ready to forge ahead to trial without the deposition of Mr. Vasquez.

The trial then was re-scheduled to early September, 2013, for which the defendants were ready to proceed with their defense, until plaintiffs' counsel abruptly requested an adjournment to which the defendants, out of a sense of comity, did not object and which the Court granted. Again, before seeking that adjournment plaintiffs obviously were dead set on going to trial without having taken Mr. Vasquez' deposition.

While Mr. Vasquez proffers solid, empirical evidence that goods and materials utilized in his business are both manufactured and purchased <u>locally</u>, plaintiffs' counsel merely speculates otherwise by referring to a conversation with another soap supplier who does no business with the defendants.

Ms. Longobardi also suggests that the car washes are overrun with out-of-state cars, although plaintiffs' counsel has had almost two years to get someone, anyone, out to those car washes to take pictures evidencing this so-called out-of-state caravan. Since the statements of the four affiants are not admissible, irrespective of whether they are untruthful on this issue, there is no evidence of this conga-line of cars before the Court and Mr. Vasquez unequivocally denies the premise.

Plaintiffs' counsel had the same opportunity to take photographs of the alleged auto "detailing" that purportedly goes on at these car washes, yet has chosen not to take any steps to memorialize that activity with any photographs.

Instead, plaintiffs' counsel proffers what she readily describes as "blurry" pictures taken off of a Google Map site, proffer it as "evidence" despite its lack of authenticity, which flies in the face of FRE 803 et seq., and then interprets those blurry pictures for the Court. This presentation not only abrogates the well-established rules of evidence, especially when Ms. Longobardi deigns to interpret for the Court, and all alike, what these blurred pictures tell us, but it is nothing more than rank hearsay. Actually, what these blurred images tell us is nothing at all!

An attorney's affidavit or declaration is subject to the same personal knowledge requirement as any other. Nobel Ins. Co v. Hudson Iron Works, Inc., 111 F. Supp. 2d 373, 375 n.2 (S.D.N.Y. 2000); Carnrite v. Granada Hosp. Group, Inc., 175 F.R.D. 439, 448-449 (W.D.N.Y. 1997). No attorney's declaration may be used to proffer documents unless the document already is in the record. Anderson v. Dillard's Inc., 109 F. Supp. 2d 1116, 1121 (E.D. Mo. 2000); Cf., Rule 56 (e) of F.R.C.P.; Blount v. Connecticut Gen. Life Ins. Co., 2002 U.S. Dist. Lexis 25553, at *8-9 (D. Or. 2002). In other words, although Ms. Longobardi really has not proffered any evidence whatsoever with her unauthenticated blurry pictures, her speculative

8

declaration supporting these non-facts, these foreign photos, and these redacted documents which are not part of the record, also must be disregarded. The insufficiency of Longobardi's declaration precludes the admissibility of any of its exhibits. Anderson v. Dillard's, at 1121.

All of these shenanigans were undertaken in an effort to bolster the four affidavits of men who admittedly do not read or speak English. There are no certifications to any of these affidavits from an interpreter which attests to their accuracy, which are so "cookie cutter" in appearance that they undoubtedly were drafted by one person hoping to fit the alleged, but untested, putative Spanish testimony to create the facts as counsel perceives them; rather hopes them to be by turning non-facts into something which plaintiffs can sell to the Court (e.g., conversations with the soap manufacturer who does not list on his website the products which plaintiffs contend that the defendants use and who does not even aver that he knows the defendants). Each of the four affidavits actually cap off with the verbiage, "[t]his affidavit has been interpreted for me in Spanish, and I understand its contents fully." Really? How can someone who does not read and/or understand English swear to that?

Who interpreted each affidavit, and how can the affiant sign off on this affidavit without a certification because there is no way that any affidavit could have been read to an affiant in English----they do not understand the language. If read to them in Spanish it is required that the Spanish interpreter be qualified, and swears under oath to the accuracy of what was read in Spanish. But, they have not averred to have done any of this in proffering these statements.

The Court has no idea whether, as what properly should have been done under these circumstances, an affidavit was first completed in Spanish by the affiant from his personal knowledge, and then an interpreter read the Spanish affidavit back to the affiant who stated that it was accurate; and then a certified interpreter, under oath, translated it into English.

Since Ms. Longobardi took the jurat, attesting that the affiant swore before her on the date that she notarized an English written affidavit, it only creates more of an issue as to what these affiants actually signed and/or understood. Unless Ms. Longobardi is a qualified Spanish interpreter, who took the aforementioned steps to qualify Spanish language affidavits first, then these affidavits cannot be accepted, let alone admitted by the Court. And, if Ms. Longobardi fits the requirements of the qualified interpreter, she then becomes a witness in this matter no longer able to represent the plaintiffs

### PLAINTIFFS' COUNSEL'S DENIGRATION OF THE ELEVENTH CIRCUIT

Plaintiffs' counsel seems to think very little of the decision in Polycarpe v. E & S Landscaping Service, Inc., 821 F. Supp. 2d 1302, 1306 (S.D. Fla. 2011), as well as the reasoning of the Eleventh Circuit Court of Appeals decisions which has distinguished "goods" from "materials", and vice versa.

The Eleventh Circuit pointed out that it is conceivable that an item actually is neither goods or materials, a fact succinctly pointed out in defendants' initial memorandum, leaving the plaintiffs' case to live or die with whether the "goods" or "materials" used by defendants in their business fall within that definition under the Act. Simply put, and plaintiffs' counsel offered no argument in opposition, the cars washed at the car washes are neither goods or materials under the Act; the exception pointed out by the Eleventh Circuit which, incidentally, for whatever reason appears to hear more Act cases than any other Circuit Court, despite Ms. Longobardi's apparent disdain for that bench.

That leaves plaintiffs' counsel with but one argument, to wit: the goods and materials utilized in the business either moved or were produced for interstate commerce, relying on Ramirez v. H.J. S. Car Wash Inc., No. CV-11-2664 (VVP), 2013 WL 1437600 (E.D.N.Y. 2013).

1598177-5

However, reliance on Ramirez, as well as Chang Mei Lin v. Yeh's Bakery, Inc., No. 12-CV-2146 (JG), 2013 WL 867436 (E.D.N.Y.) (employees wearing uniforms or using radios, books, flashlights and cleaning supplies that moved in commerce), is wholly misplaced.

Not only have plaintiffs not alleged circumstances or facts in their Complaint such as those that arose in Ramirez and Yeh's Bakery, but confronted with the proof advanced by Mr. Vasquez of local purchases of local products, plaintiffs and their counsel have proffered nothing more than the non-existent and rather meaningless allusion to Aura; no uniforms, no brooms, no clipboards, no bags, no nothing in interstate commerce. Just soap and water.

Plaintiffs cannot rely on the findings of fact of other unrelated cases to "bootstrap" their argument. They need to come forward with evidence which raises question of material fact, not conjecture and/or supposition. If it is not the cars, then it is the soap and towels. If it is not the soap and towels, it is not an Enterprise even if defendants were doing auto detailing, which they deny.

In not comprehending the defendants' application of the teachings of Thorne v. All Restoration Servs., Inc., 448 F.3d 1264 (11th Cir. 2006), the plaintiffs have completely missed the point. Thorne was advanced precisely to show that unless you have the Enterprise, which we do not in the instant case, the travelling of the plaintiffs from one state to another is meaningless to qualify for coverage under the Act. And, equally misunderstood by plaintiffs' counsel was the citation to Rodilla v. TFC-RB, LLC, 2009 WL 3720892 (S.D. Fla. 2009), which gives a well-reasoned, cogent and succinct explanation concerning the application of either the definition of "goods" or "materials" to automobiles, clearly manifesting why the autos washed by the defendants in this case do not qualify under either definition. Truly, as pointed out by Polycarpe, this is one of the instances where some artifact is neither a "good" nor a "material".

## LACK OF SUBJECT MATTER JURISDICTION

Lack of subject matter jurisdiction may be raised at any time. Unlike a Rule 12(b)(6) dismissal, the Court need not confine its evaluations to pleadings alone, but may accept any evidence, such as affidavits, except that in the instant case the plaintiffs' affidavits must be summarily rejected along with that of counsel's declaration.

A factual attack on subject matter jurisdiction divests the presumptive truthfulness of the allegations of the complaint, and the Court must weigh the evidence proffered. McCann v. Hospital Bella Vista, 458 F. 3d 281, 290-291 (3d Cir. 2006); Cross Timbers v. Saginaw, 991 F. Supp. 563, 566 (N.D. Tex. 1997).

Once challenged, the burden is on the non-movant. Robinson v. Overseas Military Sales Corp., 21 F. 3d 502, 507 (2d Cir. 1994).

A court may grant summary judgment if the moving party shows that there is no genuine material fact in dispute as to any issue and that the movant is entitled to judgment as a matter of law. In order to survive a summary judgment motion, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. Reiseck v. Universal Comm. of Miami, No. 06 Civ. 777 (TPG), 2012 WL 3642375, at * 2 (S.D.N.Y. 2012). In the case at bar, the plaintiffs have failed to do so.

And, conclusory allegations, conjecture and speculation, are insufficient to create a genuine issue of fact. Kerzer v. Kingly Mfg., 156 F. 3d 396, 400 (2d Cir. 1998). With a mere scintilla of evidence not sufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

Whether the question of an Enterprise goes to the merits of a case such as the one at bar, or is jurisdictional, is irrelevant for purposes of this motion because the movant now has

1598177-5

established as a matter of law that because of the way it conducts its business it cannot qualify as an Enterprise and the plaintiffs, given every opportunity, have failed to show that there is a genuine dispute of material fact regarding that issue.

Whether this Court would choose to retain this matter, even if it dismissed the federal cause of action, is a matter of discretion. It is respectfully submitted that in exercising its discretion the Court should decline the plaintiffs' invitation to retain the state claims.

Where the Court dismisses all federal claims, it does not abuse its discretion in declining to hear the state claims, and should not retain supplemental jurisdiction. Peterec-Tolino v. New York, 364 Fed. Appx. 708 (2d Cir. 2010); Cave v. East Meadow Union Free School Dist., 514 F. 3d 240, 250 (2d Cir. 2008), citing United Mine Workers of Am. V. Gibbs, 383 U.S. 715, 726 (1966).

Plaintiffs have submitted no proof in acceptable form to overcome the facts established by the defendants. And, the Complaint in this matter is so flimsy with regard to the allegations under the Act, or otherwise, that there is only one conclusion to reach, to wit: this matter was alleged to be subject to the Act only to obtain access to the federal court and avoid litigating in two separate venues as plaintiffs should have been made to do.

Since there is no Enterprise as defined under the Act, then the defendants are four separate corporations with no diversity of citizenship. The New Jersey corporation certainly should be entitled to litigate in its home state the issues which plaintiffs may raise under the New Jersey statute, and likewise the three New York corporations allowed to litigate in the New York state courts.

As pointed out by the Second Circuit Court of Appeals in Cave, supra, at 250, "[t]he New York state courts are, after all, in the best position to determine the validity…" of plaintiffs' New

1598177-5

York state claims. Moreover, conceivably, the application of the respective state claims against separate corporations in their own state courts could have different results than if all the corporations are lumped together in one action; an unfair result once the Enterprise theory has been dispelled. The New Jersey corporation, for example, may have violated the New Jersey statute, but the New York corporations not have violated New York law.

And, plaintiffs' state law claims dismissed without prejudice will not have an impact on the statute of limitations for those claims. Ibid., at 250; Cf., 28 U.S.C. Sec. 1367 (d), which tolls any limitations period. See also, Robinson v. Zurich N.A., 2012 WL 4320645 (E.D.N.Y. 2012).

## SUMMARY OF ARGUMENT

For all the reasons stated herein, and as supported by the applicable case law, defendants respectfully request that the Court grant its motion and dismiss this action for lack of subject matter jurisdiction, together with such other and further relief which this Court deems appropriate under the premises.

September 24, 2013

*[signature]*

Louis J. Maione, Esq. 8589

Attorney for Defendants

444 East 57th Street, 6th Floor

New York, N.Y. 10022
(917) 549-5693

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Ronard Lora, et al.,

                      Plaintiffs,

   -v-

J.V. Car Wash, Ltd., et al.,

                      Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civ. No. 11-9010 (LLS)

## DEFENDANTS' REPLY MEMORANDUM OF LAW TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

**LOUIS J. MAIONE, ESQ.**
Attorney at Law
444 E. 57th Street, 6th Fl.
New York, NY 10022
(917) 549-5693

Pursuant to 22NYCRR 130-1.1 the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

Dated: _____                    Signature: _____

                                                      Printed Name: <u>LOUIS J. MAIONE</u>

**PLEASE TAKE NOTICE**

_____ that the within is a (certified) true copy of a reply affirmation
Entered in the office of the clerk of the within named Court on_____
_____ that an Order of which the within is a true copy will be presented the
**Before Hon.** _____, one of the judges of the within named Court, at     Dated: