```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   RONALD LORA, et al.,

 4              Plaintiffs,

 5         v.                                11 CV 9010(LLS)

 6   J.V. CAR WASH, LTD., et al.,

 7              Defendants.

 8   ------------------------------x

 9                                           July 3, 2013

10                                           3:11 p.m.

11
     Before:
12
                    HON. LOUIS L. STANTON,
13
                                             District Judge
14
                          APPEARANCES
15
     ARENSON DITTMAR & KARBAN
16        Attorneys for Plaintiffs
     BY:  LAURA E. LONGOBARDI
17        STEVEN ARENSON

18   JERRY CHRISAFIS
          Attorney for Defendants
19
     LEAVITT & KERSON
20        Attorneys for Defendants
     BY:  PAUL E. KERSON
21

22

23

24

25
```

1               (In robing room)

2               THE COURT:  Well, where do things stand?

3               MR. KERSON:  Paul Kerson, K-E-R-S-O-N.  I was the

4    attorney for the defendants but I was fired.  Defendant -- the

5    lead defendant no longer has confidence in me, doesn't want to

6    listen to me, doesn't want to follow my advice.  So he fired

7    me.  That's what happened.  So I thought that was sufficient.

8               But then I heard from your Honor that I have to make a

9    formal motion, so I did.  And that's my application, to be

10   relieved, because the client -- there's no longer an

11   attorney-client relationship.

12              THE COURT:  Do you have any replacement in sight?

13              MR. KERSON:  Okay.  This is where it gets rather

14   complicated.  My colleague, Jerry Chrisafis, is the corporate

15   attorney for the four corporations which are defendants.  And

16   these have been his clients for many, many, many years.  I'm

17   only on this case for this case only.  So I talked to

18   Mr. Chrisafis at length, and he has been diligent in trying to

19   find substitute counsel, which he could probably tell you all

20   of his efforts, if you want to hear it.

21              MR. CHRISAFIS:  Good afternoon, your Honor.

22              When this whole thing happened about three, four weeks

23   ago, I called various attorneys that I know and asked them

24   to -- if they could recommend somebody that handles defense of

25   these type of cases.  I don't have the list of names with me,

1     but I'm basically the guy in the office.  But I called several
2     firms, your Honor.  One firm didn't want to get involved
3     because it was their policy of not getting involved in the
4     middle of a lawsuit.  Another one, they retainer was just --
5     the retainer fee was just totally, totally, totally outrageous.
6     I also contacted other firms, and I'm waiting to hear back from
7     one attorney.  One firm didn't want to get involved because
8     it's in the summer and it's -- the people are on vacation,
9     etc., etc., etc.  But all together I've contacted four or five
10    firms.
11              And to be honest with you, most of the firms -- one of
12    the firms -- two of the firms I contacted do these cases as
13    plaintiffs.  They don't do them as defendants.  And if they do
14    them -- so I was kind of, whatever.
15              Now, let me just say one other thing, your Honor, with
16    respect to myself.  I felt compelled to put out a declaration
17    in myself because Ms. Lora's insisting that I be the attorney
18    of record and I take over for Mr. Kerson.  If I could, Judge --
19    and I'm representing these people 20, 25 years.  I'm admitted
20    in the court in the Eastern District.  I would have done that
21    from the get-go.  I would not have had Mr. Kerson or anybody
22    else, whatever.
23              Unfortunately, I don't do these type of cases, your
24    Honor.  I don't do Federal Labor Standards Act.  But the client
25    is my client for a long period of time.  And basically, you

1   know, I'm sitting in here, you know, holding his hand, so to
2   speak.  He wants me to be here because he has trust and
3   confidence in me.  But, again, if I could do this kind of work,
4   I would have done it.  I would gladly make a fee and I would
5   gladly -- whatever, I would gladly come to court and represent
6   them.  The only work I've done in federal court in the last 10,
7   15 years, I used to do some bankruptcy work, mostly in the
8   Eastern District.  And I stopped doing that when the bankruptcy
9   laws changed.
10            And, you know, if you read her papers, she's -- I
11   don't want to -- plaintiffs' attorneys are insisting that, you
12   know, I get appointed and I be the attorney.  First of all,
13   they don't want me to be the attorney.  Even if they asked me,
14   I would decline, your Honor, because I would be doing my client
15   a disservice.  The idea here is to protect them and represent
16   them the best I could.  And when Mr. Kerson basically, you
17   know, dropped out of the case, it was up to me to carry the
18   ball, so to speak.  I'm the one who wrote to your Honor and
19   told you what was going on and to please ask for a conference,
20   whatever, which then started the whole -- you know, the whole
21   process here, your Honor.
22            And I do have phone calls, and I do have
23   communication, and I do have other people I'm talking to and
24   interviewing.  But at this point in time he hasn't hired
25   anybody to represent him because, your Honor, to be very honest

1     with you, the stakes get very high.  If plaintiffs win, they

2     could put them out of business.  So we're not talking about,

3     you know, a little, you know, personal injury case or, you

4     know, breach of contract where the damages aren't going to be

5     capped, you know, 30, 40, 50 grand here.  Like I said, the

6     stakes are very, very high.  I want to -- he's entitled to get

7     the best possible counsel that he can afford.

8              And the other thing is, your Honor, if somebody does

9     come in, you know, it's not going to be fair to them.  They're

10    going to have to read voluminous files.  They're going to have

11    to read 18 depositions.  They're going to have to prepare for

12    18 depositions of the plaintiffs.  There's going to be five

13    depositions of the defendants.  There's going to be pretrial

14    orders, your Honor, that have to be prepared.  There's going to

15    be jury questions that have to be prepared.  There's going to

16    be a trial you have to prepare for.

17             So it's not easy task for anybody coming in here, your

18    Honor.  It's almost a Herculean task in that sense, for

19    somebody to come in there in the middle of the trial.  That's

20    why, you know, we ask for -- I don't know if we asked for 60

21    days or 90 days to get somebody, so we can get this thing

22    moving and do whatever, get it going along.

23             And the other thing, your Honor, is, you know, I know

24    what Laura's going to say, these are dilatory tactics, we're

25    doing it for some purpose.  It wasn't.  We had a meeting in my

1    office -- I don't want to say too much because I'm -- overborne
2    by attorney-client privilege, as your Honor knows.  And
3    basically, you know, it was not a pretty scene.  It erupted
4    into a situation where, you know, it's like telling -- I don't
5    want you to be my lawyer anymore.  And there were -- you know,
6    doesn't have trust and confidence in this man anymore.  And,
7    you know, after a year and a half, I don't know the reasons he
8    said that.  And I tried to speak to him.
9              I also told him I'm going to try to do what I can to
10   get him another attorney to represent him here, because, you
11   know, I still am his personal attorney.  I am the corporate
12   attorney, even though I'm not the attorney here on this record.
13   I know I put in an appearance, as I pointed out in my papers.
14             That's all I have to say, your Honor.
15             MS. LONGOBARDI:  Laura Longobardi for the plaintiffs.
16             Judge, I've laid out in my declaration what I think
17   should happen here, but just to address some of the points that
18   Mr. Chrisafis has just said, for him to say, first off, that
19   there were voluminous files, there are no voluminous files.
20   They haven't produced a single document in this case other than
21   the list that's been shown to your Honor that purports to be
22   their employees as of September -- excuse me, July 20, 2012.
23   There's been no massive document production by the defendants.
24   Due to the nature of this kind of case, there are not many
25   documents that the plaintiffs have.  There's probably a handful

1     that amounts to maybe 20 to 25 pieces of paper, all of which
2     had been produced long ago to the defendants.
3             The 18 depositions that have already been taken, it's
4     actually already -- 17 of the 18 were approximately 15 minutes
5     each, and I believe the longest of those is 20 pages.  So there
6     isn't a voluminous record that new counsel would have to become
7     familiar with to begin with.
8             But before we get to the issue of new counsel,
9     Mr. Chrisafis and Mr. Kerson are repeatedly talking about they
10    have to protect the defendant's interests.  And while I can
11    sympathize with them as counsel, my interest here is to protect
12    the plaintiffs.  This lawsuit was filed December 9, 2011; not
13    last June or July, as Mr. Kerson said in his declaration.  It's
14    been well over 19 months since this case was filed, and
15    essentially this case has gone nowhere.
16            We met before your Honor two months ago, at which time
17    we set out a plan that we were going to be on trial August 5th.
18    Your Honor set a date of July 15th for the plaintiffs to
19    provide their half of the pretrial order to defendants, set
20    July 31st as the date to get the final pretrial order to your
21    Honor.
22            When we were here last, with Mr. Kerson, with
23    Mr. Chrisafis, with Mr. Vasquez, myself and Mr. Arenson, I said
24    that I wanted to take the -- excuse me, the defendants'
25    depositions, Mr. Kerson said that he wanted to take plaintiffs'

Case 1:11-cv-09010-LLS   Document 90   Filed 11/14/13   Page 8 of 17         8
D73elorc

1    depositions.  I waited approximately two weeks, thinking that
2    Mr. Kerson would contact me to start scheduling plaintiff
3    depositions.  When I heard nothing, I started noticing
4    defendants' depositions with the end game of July 15th; I had
5    to get a draft pretrial order to the defendants.
6             Two months have gone by now.  And at this point the
7    prejudice to the plaintiffs, who have been thinking that
8    finally they're going to get their day in court, has been huge.
9    They have no idea when they're going to get new counsel.  The
10   date keeps changing as to when they think they're going to get
11   new counsel.  Frankly, it's already been 30 days, or almost 30
12   days, since they first advised that Mr. Kerson's not going to
13   be counsel of record anymore.  We need to find new counsel.
14            At this point we think we should stay on trial
15   schedule.  I think that we should simply enter preclusion
16   orders because of discovery defaults that are already in place
17   on account of the defendants, and we should go forward with
18   trial on August 5th, based on the plaintiffs' testimony.
19   Because the plaintiffs have appeared for their depositions
20   already.  The plaintiffs have been willing and able to appear
21   for their depositions up to this point.  And the plaintiffs
22   ought not to be penalized because of all the drama that's going
23   on with the defendants, drama that comes at the very end of a
24   long history of delay and defaults.
25            MR. CHRISAFIS:  May I be heard again, your Honor?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1        THE COURT:  Sure.

2        MR. CHRISAFIS:  By the way, Jerry Chrisafis.  I don't
3   know if I put my name before.

4        Your Honor, in good faith, you know, we spent -- and
5   they did, too -- money at a mediation last December in an
6   effort to try to resolve this case.  We spent a whole day
7   literally, nine hours.  I got two offers from the -- what do
8   you call it?  From, I'm sorry, my clients, if I -- correct me
9   if I'm wrong, I don't remember getting any kind of responsive
10  number saying, okay, this is the number, then, you know, you
11  start the negotiation process; this is what I'm offering, they
12  come down, we come up, and try to find some happy medium to
13  resolve the claim.  But we're not -- I mean, if you were
14  delaying, he wouldn't be spending -- he'd spend over
15  6,500-some-odd dollars for a mediation Judge.  To me that's a
16  waste of money.  Why would I do that if I'm trying to delay the
17  case?  Would I spend that kind of money?  Would I invite the
18  client to spend that kind of money?

19       And we have had some discovery, brief as it may have
20  been, of the plaintiffs.  And we've had fights over -- courts
21  subsequently ruled about what you can and you can't ask for,
22  Social Security numbers and tax returns and all those other
23  items.  So we've had EBTs, like I said, short and brief as they
24  are.  So it's not that we haven't done anything in the case.
25  Granted, maybe it's not moving as fast as the plaintiff wants

1    it to be, but we've done something here.  It's not like we've
2    sat here and done totally nothing.
3             THE COURT:  What about responding to their discovery
4    demands?
5             MR. CHRISAFIS:  Well, Judge, I'll be honest with you,
6    I was not -- like I said, I'm not the attorney of record in
7    terms of -- what do you call it?  Maybe that question is better
8    asked of Mr. Kerson.
9             THE COURT:  He's sitting right here.
10            MR. KERSON:  Okay.
11            MR. CHRISAFIS:  I'm not trying to throw it on him
12   but --
13            MR. KERSON:  Okay.  I have to say this carefully.  I
14   don't want to violate the attorney-client privilege, so I can't
15   go into my dispute with the clients, unless you want to do it
16   in camera.  I guess I could do that.  But I really don't
17   think -- I'm in an awkward position.  I've been fired, so I
18   can't really speak for him.  I can tell you what happened, but
19   I can't speak for the defendants anymore.  And I don't want to
20   tell you what happened --
21            THE COURT:  You not only can, it's your duty to do so
22   until I relieve you.
23            MR. KERSON:  Okay, then I will.  The dispute I had --
24            THE COURT:  And I'm not by any means thinking of
25   relieving you.

D73elorc

1           MR. KERSON:  Well --
2           THE COURT:  Also, it's presenting me with a situation
3   in which the only solution is to continue you in your present
4   position as trial counsel for the defendants.  Otherwise, it's
5   going to be impossible to hold the trial as scheduled.
6           MR. KERSON:  Okay.  Then can I speak to you in camera?
7           THE COURT:  Yes.
8           MR. KERSON:  Thank you.  So can they be excluded for
9   the time being?
10          (Pages 12 through 17 sealed by order of the court)
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1              (In robing room)

2              THE COURT:  Local civil Rule 1.4 provides in full

3  text, quote, an attorney who has appeared as attorney of record

4  for a party may be relieved or displaced only by order of the

5  Court, and may not withdraw from a case without leave of the

6  Court granted by order.  Such an order may be granted only upon

7  a showing, by affidavit or otherwise, of satisfactory reasons

8  for withdrawal or displacement and the posture of the case,

9  including its position, if any, on the calendar, and whether or

10 not the attorney is asserting a retaining or charging lien.

11 All applications to withdraw must be served upon the client

12 and, unless excused by the Court, upon all other parties.

13              The papers submitted in support of the application to

14 withdraw do not show satisfactory reasons for withdrawal or

15 displacement.  And they take no account of the fact that there

16 is a trial date set by order way back in May upon the then

17 consent of the parties for a trial on August 5.  And from what

18 I hear from the defendants' statement this afternoon, there is

19 no prospect of being ready for that trial, if anybody but

20 Mr. Kerson is in charge of the matter for the defense.  And

21 accordingly, I am not going to relieve him until, if at any

22 point, a proper and satisfactory replacement appears who can

23 assure the Court that he or she will comply with the scheduling

24 order set by this Court on May 3, 2013.

25              Mr. Kerson is charged with the responsibility of

1  meeting those dates.  Now, to facilitate that, it seems to me
2  good administration, but I will hear counsel for both sides in
3  this respect, to direct complete answers to the plaintiffs'
4  discovery demands to be served on the plaintiffs by the end of
5  next week.  That's Friday, July 12.  I'll give them the benefit
6  of the weekend and make it Monday, July 15th.  Depositions are
7  to be conducted as quickly as possibly available, taking the
8  witnesses in whatever order can be readily arranged and carried
9  out, without a special regard to priority considerations.  The
10 unavailability of any defendant to appear for deposition may be
11 submitted as supporting an order of preclusion of that
12 defendant's testimony at trial, but the determination on that
13 point would await further order in each case.
14          By Friday, July 26, defendants shall respond to
15 plaintiffs' draft pretrial order and offer their opposition
16 concurrence and alternate drafts for inclusion in the joint
17 pretrial order.
18          I'll entertain comments of counsel.
19          MR. KERSON:  We respectfully except.
20          THE COURT:  Excuse me?
21          MR. KERSON:  Respectfully except.
22          THE COURT:  Accepted or excepted?
23          MR. KERSON:  E-X-C-E-P-T.
24          THE COURT:  No exceptions are necessary, to save you
25 the point.

D73elorc

1  MR. CHRISAFIS:  Is the trial date still August 5th,
2  your Honor?
3  THE COURT:  Excuse me?
4  MR. CHRISAFIS:  Is the trial date still August 5th?
5  THE COURT:  Of course.  There's no good reason offered
6  for adjourning it.
7  MR. CHRISAFIS:  I want to say one thing, your Honor.
8  Mr. Vazquez is outside.  I don't know if you want to hear from
9  him or if you want to speak to him or -- because I brought him
10 here.
11 THE COURT:  I have no wishes in the matter except to
12 administer the case in accordance with the rules already laid
13 down.
14 MS. LONGOBARDI:  Your Honor, I understand you said
15 there's not going to be any regard to priority given in terms
16 of depositions.
17 THE COURT:  It shouldn't be any reason to proceed or
18 not proceed with a given witness on a given day.
19 MS. LONGOBARDI:  Understood.
20 THE COURT:  The main thing is take the testimony when
21 you can.
22 MS. LONGOBARDI:  But I don't want to find myself in a
23 situation where I am repeatedly producing plaintiff after
24 plaintiff after plaintiff and no defendant has appeared before
25 me yet, because that prejudices the plaintiffs.  We have done

1  what we've needed to do so far in this case, and if I'm not
2  getting --
3            THE COURT:  What's the prejudice?  Isn't the usual
4  thing that the defendants take the plaintiffs' deposition?
5            MS. LONGOBARDI:  It is, but to some extent they've --
6            THE COURT:  Why is that prejudicial in this case?
7            MS. LONGOBARDI:  Because according to the current
8  schedule, if they're not responding to any of my written
9  discovery demands until Monday, July 15th, which is the same
10 day by which I have to provide my version of the pretrial order
11 to them, I'll be doing that without the benefit of any of that
12 discovery.  And if we've been only taking plaintiffs'
13 depositions between now and July 15th, then I'll be having to
14 produce my version of the pretrial order, again, without the
15 depositions of the defendants.
16           THE COURT:  Look, all of this is conceptual.  The fact
17 of the matter is they say that none of your clients ever worked
18 for them.  You say they did and they worked at times which
19 presumably you can specify, you know, more or less effectively.
20 What secrets are going to be disclosed that are going to
21 prejudice your position on trial?
22           MR. ARENSON:  Your Honor, if I might.
23           THE COURT:  This is shadow boxing?
24           MR. ARENSON:  The only conceivable prejudice that I
25 can see would be in the event the defendant does not appear for

1  testimony, and then the Court were to not rule that their
2  testimony would be precluded, we would be facing trial without
3  the defendant having appeared. And they've gotten to depose
4  the plaintiff but we've never gotten to depose the defendants.
5      THE COURT: Well, there are a couple of answers to
6  that.
7      MR. ARENSON: I know that's hypothetical.
8      THE COURT: They're not very tasteful to you, but the
9  answers are, number one, in criminal cases pretrial discovery
10 can be very sketchy indeed. For hundreds of years lawyers
11 tried cases without much, if any, pretrial discovery. In
12 neither of those situations were there marked injustices for
13 lack on the one side or the other.
14     Furthermore, your proposition is very iffy; if this,
15 if that and then if this something else. Well, I'll take my
16 problems single steps by single steps.
17     MR. ARENSON: Okay.
18     THE COURT: As a general matter, I'm trying to get
19 most of the evidence out in a way that it can be used in trial
20 without too many conceptual difficulties.
21     MS. LONGOBARDI: All right.
22     MR. CHRISAFIS: May I be heard again, your Honor,
23 please.
24     THE COURT: Yes, you can.
25     MR. CHRISAFIS: In view of what's happened here, your

D73elorc

1 Honor --

2 THE COURT: Nothing's happened. What has happened
3 here is that a lot of changes you want haven't occurred.

4 MR. CHRISAFIS: In view of the fact that August 5th is
5 less than a month away, your Honor, I feel compelled to ask,
6 maybe the Court can give us a little more -- push back the
7 trial date a little bit so we can get all this discovery done.

8 THE COURT: No. The trial date was set months ago.
9 The only problem that is facing you is that you haven't honored
10 it.

11 MR. CHRISAFIS: Note my exception or objection, your
12 Honor, for the record.

13 THE COURT: Yes, certainly.

14 If there's nothing further, I think we're adjourned.

15 MS. LONGOBARDI: Thank you, Judge.

16 THE COURT: Thank you all.

17 (Adjourned)