E3h1lorc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

RONARD LORA and HUGO RIVERA,
individually and on behalf of
all others similarly situated,

                    Plaintiffs,

          v.                            11-CV-9010 (LLS)

J.V. CAR WASH, LTD., BROADWAY
HAND CARWASH CORP., WEBSTER
HAND CAR WASH CORP., HARLEM
HAND CAR WASH INC., BAYWAY
HAND CAR WASH CORP., JOSE
VAZQUEZ, SATURNINO VARGAS,
JOSE JIMENEZ, RAMON PEREZ,
DOMINGO "DOE," ADOLFO "DOE"
and JOHN DOES 1-10,

                    Defendants.         Conference

------------------------------x

                                        New York, N.Y.
                                        March 17, 2014
                                        3:10 p.m.

Before:

                    HON. LOUIS L. STANTON,

                                        District Judge

                         APPEARANCES

ARENSON, DITTMAR & KARBAN
     Attorneys for Plaintiffs
BY:  LAURA E. LONGOBARDI, ESQ.
     STEVEN ARENSON, ESQ.

LAW OFFICES OF LOUIS J. MAIONE
     Attorneys for Defendants
BY:  LOUIS J. MAIONE, ESQ.

E3h1lorc

| | |
|---|---|
| 1 | (In the robing room) |
| 2 | THE COURT:  What happened at the bankruptcy meeting? |
| 3 | MR. MAIONE:  What meeting? |
| 4 | THE COURT:  What do I mean? |
| 5 | MR. MAIONE:  What meeting?  I didn't know there was a |
| 6 | meeting.  There hasn't been a bankruptcy meeting in a while. |
| 7 | There will be one coming up on April 14th. |
| 8 | THE COURT:  Oh, April 14th.  I thought it was |
| 9 | March 14th. |
| 10 | MR. MAIONE:  No.  It's a hearing to confirm the fees |
| 11 | owed to all of the attorneys and accountants and attorneys for |
| 12 | the creditors committee, etc., and I think that the law, your |
| 13 | Honor, is that if nobody contests anybody else's fees, within |
| 14 | 21 days of their submission, which would make that the 26th, |
| 15 | then they're automatically to be paid, but Judge Steckroth, |
| 16 | maybe in a, you know, an attempt to be prudent, because he just |
| 17 | took the case over, is having a hearing, although it says that |
| 18 | nobody need attend, although I'm attending.  So the 14th, I |
| 19 | imagine everybody's application will be approved. |
| 20 | THE COURT:  Well, you thought they might also convert |
| 21 | it to a Chapter 7. |
| 22 | MR. MAIONE:  I don't think that there's going to be |
| 23 | much of a choice.  It appears -- |
| 24 | THE COURT:  What difference does it make for a single |
| 25 | creditor?  There's only one creditor, isn't there, in that |

3

E3h1lorc

1    bankruptcy?

2            MS. LONGOBARDI:  One group of creditors; namely, the

3    plaintiffs.

4            THE COURT:  Well, this case.

5            MR. MAIONE:  Yeah, yeah.

6            THE COURT:  Yes.

7            MR. MAIONE:  What it means is that someone will be

8    appointed.  If he's converted, they will put in an examiner and

9    that examiner or -- not trustee but an examiner will oversee

10   his business and be able to make payments on behalf of those

11   debtors in possession.  That's what I tried to point out in my

12   letters, Judge.  You know, even if you didn't let me out of

13   this case, I need money to pay for experts, etc.  He's not even

14   paying that.  So until the judge says -- Judge Steckroth says,

15   listen, you got to pay these people money and he says, I can't

16   pay them money, I don't see that the court has much of a choice

17   but to *sua sponte* convert him, and if that doesn't happen,

18   somebody else is going to make a motion, you know, one of the

19   attorneys for the creditors committee.  I don't even know who

20   they are.  Ms. Longobardi knows them.  But attorneys for the

21   creditors, attorneys --

22           THE COURT:  But that's all going to wait for

23   April 14th.

24           MR. MAIONE:  There's nothing I can do about that, your

25   Honor.  I wish there were.  You know, I was actually hoping

E3h1lorc

that he'd be available to come in today, but I tried to -- I
reached out to him but I did not hear from him.  Because I
thought, you know, perhaps your speaking to him might resonate
to some extent.  But I haven't spoken to him now since the
Thursday before last.  We were supposed to have a meeting, all
the attorneys, and he was supposed to show up, and he --

            THE COURT:  This is who you're talking about now?

            MR. MAIONE:  Vazquez, Vazquez, the defendant, José
Vazquez.  I was hoping he'd be here today.  'Cause he's really,
you know, the person to speak to.  He runs all the
corporations, but -- they're all his corporations.  But I was
unable to reach him.  And as I said in my letter, I have these
other fellows to defend who I can't even speak to.  They don't
speak a word of English.  I actually hand delivered letters to
both of those fellows, which I had translated by a translator
into Spanish, and I hand delivered it to them to tell them that
we had to meet and we had to be prepared for their depositions.
Ms. Longobardi had noticed them up.  And as I said, I couldn't
even have a conversation with them on the car wash lots.  I
just gave it to them.  They knew who I was because they'd met
me a few times, and that's why I had the letters translated
into Spanish.  But for me to sit down with them now, I need a
translator.  I couldn't sit down for six or seven hours and
prepare the two of them for deposition without a translator,
and I'd have to pay for a translator at their depositions.  And

E3h1lorc

1    I'm not in a position to do that any longer.  I've got $11,000

2    worth of bills on my desk.

3             So something's going to happen on the 14th.  I mean,

4    I can't see that the trustee won't move to convert them or the

5    court will do it *sua sponte*.  If that happens, then

6    somebody's -- whoever's in charge, the examiner or the trustee,

7    is going to advance at least fees to pay for expenses going

8    forward so that we can get the expert and we can -- I can

9    prepare these two fellows for depositions, and if I had to go

10   forward because the court won't let me out, you know, my fees

11   will get paid some day, like everybody else's will.

12             THE COURT:  What's the point of going ahead with

13   Vazquez's deposition if he isn't going to answer any questions

14   between now and trial?

15             MR. MAIONE:  Well, he said he was.  That was the point

16   of the meeting that --

17             THE COURT:  You said that he wasn't many, many times.

18             MR. MAIONE:  Yeah, and then we had a meeting with him.

19   Four lawyers.  It was me, two fellows from the bankruptcy firm,

20   and his individual attorney who is representing him in the

21   bankruptcy, and we --

22             THE COURT:  That's Mr. Ferro?

23             MR. MAIONE:  Yes, Ralph Ferro.  And we explained to

24   him, and he said yes, he would testify.  And so thereafter he

25   was forced to appear last Tuesday and testify, and he doesn't

E3h1lorc

1    show up.  And I couldn't reach him.  I called him three or four

2    times.  You know, I know Ms. Longobardi is frustrated, but so

3    am I.  I could not reach him.  I tried him the night before.  I

4    called him three or four times that day while we were sitting

5    there, and then I got that e-mail from Mr. Ferro that said that

6    he was stressed out and overwhelmed, and as I said in my

7    letter, I have no knowledge of bipolar disease and whether --

8    how it affects somebody, but I have been around him long enough

9    to know that sometimes he's just on, you know -- in another

10   space.

11            THE COURT:  Well, that's a medical term --

12            MR. MAIONE:  Yeah, I know.

13            THE COURT:  -- that we're all familiar with but we're

14   not all specialists in that field.  But you've also heard the

15   legal term "default."

16            MR. MAIONE:  Yes, I have.

17            THE COURT:  What are your thoughts about that?

18            MR. MAIONE:  Well, I think it's a little drastic even

19   at this point.  I know he's been very uncooperative, but

20   Mr. Ferro's e-mail to me, which I provided to your Honor -- and

21   I haven't spoken to Ralph since then, I tried to reach him

22   earlier today after I got the call from chambers -- is that

23   he's prepared to sit down and have his deposition completed in

24   10 to 14 days from the date of that e-mail, which was Friday, I

25   believe.

7

E3h1lorc

```
1          THE COURT:  Well, you said he's prepared to sit down
2     and have his deposition completed, but he can't be prepared
3     because of the translation costs involved.
4          MR. MAIONE:  No, no, no.  Excuse me, your Honor.  Not
5     to interrupt you, but --
6          THE COURT:  Excuse me?
7          MR. MAIONE:  -- he doesn't need a translator.
8          THE COURT:  Oh, he doesn't need a translator.
9          MR. MAIONE:  No.  He speaks English.
10          THE COURT:  So he can be prepared on the facts.
11          MR. MAIONE:  Oh, yeah.
12          THE COURT:  But he hasn't been.
13          MR. MAIONE:  Oh, he has been.  I've spent a lot of
14     time with him.  He's been deposed for three days.
15          THE COURT:  So wherever he's sitting down, you don't
16     know where he is and he's not taking any steps to complete his
17     deposition.
18          MR. MAIONE:  I understand that, your Honor.
19          THE COURT:  So I come back to that old epithet,
20     "default."  He's the defendant.  You're not the defendant.
21          MR. MAIONE:  I understand that, your Honor, but there
22     are four corporate defendants and I don't know whether they can
23     be defaulted.  I understand that he's the principal.
24          THE COURT:  Well, he was the 30(b) witness.
25          MR. MAIONE:  Yes, he was.
```

8

E3h1lorc

1          THE COURT:  They can only appear by counsel and they

2     can only testify by human beings.  That's the nature of the

3     corporation.

4          MR. MAIONE:  I understand that.  And we have the other

5     two fellows to consider who are also defendants.

6          THE COURT:  Well, they may have other -- perhaps

7     equitable, perhaps not -- entitlement, some entitlement to

8     separate consideration.  Right now I'm talking about Vazquez

9     and the corporation.

10          MR. MAIONE:  No, I understand that.

11          THE COURT:  The trouble, I gather, with them is that

12     they desperately do need translators and nobody can communicate

13     with them --

14          MR. MAIONE:  That's correct.

15          THE COURT:  -- without a Spanish interpreter.

16          MR. MAIONE:  And as you can appreciate, I would --

17          THE COURT:  So they're at the moment factually

18     inaccessible because they need translation and there's no money

19     for a translator.

20          MR. MAIONE:  Correct.  And I would insist on

21     interviewing them myself as opposed to with Mr. Vazquez's

22     assistance because they're separate defendants.

23          THE COURT:  But you can't do anything without being

24     paid, so that stymies too.  We have a car but it has no gas and

25     no tires.

E3h1lorc

| | |
|---|---|
| 1 | MR. MAIONE:  Good analogy. |
| 2 | THE COURT:  So, Ms. Longobardi? |
| 3 | MS. LONGOBARDI:  Your Honor, default sounds very good |
| 4 | to me.  Frankly, I came in prepared to ask you for preclusion |
| 5 | sanctions, among others at this point.  I'm very sympathetic to |
| 6 | Mr. Maione.  We have had a very good working relationship and I |
| 7 | have not intended to convey in my letters that I believe that |
| 8 | this is his fault.  But that being said, I have clients that I |
| 9 | have to protect. |
| 10 | THE COURT:  To the extent that there was any such |
| 11 | implication that could have been drawn, I certainly did not |
| 12 | draw it.  I think he's acted very well since he came into the |
| 13 | case, within the limits available to him. |
| 14 | MS. LONGOBARDI:  And I concur.  But I have 18 |
| 15 | plaintiffs who, yet again, are asking:  When are we going to |
| 16 | trial?  And I have to explain to them that, yet again, because |
| 17 | of Mr. Vazquez's conduct, this matter has now been put over to |
| 18 | a -- |
| 19 | THE COURT:  Oh.  This is in the complaint column. |
| 20 | MS. LONGOBARDI:  I'm sorry, your Honor.  What do I |
| 21 | want?  Default sounds great to me.  Default sounds great to me. |
| 22 | THE COURT:  Yes.  We're starting at the top. |
| 23 | MS. LONGOBARDI:  Yes. |
| 24 | THE COURT:  You may not be able to get there from |
| 25 | here.  Without any more additions to the present record, I'm |

E3h1lorc

1    talking really about the evidence in the case that you're

2    familiar with and I'm totally ignorant of, can you put in a

3    case?  If we tried it next week, could you put in a case,

4    without getting anything further from anybody?

5             MS. LONGOBARDI:  I could put in a case, if no further

6    testimony came in from any other defendant, because I don't

7    want to be surprised with anything else.

8             THE COURT:  No.  Let's play hardball here for a

9    minute.

10            MS. LONGOBARDI:  Sure.

11            THE COURT:  When I ask a question at the present part

12   of this conversation, I really want an answer to that question.

13            MS. LONGOBARDI:  Yes.

14            THE COURT:  And not a lot of "if" and "but" and

15   "however" and "on the other hand" or anything.  I just want:

16   Can you put in a case?

17            MS. LONGOBARDI:  I could put in my case.

18            THE COURT:  That will get to a jury.

19            MS. LONGOBARDI:  Yes.

20            THE COURT:  Well, that's important.  I think probably

21   under the law you'd have to do that in an inquest, if I granted

22   it, but you say you could do that.

23            MS. LONGOBARDI:  I can do that.

24            THE COURT:  This sounds silly, but I think

25   conceptually it's a fairer question than it sounds.  Then how

E3h1lorc

1    are you being prejudiced by not being able to get further

2    evidence from the defendants?

3              MS. LONGOBARDI:  I can put on my *prima facie* case

4    based on my own plaintiffs' testimony.

5              THE COURT:  And records that you've got.

6              MS. LONGOBARDI:  And what records I have from my

7    people.  Based on the records that I've been given by the

8    defendant, which are largely the payroll tax returns for the

9    relevant period, which I have not had an opportunity to

10   question him about -- I am getting there.  I am getting there.

11   Give me a little leeway.

12             THE COURT:  I don't want "I'm getting there."  Leap to

13   the point and then stop.

14             MS. LONGOBARDI:  I would need to be able to discount

15   or discredit his documentary evidence in order to combat any

16   defense that he might raise.

17             MR. ARENSON:  Your Honor, may I?  Maybe six months ago

18   or eight months ago we were prepared to go to trial without

19   deposition.  That changed, and now there's been testimony by

20   Mr. Vazquez where he pointed to other people as having primary

21   responsibility for managing the employees.  He's also,

22   subsequent to those three days of evasive testimony, with

23   litanies of "I don't know" and "I don't recall," he made a

24   major production of two boxes of documents, with documents for

25   the relevant period, which do give him some basis to present

E3h1lorc

1    some theory of defense.  We've had no opportunity to test him

2    on those --

3              THE COURT:  What's the theory?

4              MR. ARENSON:  The theory is that those payroll

5    documents show some employees and they're not the plaintiffs.

6    Now we have our --

7              THE COURT:  Show some employees.  You mean some

8    employees who were getting paid.

9              MR. ARENSON:  Yes, that's right, that's right.  And

10   he's also articulated --

11             THE COURT:  But you say they're nonplaintiffs.

12             MR. ARENSON:  They're nonplaintiffs, that's right.

13   That's right.

14             THE COURT:  Well, that would perhaps go to the class

15   aspect.

16             MR. ARENSON:  It would also go to -- his theory of

17   defense was:  All my employees -- I report my employees.  I

18   report -- all my employees appear on my quarterly tax returns.

19   Here they are.

20             THE COURT:  Ergo, the plaintiffs weren't employees,

21   his fundamental position since day one.

22             MR. ARENSON:  That's right, and we haven't -- and we

23   wanted those documents.  They weren't produced until after the

24   first three days of evasive testimony, and after we got them

25   and we were prepared to question him about them, he saw all the

E3h1lorc

1    documents laid out on the table and he said, "I'm not answering

2    any questions until the day of trial."  That was

3    February 27th.  And then we called you and you said, "Well,

4    make your motion.  Make your record, clarify all the areas he's

5    refusing to testify about, and make your motion."  We left it

6    there on the 27th, and the 28th we were informed that his

7    lawyer had persuaded him to change his position and now to

8    continue with the deposition.

9         THE COURT:  I think you did a pretty thorough job

10   after that point.

11        MR. ARENSON:  And then we were all set up for

12   March 11th to continue with his deposition and finally get an

13   opportunity to question him on, finally, the documents, the

14   documents produced finally for the period, for the germane

15   period about -- that have some relevance to the case, and he

16   doesn't show up.

17        So yes, if we were back where we were six or eight

18   months ago where we were going with no depositions and in

19   effect the position we would have argued *in limine* is if -- no

20   documents can be offered at trial if they haven't been produced

21   previously -- we could have tried the case.  Now, well, we feel

22   strongly about our case and the credibility of the plaintiffs,

23   all of whom were deposed, I note, and all of whom --

24   Mr. Vazquez sat through four days of 18 -- of 16 --

25        THE COURT:  I really --

E3h1lorc

1              MR. ARENSON:  -- don't want anything else.

2              THE COURT:  You know, rhetoric confuses me.  Come to a

3       point when I want facts.

4              MR. ARENSON:  Forgive me.  In any event, but now where

5       there's been an introduction of documents, if he can use those

6       documents, and we haven't had a chance to question him on it,

7       there's a prejudice to us.  There's a difficulty.

8              THE COURT:  That answers the question.  He's got

9       documents from which he says it can be inferred that these

10      plaintiffs were not employees.

11             MS. LONGOBARDI:  Yes.

12             THE COURT:  And he asks for that inference to be drawn

13      in his favor.

14             MS. LONGOBARDI:  That would be the supposition, yes.

15             THE COURT:  Hmm?

16             MS. LONGOBARDI:  That would be the supposition, yes.

17             MR. ARENSON:  Granted we've never heard that --

18             THE COURT:  So under those circumstances what do you

19      want to do?

20             MR. ARENSON:  Well, what we would like to do is, one,

21      we feel that he's exhausted --

22             THE COURT:  No.

23             MR. ARENSON:  What we'd like to do is have him

24      precluded from testifying.

25             THE COURT:  Have him?

E3h1lorc

1              MR. ARENSON:  Precluded from testifying at trial.

2              MS. LONGOBARDI:  And precluded from using the

3     documents.

4              THE COURT:  And precluded from?

5              MS. LONGOBARDI:  Using these documents against the

6     plaintiff.

7              THE COURT:  Why should he be precluded from using

8     documents he's produced?

9              MR. ARENSON:  Because he prevented us from questioning

10    about it.  He won't appear at a deposition.

11             THE COURT:  They're not subject to cross; the

12    documents, that is to say.

13             MR. ARENSON:  Yes, yes.

14             THE COURT:  This is a jury trial.

15             MR. ARENSON:  Yes, your Honor.

16             THE COURT:  That's basically their case for

17    preclusion.

18             MR. MAIONE:  I understand that.  They seem to be

19    making a case to continue his deposition, which is why I said

20    earlier on -- I know I was a little confusing, but that's why I

21    was hoping he was here today.  I thought perhaps you could kind

22    of read him the riot act and tell him if he doesn't have his

23    deposition taken on such-and-such a day, he's going to be

24    defaulted or precluded.  But I think they're making an argument

25    that they need to finish his deposition.

E3h1lorc

1           MR. ARENSON:  No.  We're saying, that's history.

2           MR. MAIONE:  Let me finish.  Okay.  I don't think

3     they're entitled to a default given the fact that he says

4     he's -- through his personal bankruptcy attorney that he's

5     prepared to have his deposition taken, and I don't think you

6     can preclude the use of those documents at trial.  He's

7     provided them already.  He's testified for three days about

8     many of them.  The two other defendants, Mr. Vargas and

9     Mr. Jimenez, will rely on those documents to a certain extent.

10    I don't know that they can be precluded from being introduced

11    into evidence.

12          THE COURT:  That they can be precluded.  I thought we

13    were not considering them for the moment.

14          MR. MAIONE:  No, I mean, the documents.  I don't think

15    those documents can be --

16          MR. ARENSON:  I want to be clear about one thing.

17    Those documents I'm talking about --

18          THE COURT:  Your dilemma is that you're arguing that

19    he should be given a chance to complete his deposition when you

20    can't produce him to complete his deposition.

21          MR. MAIONE:  Well, I don't know that that's the case,

22    your Honor, given --

23          THE COURT:  Sitting here today, it's pretty close to

24    the case, isn't it?

25          MR. MAIONE:  Yeah, yeah, it is pretty close.

E3h1lorc

| | |
|---|---|
| 1 | THE COURT:  You're hoping for better weather tomorrow. |
| 2 | MR. MAIONE:  And as you know, I would like to be out |
| 3 | of this case because I'm not getting paid, but I think he |
| 4 | deserves one last shot, if you will.  You know, his lawyer, |
| 5 | Mr. Ferro, represented that he's going to have his deposition |
| 6 | taken in 10 to 14 days and, you know, if he doesn't and I can, |
| 7 | you know -- I'm sure the court can fashion a remedy for the |
| 8 | plaintiff, but -- |
| 9 | THE COURT:  You are? |
| 10 | MR. MAIONE:  Yes, that they want, that they're happy |
| 11 | about.  I think he's -- as I said, I think he deserves one last |
| 12 | chance at having his deposition taken.  He has been deposed for |
| 13 | three full days, your Honor.  It's not that he's avoided this, |
| 14 | at least since I've been in the case, and Mr. Ferro's proffer |
| 15 | was that he was upset mentally, stressed out, and I had seen |
| 16 | that personally, I've seen that before, so, you know, I don't |
| 17 | think it's some kind of story coming from Mr. Vazquez.  I think |
| 18 | he was probably upset about a host of things, but if Mr. Ferro |
| 19 | says he's going to be available in 10 to 14 days -- |
| 20 | THE COURT:  What? |
| 21 | MR. MAIONE:  Mr. Ferro says that Mr. Vazquez will be |
| 22 | available for his deposition 10 to 14 days from the date of |
| 23 | that e-mail, so -- |
| 24 | THE COURT:  Well, that's not only hearsay, it's almost |
| 25 | incomprehensible.  How does Mr. Ferro know that it will take |

E3h1lorc

 1   him 10 to 14 days to be ready?

 2           MR. MAIONE:  He had a meeting with him.

 3           THE COURT:  And a meeting with Mr. Vazquez yields no

 4   useful, reliable information, as we all know.

 5           MR. MAIONE:  I understand that, your Honor.  And

 6   that's all I can go on because I haven't spoken to him.

 7           THE COURT:  How far do you think you can stretch out

 8   Mr. Maione without getting paid?

 9           MR. ARENSON:  I wish Mr. Vazquez would use the money,

10   which I believe is accessible to him, to pay Mr. Maione.  I

11   believe there is -- the businesses are operating and the

12   reports he's producing to the bankruptcy court show little, if

13   any, income, and I guess we have to live with those reports for

14   now, but there are four going concerns with hundreds of cars

15   coming in every day.

16           THE COURT:  Really?

17           MR. ARENSON:  Well, based upon what our clients have

18   told us is the history of these businesses, there's an average

19   of 500 cars a day when it's not busy.  But we don't -- we're

20   against the idea, obviously, of Mr. Vazquez not paying for

21   Mr. Maione's time, but it seems like that's a choice that

22   Mr. Vazquez is making.  And if he's choosing to not pay his

23   lawyer and in effect shut down his representation, that's his

24   choice, and I think the consequences flow from that choice.

25           MR. MAIONE:  Your Honor, may I respond to that?

E3h1lorc

1          THE COURT:  Yes.

2          MR. MAIONE:  He doesn't have any choice now.  It's got

3   to be approved by the bankruptcy court that he pay all the

4   administrative fees, include his attorney's fees.  Concededly,

5   he has told me, he's not going to be able to pay those fees,

6   which brings us back to that same point again.  I believe that

7   Judge Steckroth is going to be faced with the dilemma of what

8   do I do with these four debtors in possession other than

9   convert them because he's saying he's not going to pay what

10  I've already ordered he's got to pay.  So if the US trustee

11  doesn't convert him --

12         THE COURT:  What order?  There's an order --

13         MR. MAIONE:  There will be an order on the 14th that

14  he has to pay because once all these applications are in and as

15  I said earlier, they have -- everybody has 21 days to object to

16  somebody else's submissions.

17         THE COURT:  Well, who are these other people?  There's

18  only one claimant here, isn't there, these bunch of plaintiffs?

19         MR. MAIONE:  No, I'm talking about the attorneys, the

20  attorneys for the creditors committee, the attorneys for the

21  accountants, the accountants -- everybody has put in

22  applications for fees.  He's got to pay all those fees.  He

23  can't because he's bankrupt.  He's in a bankruptcy court.  He

24  can't until the period runs 21 days.  And at the confirmation

25  hearing Judge Steckroth says, okay, these are the fees you have

E3h1lorc

1  to pay.  At that point if he suggests or says, I can't or won't

2  pay these fees, I don't think there's any choice but that Judge

3  Steckroth has to *sua sponte* convert him or the US trustee is

4  going to say, we're going to have to convert them to a 7, all

5  of them.

6          THE COURT:  And then what happens?

7          MR. MAIONE:  And then they put in an examiner and the

8  examiner runs the business and pays ongoing expenses, including

9  what I would need to hire the expert and to hire the

10  translators, etc.  We wouldn't get paid immediately.  I would

11  like to get paid immediately, or within 30 days of my bills.

12  But if I get paid next year, I get paid next year.

13          THE COURT:  Why aren't you making an application to --

14          MR. MAIONE:  I did.  I have.  Mine's the biggest

15  application.

16          THE COURT:  To convert it?

17          MR. MAIONE:  Oh, to convert it?  No, I don't think

18  ethically I can do that.  I don't think I can move to convert

19  him so that I can get paid.  I don't think I can do that, your

20  Honor.

21          THE COURT:  But doesn't it become more in the

22  interests of the bankrupts to do that at some point?

23          MR. MAIONE:  I would think --

24          MS. LONGOBARDI:  I don't believe, your Honor, that

25  having voluntarily filed for Chapter 7 -- Chapter 11 the

E3h1lorc

debtors themselves can move to convert their own cases to a

Chapter 7 liquidation.  I believe procedurally right now where

the bankruptcy cases are is that they've been jointly

administered, and at the present time -- there are separate --

          THE COURT:  It's a debtor in possession.

          MS. LONGOBARDI:  They're all separate, they're all

debtors in possession.  They're being administered as a single

group of cases for administrative convenience.  At the present

time these are all interim fee applications that have been

submitted by the administrative professionals, which are

Mr. Maione; Mr. Ferro, bankruptcy counsel for Mr. Vazquez; the

DeCotas (ph) law firm as bankruptcy counsel for the four car

wash defendants; I believe Citrin Cooperman, who were the

accountants for the debtors, have submitted an interim fee

application; and Klestadt & Winters, who are the attorneys for

the creditors committee, have submitted interim fee

applications.  And all of those are supposed to be heard on the

14th.  Whether or not Judge Steckroth is going to --

          THE COURT:  Who are the creditors other than the

professional --

          MS. LONGOBARDI:  For plaintiffs?  Who are the only --

general unsecured creditors; the administrative professionals

are all the administrative creditors; the IRS, which is its own

creditor, has I think filed two relatively small claims, I

think along the lines of about a thousand dollars.  For the

E3h1lorc

1    IRS, that's relatively small.  But otherwise there are no

2    creditors, and there are certainly no other general unsecured

3    creditors other than my plaintiffs.  Nevertheless, the US

4    trustee recommended and the bankruptcy court did appoint an

5    official committee of unsecured -- general unsecured creditors.

6         THE COURT:  Which is simply the creditors --

7         MS. LONGOBARDI:  The creditors committee.

8         MR. ARENSON:  For the plaintiffs.

9         MS. LONGOBARDI:  Well, they're on the committee.  If

10   any other general unsecured creditors pop up, they would be in

11   the same situation as the plaintiffs.  But right now these are

12   all interim fee applications.  I don't know if Judge Steckroth

13   will *sua sponte* convert this to a Chapter 7, which at that

14   point will turn this into a liquidation.  The Chapter 7 trustee

15   would have to be appointed to take control -- they would no

16   longer be debtors in possession -- and proceed with a

17   liquidation of the assets.  How long that would take, it's not

18   going to happen overnight.  Nonetheless, all that should not be

19   impacting what happens in this case.  In fact, what Judge

20   Steckroth made very clear when he lifted the stay is that

21   whatever happens in the bankruptcies should not be affecting

22   this case.

23        THE COURT:  Well, that's right.  The merits of the one

24   should not affect the merits of the other.  The trouble is that

25   the flow of money to finance this case is tied up in the

1    bankruptcy proceeding, and that's a disreputable fact.

2            MS. LONGOBARDI:  It is, but even if a Chapter 7

3    liquidation were ordered *sua sponte* on the 14th, that still

4    wouldn't result in cash entering into anyone's pocket for a

5    while.

6            THE COURT:  Well, I think this case is becoming the

7    victim of incentives which have become reversed, or perhaps

8    taken a position where they ought to be reversed.  Up until now

9    Mr. Vazquez has had a motive to delay and defer and frustrate

10   the prosecution of this case.  That's basically only an

11   elaboration on individualized evidence of the incentive of

12   every defendant to delay the case, because in the meantime the

13   plaintiffs have the claim and he has the money.  And the courts

14   are well familiar with that incentive.  But here it's becoming

15   quite acute, and his behavior is entirely consistent with that

16   incentive.  Now don't misunderstand me.  I'm not saying it's

17   entirely due to that incentive.  I'm merely saying it's

18   consistent with it.  His behavior may have other causes,

19   legitimate or medical or whatever, but the net is still that

20   that behavior is consistent with that incentive and it makes me

21   wonder, and I'm really floundering and looking for your

22   assistance.

23           Supposing that incentive were reversed.  Anybody

24   familiar with default knows that what usually happens when

25   there's a default is that it is later set aside on the

E3h1lorc

1   application of the person against whom it was entered and a

2   showing that the circumstances have changed and that in the

3   interests of justice, the default should be vacated and

4   proceedings allowed to resume.  And thinking only of the

5   structure of what I'm hearing, that occurs to me as maybe a

6   step that would help clarify the situation.  Mr. Vazquez's

7   history so far in this litigation is only performance under the

8   threat of imminent imposition of something worse.  Perfectly

9   understandable, but it's not our duty to encourage it.  That's

10  what makes the concept of default look attractive here.

11          MR. MAIONE:  I understand that, your Honor, but as I

12  said earlier --

13          THE COURT:  Excuse me?

14          MR. MAIONE:  I said I understand that, but as I said

15  earlier, I do not know the reason why he didn't show up last

16  week.

17          THE COURT:  Exactly.  But you have to objectively

18  recognize that he has an incentive not to show up and he's

19  expressed deep reluctance to testify, and then you say, when we

20  talk to him, we point out the foolishness of that and the need

21  to cooperate and then he says he'll cooperate and vanishes.  To

22  my mind that is a behavior consistent with what I've been

23  describing.  It would immediately raise the question of the

24  extent of any default because there's the other two defendants.

25  They have a right to a trial, they have a right to fair

E3h1lorc

1   treatment, and we'd have to see what they said.  And to close

2   the circle, that comes back to translations, money, time,

3   money.

4            MR. MAIONE:  Right.

5            THE COURT:  So it's not a perfect world.  But it's the

6   world we're laboring in.  It's not something to be done

7   lightly.

8            Are you going to be able to get from the remaining two

9   defendants anything worth getting, in light of what evidence

10  you have and what arguments you think can be made and the

11  degree of their implication in the case?  It is a premature

12  question, probably.

13           MS. LONGOBARDI:  I think that's a little premature.

14           THE COURT:  You've probably deferred thinking about

15  it.

16           MR. ARENSON:  We don't know what they're going to say

17  and I would be reluctant to go to trial with having these

18  on-site managers who Mr. Vazquez has said have primary

19  responsibility for managing these employees not knowing what

20  they're going to say, and I believe --

21           THE COURT:  I thought I saw in one of the letters that

22  the depositions of the plaintiffs had been completed.

23           MR. ARENSON:  Yes, but I'm saying these two

24  defendants, these other defendants --

25           THE COURT:  Oh, I see.  All the plaintiffs have

E3h1lorc

```
 1   been --
 2             MR. ARENSON:  Yes.
 3             THE COURT:  These two defendants have never been
 4   examined.
 5             MR. ARENSON:  No.
 6             THE COURT:  Why not?
 7             MR. ARENSON:  Because they haven't been able to --
 8   they haven't paid for their own translators as defendants and
 9   Mr. Maione has told us he can't communicate with them.  He
10   can't prepare them for deposition.
11             THE COURT:  Because of the language problem.
12             MR. ARENSON:  Right.
13             THE COURT:  That's what he's told you, anyway.
14             MR. ARENSON:  Right.  And they're employed by these
15   car washes.  They receive salaries.  They're defendants.  I
16   don't see why they can't pay for their own translators, if they
17   want to.  I mean, if they believe -- if they want -- if they
18   don't want to appear and be deposed, then that's, again, a
19   choice they're making.
20             THE COURT:  Have they been served with notices?
21             MR. ARENSON:  Absolutely.
22             THE COURT:  Probably years ago.
23             MR. ARENSON:  Yes.
24             THE COURT:  You could put in a case against them?
25   It's a question.  Can you put in a case against them?
```

E3h1lorc

1          MS. LONGOBARDI:  I could put in a case against them,

2     again, based on my own plaintiffs' testimony.

3          THE COURT:  What's their position in the

4     establishment?

5          MS. LONGOBARDI:  Well, according to plaintiff --

6          THE COURT:  Why are they defendants?  Who are they?

7          MS. LONGOBARDI:  They are -- according to the

8     plaintiffs, they were the managers of two of the four --

9          THE COURT:  Oh, I see.

10          MS. LONGOBARDI:  -- car washes.  According to

11     Mr. Vazquez, they each --

12          THE COURT:  Two separate corporations.

13          MS. LONGOBARDI:  Yes.  According to Mr. Vazquez, each

14     one of the two managed two car washes.  So --

15          THE COURT:  Between them they manage all four.

16          And what deters you from taking their depositions is

17     the expense of the reporter at the deposition.

18          MS. LONGOBARDI:  It's not a deterrent to me.  The

19     deterrence is Mr. Maione's ability to produce them --

20          MR. ARENSON:  To communicate with them with

21     translators that have to be paid, and Mr. Maione's position is

22     that he doesn't want to advance money for these translators and

23     that these two managers speak only Spanish.  What I was saying

24     is that they're receiving salaries from these ongoing

25     businesses, they're named defendants, they've been served, they

E3h1lorc

 1   can pay for their own translators.

 2          THE COURT:  Well, the law doesn't require that they be

 3   prepared.  The law requires that they appear for the

 4   deposition.

 5          MR. ARENSON:  And at the deposition we would pay for

 6   the translator.

 7          THE COURT:  Okay.

 8          MS. LONGOBARDI:  It's not a holdup on our part.  It's

 9   more of a, when will they be produced.

10          THE COURT:  Well, luckily we have Mr. Maione here.

11          MR. MAIONE:  Your Honor, I'm not disagreeing with your

12   Honor's statement about --

13          THE COURT:  And I say again on behalf of all of us, I

14   think you've behaved very well in one of the most difficult

15   kinds of situations a lawyer can be placed in.

16          MR. MAIONE:  I appreciate that.

17          THE COURT:  And I recognize you're not supposed to be

18   competing with your banking clients.

19          MR. MAIONE:  Right.  You know, your Honor, when

20   Mr. Vazquez first filed for bankruptcy protection back in

21   October, I wrote a letter to the court in which one of the

22   things I was concerned about was my representation of these two

23   fellows.  I came into this case, as you know, after the fact --

24          THE COURT:  Well, it's Mr. Ferro who's representing

25   them, isn't it?

E3h1lorc

<table>
<tr><td>1</td><td>MR. MAIONE:  No.  Mr. Ferro is just representing</td></tr>
</table>

1          MR. MAIONE:  No.  Mr. Ferro is just representing

2     Mr. Vazquez.  These two fellows are not in the bankruptcy

3     court.  And they're employees.  They're managers, at least, of

4     two of the car washes.  I think they're entitled to the best

5     defense that they can be given, and that means I've got to --

6          THE COURT:  In the abstract, of course they have.

7          MR. MAIONE:  Yeah, and I've got to sit down and talk

8     to these guys.  I'll tell you, your Honor, I've met them two

9     times previously.  I'd be surprised if they understand a word

10    of English.  So the only way I can prepare them and to properly

11    defend them is if I have a translator to intervene because I

12    can't --

13         THE COURT:  But these plaintiffs are not entitled to

14    the benefit of your preparation of your witness.  The basic

15    concept of the law is that the preparation of the witness is

16    for the benefit of the witness, and if he forgoes that, his

17    duty is to appear for the examination and answer the questions

18    truthfully when they're put to him.

19         MR. MAIONE:  I understand that, your Honor, but

20    haven't really even had the opportunity to have a discussion

21    with them like this.

22         THE COURT:  Well, you'd better make one, haven't you?

23         MR. MAIONE:  Well, if you're telling me that, yes, I'm

24    going to do that.  But as I said, I haven't --

25         THE COURT:  No.  I'm telling you, I don't care whether

E3h1lorc

1   you do it or not.  That's between them and you.  I'm telling

2   you that the rules of the court are, when noticed duly, they

3   should appear for examination, and there will be an interpreter

4   there, and you will be there to assist them, see that the

5   questioning is proper.  Many, many a witness appears in court

6   without the benefit of prior presentation or legal

7   representation, even if they're a defendant in the case.  In

8   pro se litigation it happens all the time.

9           MR. MAIONE:  I understand that, your Honor, but --

10          THE COURT:  We're getting down to the facts of life

11  here.

12          MR. MAIONE:  Not to use the word loosely, but by

13  default or otherwise, these guys are my clients and I'm

14  defending them, and I don't feel that I can properly defend

15  them unless I know what their, quote-unquote, story is.  I have

16  never had a conversation with them outside of Mr. Vazquez's

17  company in which --

18          THE COURT:  But that's for lack of a translator.

19          MR. MAIONE:  Yes.

20          THE COURT:  This is what drives us back to the time to

21  free up money that all of you seem to think is going to be

22  sufficient in the bankruptcy court.

23          MR. ARENSON:  But your Honor, respectfully, I don't

24  think that the expense of translators should be an issue with

25  these two defendants.  They're employed.  They could hire their

E3h1lorc

1    own translators.  They can even produce a friend, a child,

2    someone they know to be -- certainly for preparation.  We're

3    going to pay for the translator at deposition.  But for

4    purposes of Mr. Maione meeting with them, I mean, it's not very

5    difficult to get someone who can speak both Spanish and

6    English.  Even a relative, etc.  I don't think that that cost,

7    whether it's $3,000 or something like that, should now be a

8    sticking point in terms of going forward with their deposition.

9    And the choice should be put to them.  They're named

10   defendants.

11        THE COURT:  Well, I think all of those things should

12   be entirely left to them and Mr. Maione, and I think we've

13   reached a point where you have the right to take their

14   deposition unless there's some legal grounds for objection.

15   Then we'll know.

16        Well, you wanted a conference with me, and I think

17   I've exhausted my thinking on this for the moment and that I

18   can tell you, frankly, it's thinking that emerged during this

19   conversation, not in advance of it, so it's simply a reaction

20   to what I'm hearing, and I think I should leave it at that.  I

21   suspect that it, except for the last page of Ms. Longobardi's

22   letter, represents a somewhat new way of thinking about the

23   case, and I should leave it to you jointly and separately to

24   consider and maybe come back with your best joint suggestions

25   about how to handle the case, or handle the difficulties that

E3h1lorc

1    we're all facing in the case.  I don't want to impose any order

2    today.  All of this is too fresh.  But it's my current thinking

3    about the deeper realities in this situation that I think you

4    ought to be guided by, starting with the reversal of

5    Mr. Vazquez's incentives and proceeding through the duty of the

6    defendants to give depositions when duly called for.

7            And I think maybe there's one other thing that's fair

8    to say.  In view, Ms. Longobardi, of the unusually high factor

9    of importance of expense and time actually getting in the way

10   of the feasibility of things getting done in this case, which

11   we all I think would recognize are extreme, maybe your normal

12   procedure of tiny questions, bite by bite, sealing every hole,

13   which do seem to consume a lot of time and therefore the

14   reporter's time, translator's time, all of those consequences,

15   should be accelerated and made more conclusory, particularly

16   when you're going to be dealing with witnesses with a real

17   language problem.

18           MS. LONGOBARDI:  I understand that.

19           THE COURT:  It's just an accommodation.  Your usual

20   procedure is effective and deadly and perfectly proper.  I'm

21   not criticizing it.  But it is also tedious and maybe

22   unnecessarily minute.

23           MS. LONGOBARDI:  The only thing I will say, your

24   Honor, is that the translator time and the court reporter time

25   is my expense.

E3h1lorc

1              THE COURT:  Lawyer's time.

2              MS. LONGOBARDI:  Well, most of it would be at the

3    plaintiff's expense at that point.  It's the plaintiff's

4    deposition.  But -- I'll certainly be guided by your comments.

5              THE COURT:  I think you can do it without running an

6    excessive risk of there being a hole in the record if you go to

7    more conclusory statements.  The witness is just as bad at

8    bottom.  If I may say so, I think your process is abnormally

9    meticulous in the general rule of federal litigation and yet

10   there seem to be acceptable results in most of the other cases.

11   Okay.  With a good deal of humility, I make that suggestion,

12   particularly where you may be dealing with a person of limited

13   intellectual resources and energy resources.  And a jury.  Some

14   day you're going to have to drag the jury through these

15   questions.  I think then you'll want to summarize them.

16              So, okay.  Enough on that.

17              MR. ARENSON:  One other point.  We have an

18   April 25th deadline to have our plaintiffs' pretrial

19   submissions to the defendant and then everything comes back to

20   your Honor by May 21, with a pretrial conference May 23rd.

21   The internal idea was to complete all depositions by the 28th

22   of this month.

23              THE COURT:  Good luck.  I think you should keep that.

24              MR. ARENSON:  Yes.

25              THE COURT:  I think this needs attention, and the kind

E3h1lorc

1    of remedies I've been talking about are heroic.  You don't do

2    this in normal civil litigation.  It's not necessary.

3           MS. LONGOBARDI:  There's been nothing normal about

4    this case.

5           THE COURT:  Excuse me?

6           MS. LONGOBARDI:  There's been nothing normal about

7    this case.

8           MR. ARENSON:  But I was trying to think along those

9    lines.  In a normal simple case, where goods are sold and

10   delivered and payment is not made by a defendant and a

11   defendant just decides, I'm not going to show up --

12          THE COURT:  I'm going to ignore it.

13          MR. ARENSON:  -- I'm going to ignore it and I'm not

14   going to pay the lawyer, what are the consequences?

15          THE COURT:  Well, you attach.  When you get your

16   judgment by default, you attach.

17          MR. ARENSON:  Right.  And I think that that example,

18   that analogy I think does provide some guidance here.

19          THE COURT:  It provides some guidance, but reasoning

20   or acting by analogy is one of the most dangerous things that

21   can be done in litigation, because the analogies are close

22   enough to be seductive, but the errors and differences in them

23   are, while concealed, very dangerous.  The best thing is, deal

24   with this case as this case, and in this case, you have a man

25   who has a marked pattern of, in effect, default and

E3h1lorc

1  reappearance, default and reappearance.  And so that is what

2  drives me to the bold suspicion that the best way of getting

3  the case towards trial is to say default and application for

4  vacation of default because now I am getting hurt by my

5  defaults and I want to stop them.  That's really all that I'm

6  adding is that concept, and I have it only as a concept because

7  we're all trying to do the best we can.  But I suspect that

8  it's the kind of realism that it's the lawyer's duty to convey

9  to his client.

10           MR. MAIONE:  Yes, your Honor.

11           MS. LONGOBARDI:  You indicated that we should, among

12  counsel, have a discussion as to how we're going to proceed,

13  and I'm sure we're going to go and do that as soon as possible.

14  If we come up with a set plan, should we then be submitting

15  that to your Honor to be so ordered?

16           THE COURT:  How can I tell you that?  That's something

17  for the lawyers to decide.

18           MS. LONGOBARDI:  No.  Given everything that we've just

19  been discussing.

20           THE COURT:  Yes, of course.

21           MS. LONGOBARDI:  All right.

22           THE COURT:  If one, then the other, yes.

23           MS. LONGOBARDI:  All right.

24           THE COURT:  Of course.  That's what I'm here for.

25           MS. LONGOBARDI:  Okay.

36

E3h1lorc

1          MR. ARENSON:  Your Honor, I have to ask:  And if

2     there's a breakdown, we had made a request to make a motion.

3     We put in our letter request to make a motion.

4          THE COURT:  I haven't ruled on it.  I have the papers

5     here.

6          MS. LONGOBARDI:  I've been asking for permission to

7     make the motion.  I hadn't actually intended for you to

8     consider the letter as a motion, even though the motion would

9     be an elaboration of what's in the letter.

10         THE COURT:  I think we've taken enough bold steps

11    forward for this afternoon.  As a friend of mine said:  If this

12    table had wings, could we fly it?

13         I'll be here.

14         MR. MAIONE:  Thank you, your Honor.

15         MS. LONGOBARDI:  Thank you, your Honor.

16         MR. ARENSON:  Thank you, your Honor.

17                           o0o

18

19

20

21

22

23

24

25