**ORIGINAL**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  11/18/15
```

---

**RONARD LORA, HUGO RIVERA, MARCO
ANTONIO DIAZ, MELVIN LORA, EDUARDO
LORA, GIOVANNI PAULINO, JOSE
RODRIGUEZ, and JOSE RODOLFO
RODRIGUEZ-TINEO, individually and on
behalf of others similarly situated,**

                          Plaintiffs,

         - against -

**J.V. CAR WASH, LTD., BROADWAY HAND
CARWASH CORP., WEBSTER HAND CAR WASH
CORP., HARLEM HAND CAR WASH CORP.,
BAYWAY HAND CAR WASH CORP., JOSE
VAZQUEZ, SATURNINO VARGAS, JOSE
JIMENEZ, RAMON PEREZ, DOMINGO "DOE,"
ADOLFO FEDERUS, originally sued as
ADOLFO "DOE," and JOHN DOES 1-10,**

                          Defendants.

---

11 Civ. 9010 (LLS)(AJP)

**OPINION & ORDER**

     Following settlement of this wage-and-hour case, plaintiffs
moved for an award of attorney's fees and costs under the Fair
Labor Standards Act, 29 U.S.C. § 201 et seq., and New York Labor
Law. The motion was referred to the Honorable Andrew J. Peck,
United States Magistrate Judge, for his consideration, report,
and recommendation.

     For the reasons set forth below, the court adopts Judge
Peck's report and recommendation and grants the motion against
defendants J.V. Car Wash, Ltd., Broadway Hand Carwash Corp.,
Webster Hand Car Wash Corp., Harlem Hand Car Wash Corp., Bayway
Hand Car Wash Corp. and Jose Vazquez, jointly and severally, to

the extent of $1,214,431.86 in attorney's fees and $112,050.36 in costs.[1] Plaintiffs' unopposed supplemental application for $24,445.83 in attorney's fees incurred in responding to defendants' objections to the report and recommendation is also granted, for a total award of attorney's fees and costs of $1,350,928.05.

### BACKGROUND

Judge Peck ably summarized the history of this case:

> On December 9, 2011, plaintiffs filed their initial FLSA complaint as a collective action on behalf of Ronard Lora and Hugo Rivera, and others similarly situated. (Dkt. No. 1: Compl.) In July 2012, they amended their complaint to add additional named plaintiffs. (Dkt. No. 49: Am. Compl.) The amended complaint also added retaliation claims alleging that defendants reduced some plaintiffs' hours, reduced the number of days of work per week for some, and terminated some plaintiffs. (See Am. Compl. ¶¶ 372-79.)
>
> As the Court is aware, and as detailed in a lengthy affidavit submitted by plaintiffs' counsel Laura Longobardi (Dkt. No. 151), numerous delays in the progress of the lawsuit ensued, including inter alia, multiple changes in defense counsel; allegations that plaintiffs were "criminal 'delinquents'" who had compelled defendant Jose Vazquez, the owner of the defendant car washes, to allow them to conduct their own business on his premises using his equipment and material; repeated failures by the defendants to respond promptly or completely to discovery demands; and allegations by defendants that plaintiffs engaged in criminal witness tampering. (See Dkt. No. 151: Longobardi Aff. ¶¶ 7-9, 31-70.) Defendants' firing of and replacement of defense counsel on

---

[1] While not addressed by the parties or Judge Peck, only those defendants were parties to the settlement. Accordingly, plaintiffs have only prevailed against, and can only recover their attorney's fees and costs from, those defendants. Although not parties to the agreement, the other individual defendants--Saturnino Vargas, Jose Jimenes, Ramon Perez, Domingo "Doe," Adolfo Federus, and John Does 1-10--were released by plaintiffs pursuant to the settlement agreement. See Nov. 16, 2015 Letter from Steven Arenson, Dkt. No. 173.

the eve of depositions added to the delays and costs.
(Longobardi Aff. ¶¶ 74-88.) So too did defendants' meritless
motion to dismiss (Dkt. No. 74), which Judge Stanton denied on
September 27, 2013. (See Dkt. No. 89: 9/27/13 Order Denying
Motion to Dismiss.) As plaintiffs' counsel correctly notes,
"the normal difficulties and expenses involved in prosecuting
a multi-plaintiff case were multiplied considerably by the
tactics of Defendant Jose Vazquez . . . [whose] tactics--all
of which were designed to delay, distract and derail this
litigation--imposed a significant burden on this firm and on
the Plaintiffs." (Dkt. No. 143: Arenson Aff. ¶ 12; see also
Dkt. No. 159: Longobardi Reply Aff. ¶ 2: "Given that this case
involved eighteen Plaintiffs, all with individual work
histories (including seven Plaintiffs with retaliation
claims), at four separate car washes, and seven named
defendants, this case was complex. Defendants' conduct,
however, took this case to another level that generated
significantly more work . . . . Defendants engaged in every
conceivable contorted tactic to avoid addressing the merits of
Plaintiffs' claims . . . . Plaintiffs were forced to respond
to Defendants' bad faith and delaying tactics. As a result,
Defendants cannot be heard to complain about the time
[plaintiffs' counsel] spent on that response.")

On October 16, 2013, defendants (Vazquez and the car wash
entities) filed bankruptcy petitions in the District of New
Jersey, which stayed this lawsuit. (Longobardi Aff. ¶¶ 110-11;
Mellk Aff. ¶ 6.) The bankruptcy filings occurred half an hour
before plaintiffs were scheduled to depose defendant Vazquez.
(Longobardi Aff. ¶ 111.) On November 4, 2013, plaintiffs'
counsel moved to lift the bankruptcy stay. (Longobardi Aff.
¶ 120; Mellk Aff. ¶ 7.) On November 26, 2013, the bankruptcy
court granted plaintiffs' motion and lifted the stay.
(Longobardi Aff. ¶ 122; Mellk Aff. ¶ 7.)

Plaintiffs' counsel describe a series of extraordinary
discovery issues that followed the lifting of the bankruptcy
stay. (See Longobardi Aff. ¶¶ 124-80.) These included, inter
alia, Vazquez's refusal to testify at a deposition in January
2014 (Longobardi Aff. ¶¶ 138-41), his failure to appear at a
deposition in March 2014 (Longobardi Aff. ¶¶ 143-44), further
failures to appear at deposition by defendants' on-site
managers in March and April 2014 (Longobardi Aff. ¶¶ 162-68),
and unsuccessful attempts to depose Vazquez's assistant
Milagros De Jesus (Longobardi Aff. ¶¶ 170-74). These also
included efforts to depose as non-party witnesses the New
Jersey-based manufacturer of detergent products used by
defendants, in response to defendants' claim that the FLSA did
not apply because they used only local products. (Longobardi
Aff. ¶¶ 177-80.)

On March 20, 2014, defense counsel informed the Court

that defendant Vazquez was suffering from a mental condition that made Vazquez "difficult to stabilize," and sought a six month adjournment of this case. (Dkt. No. 95: 3/20/14 Memo Endorsed Letter; Longobardi Aff. ¶ 148.) At a conference on April 3, 2014, plaintiffs requested an independent medical examination ("IME") of Vazquez, which the Court ordered on defendants' consent. (Longobardi Aff. ¶ 150; see Dkt. No. 102: 4/3/14 Hearing Tr.) Plaintiffs retained psychiatrist Stuart B. Kleinman. (Longobardi Aff. ¶ 151.) Dr. Kleinman examined Vazquez for six and half hours over three days--May 28, May 29, and June 5, 2014. (Longobardi Aff. ¶ 156.) Dr. Kleinman also reviewed approximately 1,200 pages of Vazquez's medical records, as well as a "detailed, 23-page memorandum concerning the standard for the legal determination of mental competency in civil actions in the Second Circuit" prepared by Longobardi, "background information concerning the FLSA Action and the bankruptcy proceedings, and all statements and testimony by Mr. Vazquez." (Longobardi Aff. ¶¶ 152-53, 157.) On June 26, 2014, Dr. Kleinman issued a written report finding Vazquez "competent to proceed in this FLSA action." (Longobardi Aff. ¶¶ 158-59.)

Following the lifting of the bankruptcy stay, plaintiffs' counsel remained extensively involved in defendants' bankruptcy proceedings by:

> (a) participating in the formation of a committee of unsecured creditors of the Defendants and participating in the meeting of the creditors of the Car Wash Defendants pursuant to Section 341(a) of the Bankruptcy Code on December 11, 2013; (b) filing a motion to extend the deadlines to file a proof of claim or to file a complaint to determine dischargeability of certain debts; (c) participating in the meeting of creditors of Mr. Vazquez pursuant to Section 341(a) of the Bankruptcy Code on February 12, 2014; and (d) participating in the filing of a motion to appoint Chapter 11 Trustees for the Defendants.

(Longobardi Aff. ¶ 182; see also id. ¶¶ 183-210.) According to plaintiffs, they "were the Defendants' only creditors (other than state and federal taxing authorities), [they] had a real interest in continuing to participate in the bankruptcy proceedings, so that [they] would be aware of any conduct, testimony or documents that could potentially impact either the prosecution of the FLSA Action, or the future recovery of any judgments against the Defendants in the Bankruptcy Court." (Longobardi Aff. ¶ 181.) Defendants, however, argue that plaintiffs' involvement in the bankruptcy proceedings after the lifting of the automatic stay was unnecessary. (J.V. Car Wash Fee Br. at 17-19.)

In July 2014, Wendy Mellk was retained by defendants'

Bankruptcy Trustees as special litigation counsel. (Mellk Aff.
¶ 9.) Shortly thereafter, settlement discussions began. (Dkt.
No. 149: Arenson Aff. ¶¶ 24-31; Mellk Aff. ¶¶ 10-13.) On or
about November 14, 2014, plaintiffs' counsel submitted
plaintiffs' half of the Pretrial Order to defense counsel.
(Longobardi Aff. ¶ 223; Arenson Aff. ¶ 31.) On November 19,
2014, defendants served all eighteen plaintiffs individual
offers of judgment totaling approximately $1.2 million.
(Longobardi Aff. ¶ 223; Arenson Aff. ¶ 32; Mellk Aff. ¶ 14.)
On December 3, 2014, plaintiffs sent eighteen individual
written responses to the offers of judgment; two plaintiffs
accepted and sixteen rejected the offers. (Arenson Aff. ¶ 33;
Mellk Aff. ¶ 15.)

On December 23, 2014, with my assistance, the parties
agreed to settle plaintiffs' claims for $1,650,000. (Dkt. No.
129: 12/23/14 Settlement Conf. Tr.; Longobardi Aff. ¶ 225;
Arenson Aff. ¶ 37; Mellk Aff. ¶ 16.) The parties agreed to
negotiate plaintiffs' attorneys' fees at a later date or, if
no agreement could be reached, that the Court would decide the
amount of fees. (See Settlement Conf. Tr.; Mellk Aff. ¶ 17;
Arenson Aff. ¶ 37.)

R&R at 2-6, Dkt. No. 166 (alterations in R&R) (footnotes
omitted).

As the parties were unable to reach an agreement,
plaintiffs moved for an award of $1,404,456.23 in attorney's
fees and $113,594.85 in costs. That included a voluntary eight-
percent reduction from what plaintiffs' counsel alleged to be
their actual fees. Plaintiffs reserved the right to file a
supplemental application for the expenses incurred in making the
fee application. See Weyant v. Okst, 198 F.3d 311, 316 (2d Cir.
1999) ("Further, a reasonable fee should be awarded for time
reasonably spent in preparing and defending an application for
§ 1988 fees. As a general matter, such 'motion costs should be
granted whenever underlying costs are allowed.'") (citations

omitted) (quoting Valley Disposal, Inc. v. Cent. Vt. Solid Waste
Mgmt. Dist., 71 F. 3d 1053, 1060 (2d Cir. 1995)).

In response to defendants' opposition, plaintiffs conceded
that certain attorney hours should have been billed at a
paralegal rate, that certain time billed at a paralegal rate was
in fact non-billable clerical time, and that the time spent
computing plaintiffs' damages should be reduced by 95 hours. In
all, plaintiffs reduced their requested fees by $55,087.50 and
their requested costs by $1,544.49.

I referred the motion to Judge Peck for a report and
recommendation. Judge Peck held that plaintiffs are the
prevailing parties and, as such, are entitled to an award of
reasonable attorney's fees and costs under the Fair Labor
Standards Act, 29 U.S.C. § 216(b), and New York Labor Law
§ 663(1). He also found that plaintiffs' counsel's $500 per hour
rate was generally reasonable; however, "some of Longobardi's
entries beyond what plaintiffs concede reflect work that should
have been billed at a lower associate or paralegal rate," and
"some of plaintiffs' billing entries involve excessive time
given the task at hand." R&R at 18, 28. As a result, Judge Peck
recommended reducing plaintiffs' fees by an additional ten
percent, which results in a fee award of $1,214,431.86.[2]

_____

[2] This figure differs by $16.20 from the amount recommended by Judge Peck due
(continued on next page)

-6-

Judge Peck recommended granting plaintiffs' application for costs, as amended, in full for an additional $112,050.36.

## DISCUSSION

"A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." Sacks v. Gandhi Eng'g, Inc., 999 F. Supp. 2d 629, 632 (S.D.N.Y. 2014) (quoting IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008)).

Defendants object to the portions of Judge Peck's report and recommendation that found plaintiffs' counsel's billing rate of $500 per hour to be reasonable and that allowed plaintiffs to recover for work performed in the bankruptcy case after the automatic stay was lifted.

### Plaintiffs' Counsel's Hourly Rate

Defendants argue that Judge Peck "ignored an abundance of recent Southern District of New York wage-and-hour cases

---

to a minor transcription error in the report and recommendation. Compare Longobardi Reply Decl. ¶ 41, Dkt. No. 159 (stating plaintiffs' amended attorney's fees request as $1,349,368.73), with R&R at 1 (stating the amount as $1,349,386.73).

disapproving of an hourly rate of $500." Defs.'s Objs. to R&R at 1, Dkt. No. 167. "But a reasonable hourly rate is not itself a matter of binding precedent. Rather, under established caselaw, a reasonable hourly rate is the 'prevailing market rate,' i.e., the rate 'prevailing in the relevant community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Farbotko v. Clinton Cnty., 433 F.3d 204, 208 (2d Cir. 2005) (brackets omitted) (quoting Blum v. Stenson, 465 U.S. 886, 896 & n.11, 104 S. Ct. 1541, 1547 & n.11 (1984)). The cases cited by defendants disapproving of a $500 per hour rate are different because they involve less experienced attorneys or less complicated litigation.[3]

---

[3] See Watkins v. Smith, No. 12 Civ. 4653 (DLC), 2015 WL 476867, at *1, *4 (S.D.N.Y. Feb. 5, 2015) (attorney had 10 years' experience and presented no evidence of an actual "charged" rate; issues were neither novel nor complex); Easterly v. Tri-Star Transp. Corp., No. 11 Civ. 6365 (VB), 2015 WL 337565, at *1-2, *10 (S.D.N.Y. Jan. 23, 2015) (default judgment in "straightforward," single-plaintiff wage-and-hour case); Tackie v. Keff Enters. LLC, No. 14 Civ. 2074 (JPO), 2014 WL 4626229, at *1, *7 (S.D.N.Y. Sept. 16, 2014) (10 years' experience; default judgment in single-plaintiff case); Trinidad v. Pret A Manger (USA) Ltd., No. 12 Civ. 6094 (PAE), 2014 WL 4670870 (S.D.N.Y. Sept. 14, 2014) (16 years' experience); Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp., No. 13 Civ. 3061 (JGK), 2014 WL 2624759, at *6 (S.D.N.Y. June 10, 2014) (default judgment in a "not complicated" single-plaintiff case, where "the issues of liability were not complex"); Aguilera v. Cookie Panache ex rel. Between the Bread, Ltd., No. 13 Civ. 6071 (KBF), 2014 WL 2115143, *1 (S.D.N.Y. May 20, 2014) (16 years' experience; two-plaintiff FLSA case that settled seven months after filing); Liang Huo v. Go Sushi Go 9th Ave., 13 Civ. 6573 (KBF), 2014 WL 1413532, at *7-8 (S.D.N.Y. Apr. 10, 2014) (10 years' experience; default judgment in single-plaintiff case, where the complaint and other documents were "quite pro forma," and "the Court highly doubts whether plaintiff's counsel spent anytime legitimately researching the law"); Juarez v. Precision Apparel, Inc., 12 Civ. 2349 (ARR)(VMS), 2013 WL 5210142, at *13-14 (E.D.N.Y. Sept. 13, 2013) (11 years' experience; case "with minimal

(continued on next page)

Plaintiffs' attorneys Steven Arenson and Laura Longobardi are seasoned litigators, each having 28 years' experience. They have submitted affidavits and retainer agreements showing that $500 per hour is the rate they actually charge their clients in employment matters when not working on a contingency-fee basis. See Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 544 (S.D.N.Y. 2008) (The actual rate charged by counsel to paying clients "is obviously strong evidence of what the market will bear."). Plaintiffs' have also submitted affidavits from five experienced

---

complexity that did not require exceptional expertise or experience"); K.L. v. Warwick Valley Cent. Sch. Dist., No. 12 Civ. 631 (DLC), 2013 WL 4766339, at *8 (S.D.N.Y. Sept. 5, 2013), aff'd, 584 F. App'x 17 (2d Cir. 2014) (single-plaintiff case that "involved an early settlement, and presented an utterly straightforward IDEA grievance"); Agudelo v. E&D LLC, No. 12 Civ. 960 (HB), 2013 WL 1401887, at *1-2 (S.D.N.Y. Apr. 4, 2013) (15 years' experience; three-plaintiff, "relatively straightforward FLSA-NYLL case," in which the plaintiffs and the attorney's fees were paid out of $30,000 settlement fund); Greathouse v. JHS Sec., Inc., No. 11 Civ. 7854 (PAE)(GWG), 2012 WL 3871523, at *11 (S.D.N.Y. Sept. 7, 2012), R&R adopted as modified, 2012 WL 5185591 (S.D.N.Y. Oct. 19, 2012), vacated and remanded, 784 F.3d 105 (2d Cir. 2015) (nine years' experience; default judgment in single-plaintiff case, where the Court noted that "this case was not unusually complex; that it did not demand great resources; that it involved no contested litigation"); Garcia v. Giorgio's Brick Oven & Wine Bar, No. 11 Civ. 4689 (LLS)(FM), 2012 WL 3339220, at *7 (S.D.N.Y. Aug. 15, 2012), R&R adopted, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012) (13 years' experience, and attorney did "not indicate that [$400 per hour] is the rate at which other clients customarily compensate him"; default judgment that "proceeded from filing to judgment with only one uncontested order to show cause proceeding in the interim"); Carrasco v. W. Vill. Ritz Corp., No. 11 Civ. 7843 (DLC)(AJP), 2012 WL 2814112, at *7 (S.D.N.Y. July 11, 2012), R&R adopted, 2012 WL 3822238 (S.D.N.Y. Sept. 4, 2012) (default judgment in two-plaintiff case and the motion papers were "largely 'boiler plate' used by plaintiffs' counsel in other cases"); Gurung v. Malhotra, 851 F. Supp. 2d 583, 586 (S.D.N.Y. 2012) (default judgment in single-plaintiff case); Wong v. Hunda Glass Corp., No. 09 Civ. 4402 (RLE), 2010 WL 3452417, at *3-4 (S.D.N.Y. Sept. 1, 2010) (12 years' experience and "no evidence of actual rates charged to clients or awarded by a court"; "uncomplicated, one-plaintiff FLSA case"); Shannon v. Fireman's Fund Ins. Co., 156 F. Supp. 2d 279, 285 (S.D.N.Y. 2001) (single-plaintiff case).

employment litigators (including a former federal judge) each of
whom attest that $500 per hour is a reasonable rate for
attorneys of Mr. Arenson and Ms. Longobardi experience in multi-
plaintiff employment litigation like this case. See R&R at 14
(collecting cases in which courts considered affidavits from
experienced attorneys in determining the reasonableness of
requested hourly rates).

Defendants also contend that plaintiffs' counsel's hourly
rate should be set at the low end of what wage-and-hour
practitioners command in this district because "this litigation
has been a fairly straightforward wage-and-hour matter." Opp'n
to Pls.' Appl. for Att'ys' Fees at 2-3, Dkt. No. 156; see also
Defs.' Objs. to R&R at 5 n.3 ("Defendants reiterate that the
FLSA litigation here concerned a 'straightforward' application
of existing law . . . ."). With all due respect to defendants'
current attorneys (special litigation counsel to the defendants'
chapter 11 bankruptcy trustees, who came late to this
litigation), in the years from its filing in 2011 until their
arrival this has been neither a normal nor a straightforward
case.

With eighteen individual plaintiffs, each with their own
employment histories, who worked at four different car washes
and eleven defendants, this was a complex case. In addition, in
their efforts to derail this litigation, defendants made a

-10-

variety of outlandish claims, forcing plaintiffs' counsel to grapple with factual and legal issues unusual in typical, straightforward wage-and-hour cases.

For example, defendants claimed that plaintiffs were not employees, but "criminal delinquents" who had taken over defendants' car washes and were running them on their own account. Mr. Vazquez fired one attorney on the eve of his deposition and later filed a bankruptcy petition half an hour before he was to sit for a rescheduled deposition. Defendants moved to dismiss the case on the grounds that the FLSA did not apply because they were not "engaged in commerce" because they did not use any products from outside of New York State (an assertion that was flatly contradicted by Mr. Vazquez's own testimony in the bankruptcy case). Defendants wrote to the U.S. Attorney for the Southern District of New York accusing plaintiffs of threats of violence to witnesses, requiring responses by plaintiffs' counsel.

In a typical wage-and-hour case, the standard for determining a party's mental competency is not at issue, because "[i]n the 'typical' FLSA case, the defendant does not feign mental illness to try to stall the case, as Vazquez did here," which required plaintiffs to obtain an independent medical examination. R&R at 32.

The complexity, and patient, scholarly management of this

-11-

case support a finding that plaintiffs' counsel's requested
hourly rate is reasonable.

Furthermore, the degree of success obtained by plaintiffs'
counsel, which the Supreme Court has described as "the most
critical factor in determining the reasonableness of a fee
award," Torrés v. Gristede's Operating Corp., 519 F. App'x 1, 5
(2d Cir. 2013) (quoting Farrar v. Hobby, 506 U.S. 103, 114, 113
S. Ct. 566, 574 (1992)), is striking.

The eighteen plaintiffs received $1.65 million, an average
recovery of over $91,000 per plaintiff. According the undisputed
declaration of Professor Samuel Estreicher of New York
University School of Law, the average settlement in a FLSA class
action is $5,830 per plaintiff, and the "results achieved by
Plaintiffs' counsel in this case also marks the highest per-
claimant recovery (by far) that has been secured in the low-pay
car wash industry." Estreicher Decl. ¶ 7, Dkt. No. 150. In sum,
plaintiffs' counsel's steady, careful, and relentless work
obtained an extraordinary degree of success.

Finally, defendants contend that Judge Peck "failed to
consider that Plaintiffs would not be willing to pay $500 as an
hourly rate for two billing attorneys spending approximately
3,000 hours to litigate, considering such an hourly rate for
such a high amount of time contravenes what a reasonable party
would want to minimally spend necessary to litigate the case

-12-

effectively." Defs.' Objs. to R&R at 1. That claim is bold indeed, considering that Judge Peck found (and defendants do not challenge his finding) that "the normal difficulties and expenses involved in prosecuting a multi-plaintiff case were multiplied considerably by the tactics of Defendant Jose Vazquez whose tactics--all of which were designed to delay, distract and derail this litigation--imposed a significant burden on this firm and on the Plaintiffs." R&R at 3 (brackets and ellipsis omitted). To reduce plaintiff's attorney's fee award because, through his obstructive and delaying conduct, Mr. Vazquez was successful in dramatically increasing plaintiffs' counsel's workload would contravene the purpose of the FLSA and New York labor law fee-shifting provisions, which are intended to encourage attorneys to take on meritorious cases. See Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552, 130 S. Ct. 1662, 1672 (2010) ("First, a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case."). That objection is overruled.

Having reviewed the record and taking into account Judge Peck's recommended ten-percent reduction of fees, plaintiffs' counsel's requested $500 per hour rate is reasonable.

**Attorney's Fees for Work in the Bankruptcy Case**

Defendants object to awarding fees for work performed by plaintiffs' counsel in the bankruptcy case after the automatic

-13-

stay was lifted on November 26, 2013 on the grounds that that
work was not necessary to the prosecution of their claims in
this case.

A district court may award attorney's fees incurred in
another court for work necessary for the resolution of the
claims before it:

> Finally, we find no merit to PAJ's argument that the district
> court abused its discretion by awarding Yurman fees for time
> spent litigating PAJ's declaratory judgment action in a Texas
> district court. The Texas action was based on the same facts
> and encompassed the same issues, and resolution of the claims
> in the Texas court "was essential to the resolution of the
> claims in this Court." Yurman II, 125 F. Supp. 2d at 56.
> Furthermore, the Texas action was an improper attempt by PAJ
> to divest Yurman of its rightful forum choice.

Yurman Design, Inc. v. PAJ, Inc., 29 F. App'x 46, 49 (2d Cir.
2002).

Plaintiffs' counsel has provided a detailed and uncontested
account of the work they performed in the bankruptcy case and
the reasons that they needed to remain involved to safeguard
their clients' interests. See Longobardi Decl. ¶¶ 181-201, Dkt.
No. 151. As Judge Peck correctly noted in his report:

> For example, Longobardi's appearance at a February 2014
> meeting of Vazquez's creditors is reasonable given that
> "Vazquez was giving sworn testimony at this meeting on matters
> implicated in the FLSA Action at a time when his deposition in
> the FLSA action was still open." Indeed, Vazquez's testimony
> at the meeting revealed "the existence of various books and
> records for the Car Wash Defendants, that were supposedly
> maintained at the office of the accountants for the Car Wash
> defendants--which had not been produced prior to the start of
> his deposition." Similarly, plaintiffs assert that at a
> December 2013 creditors meeting, Vazquez's responses to their
> counsel's questions about the manufacturer of some of the

-14-

> machinery/equipment listed on his schedules contradicted
> Vazquez's claims in this case that defendants were not engaged
> in interstate commerce. Thus, ADK's involvement in the
> bankruptcy proceedings was necessary for pursuing this complex
> case with a defendant (Vazquez) who was less than forthcoming.

R&R at 26-27 (citations omitted) (quoting Longobardi Decl.

¶¶ 197-98).

Additionally, plaintiffs' counsel filed a motion to extend

the deadline to file proof of claims or to challenge the

dischargeability of defendants' debts in the Bankruptcy Court.

That motion was urgent and necessary to preserve plaintiffs'

rights and was due just four days after counsel for the

creditors' committee was appointed. Accordingly, it was

reasonable and prudent for plaintiffs' counsel in this case to

perform that work.

Having reviewed the record, the time expended by

plaintiffs' counsel in the bankruptcy case (as modified by their

voluntary reductions and Judge Peck's further ten-percent

reduction) was reasonable and necessary to protect plaintiffs'

interests in this case and to achieve a fair settlement of their

claims. Accordingly, defendants' objection to awarding

plaintiffs' attorney's fees for the work performed in the

bankruptcy case after November 26, 2013 is denied.

### CONCLUSION

Plaintiff's motion for attorney's fees and costs (Dkt. No.

142) is granted, and Judge Peck's report and recommendation is

adopted, as to defendants J.V. Car Wash, Ltd., Broadway Hand
Carwash Corp., Webster Hand Car Wash Corp., Harlem Hand Car Wash
Corp., Bayway Hand Car Wash Corp. and Jose Vazquez, jointly and
severally, to the extent of $1,214,431.86 in attorney's fees and
$112,050.36 in costs.[4] Plaintiffs' unopposed supplemental
application for $24,445.83 in attorney's fees incurred in
responding to defendants objections' to the report and
recommendation is also granted for a total award of attorney's
fees and costs of $1,350,928.05.

The Clerk shall close the case.

So ordered.

Dated:    New York, New York
          November 18, 2015

                                    _Louis L. Stanton_
                                    LOUIS L. STANTON
                                    U.S.D.J.

---

[4] Judge Peck recommended costs be awarded pursuant to FLSA, 29 U.S.C.
§ 216(b), and New York Labor Law § 663(1). R&R at 31. The recommended award
includes over $41,400 for the independent medical examination of Mr. Vazquez,
necessitated by him "feign[ing] mental illness to try and stall the case."
R&R at 32. Four days after Judge Peck issued his report and recommendation,
the Second Circuit held in Gortat v. Capala Bros., 795 F.3d 292, 296-97 (2d
Cir. 2015), that expert fees may not be included in an award of costs under
FLSA, but that their availability under New York law is an open question.
Accordingly, and as defendants did not object to Judge Peck's recommended
award of costs, plaintiffs' expert fees are awarded under New York Labor Law.